## DOCKET NO. 12-13263-DD

# United States Court of Appeals

*for the*

# Eleventh Circuit

———— • ————

ANDREA GUARINO,

*Appellant-Plaintiff,*

*v.*

WYETH LLC, SCHWARZ PHARMA, INC. and,
TEVA PHARMACEUTICALS USA, INC.,

*Appellees-Defendants.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA IN CASE NO.
8:10-cv-02885-JSM-TGW (Hon. James S. Moody)

## OPENING BRIEF OF APPELLANT-PLAINTIFF

DAVID J. SALES
DAVID J. SALES, P.A.
1001 North U.S. Highway One
Suite 200
Jupiter, Florida 33477
(561) 744-0888

*Counsel for Appellant-Plaintiff*

Andrea Guarino v. Wyeth LLC, et al., 12-13263-DD

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1-1, and 11th Cir. R. 26.1-1, the undersigned counsel certifies that the following listed persons or entities have an interest in the outcome of this case:

1. Abrahamson & Uiterwyk – Law Firm for Appellant Andrea Guarino.

2. Banker, David Christopher – Attorney for Appellee Teva Pharmaceuticals USA, Inc.

3. Bigger, Brent R. – Attorney for Appellant Andrea Guarino.

4. Boney, IV, Lindsey, C. – Attorney for Wyeth LLC.

5. Bradley Arant Boult Cummings, LLP – Law Firm for Appellee Wyeth LLC.

6. Bullock, Henninger S. – Attorney for Appellee Schwarz Pharma, Inc.

7. Bush Ross, PA – Law Firm for Appellee Teva Pharmaceuticals USA, Inc.

8. Calica, Andrew J. – Attorney for Appellee Schwarz Pharma, Inc.

9. Curtis, William B. – Attorney for Appellant Andrea Guarino.

10. Curtis Law Group – Attorney for Appellant Andrea Guarino.

11. Donahue, Terrence J. – Attorney for Appellant Andrea Guarino.

12. ERGO Versicherung AG – Insurer for Appellee Schwarz Pharma, Inc. n/k/a UCB, Inc.

Andrea Guarino v. Wyeth LLC, et al., 12-13263-DD

13. Frederick, Sarah K. – Attorney for Appellee Teva Pharmaceuticals USA, Inc.

14. Freeman, Meredith A. – Attorney for Appellee Teva Pharmaceuticals USA, Inc.

15. Garrison, Yount, Forte & Mulcahy, LLC – Law Firm for Appellee Schwarz Pharma, Inc. n/k/a UCB, Inc.

16. Guarino, Andrea – Plaintiff/Appellant

17. Goodwin Proctor, LLP – Law Firm for Teva Pharmaceuticals USA, Inc.

18. HDI-Gerling Industrie Versicherung AG – Insurer for Schwarz Pharma, Inc. n/k/a UCB, Inc.

19. Mayer Brown, LLP – Law Firm for Appellee Schwarz Pharma, Inc. n/k/a UCB, Inc.

20. McGlynn, Daniel J. – Attorney for Appellant Andrea Guarino.

21. McGlynn Glisson & Mouton – Law Firm for Appellant Andrea Guarino.

22. Mize, Joshua A. – Attorney for Appellee Teva Pharmaceuticals USA, Inc.

23. Moody, the Honorable James S., Jr. – United States District Judge in the district court proceedings.

Andrea Guarino v. Wyeth LLC, et al., 12-13263-DD

24. Oetheimer, Richard A. – Attorney for Appellee Teva Pharmaceuticals USA, Inc.

25. Pfizer, Inc. – Acquired Appellee Wyeth effective October 15, 2009. Pfizer trades on the New York Stock Exchange under the symbol PFE.

26. Price, Jonathan I. – Attorney for Appellee Teva Pharmaceuticals USA, Inc.

27. Sales, David J. – Attorney for Appellant Andrea Guarino.

28. Sastre, Hildy M. – Attorney for Appellee Wyeth LLC.

29. Schwarz Pharma, Inc. – Appellee. Schwarz Pharma, Inc. is now known as UCB, Inc. UCB, Inc. is wholly owned by UCB Holdings, Inc. UCB Holdings, Inc. is wholly owned by UCB, S.A., which is listed on the Euronext Brussels stock exchange, trading under the symbol "UCB." UCB S.A. has no parent corporation. Financiére de Tibize S.A. (a publicly held corporation, whose shares are listed on the Euronext Brussels under the symbol "TUB") owns 10% or more of its stock.

30. Shook, Hardy & Bacon, LLC – Law Firm for Appellant Wyeth LLC.

31. Summers, Carl J. – Attorney for Appellee Schwarz Pharma, Inc. n/k/a UCB, Inc.

32. Teva Pharmaceutical Industries, Ltd. (the "Teva Parent") – wholly owns Appellee Teva Pharmaceuticals USA, Inc. The Teva Parent

Andrea Guarino v. Wyeth LLC, et al., 12-13263-DD

trades on the Tel Aviv, NASDAQ (symbol "TEVA") and SEAQ International Stock Exchanges.

33. Teva Pharmaceuticals USA, Inc. – Appellee.  Teva is wholly-owned by Teva Pharmaceutical Industries, Ltd., which trades on the Tel Aviv, NASDAQ (symbol "TEVA") and SEAQ International Stock Exchanges.

34. Yount, Scott Parker – Attorney for Appellee Schwarz Pharma, Inc.

35. Vrasmasu, Mihai M. – Attorney for Appellee Wyeth LLC.

Wyeth LLC – Appellee.  Wyeth was acquired by Pfizer, Inc. effective October 15, 2009.  Pfizer trades on the New York Stock Exchange under the symbol PFE.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff/Appellant believes this case and *Metz v. Wyeth, LLC, et al.*, 12-13321-B, present this Court with its first occasions to (1) apply recent United States Supreme Court precedent concerning federal preemption of certain state law claims against generic drug manufacturers, and (2) review other discrete issues of state law in the context of drug litigation. Plaintiff believes that oral argument will assist the court in addressing these matters.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................. i

TABLE OF CITATIONS ........................................................................... iv

STATEMENT OF JURISDICTION........................................................................1

STATEMENT OF THE ISSUES................................................................................1

STATEMENT OF THE CASE...................................................................................2

    Facts and Proceedings in the District Court ........................................................2

    Standards of Review .........................................................................................11

SUMMARY OF THE ARGUMENT ......................................................................12

ARGUMENT AND CITATIONS OF AUTHORITY .............................................13

    I.     The District Court Erred in Concluding that Federal Law Preempts All State Law Claims against Teva .....................................13

          A.     *Mensing's* Scope Is Limited to Claims that Would Require a Generic Drug Manufacturer to Vary or Alter FDA-Approved Label Contents.................................................13

          B.     The District Court Erred in Dismissing Plaintiff's Allegations that Teva Failed to Communicate the Content of Required Labeling to Physicians. .........................................19

    II.    Florida Law Allows Claims Sounding in Fraud against Wyeth and Schwarz, Even Though They Did Not Manufacture Drugs Consumed by Plaintiffs ......................................................................25

    III.    If in Doubt, the Court Should Certify to the Florida Supreme Court the Issue Whether Florida Law Requires Consumers to Establish Brand Usage for Claims against Drug Manufacturers that Sound in Fraud .............................................................................32

CONCLUSION ......................................................................................................37

CERTIFICATE OF COMPLIANCE.......................................................................CC

CERTIFICATE OF SERVICE ...............................................................................CS

# TABLE OF CITATIONS

## Cases

*Advance Chemical Co. v. Harter*,
   478 So. 2d 444 (Fla. 1st DCA 1985) ..............................................................19

*Altria Group v. Good,*
   55 U.S. 70, 129 S. Ct. 538  (2008) ...............................................................17

*Baggett v. Electricians Local 915 Credit Union,*
   620 So. 2d 784 (Fla. 2d DCA 1993) ............................................................32

*Brashley-Thrash v. Teva Pharmacecuticals USA, Inc.,*
   2011 WL 4025734 (S.D. Ala. Sept. 12, 2011) .............................................24

*Brito v. County of Palm Beach,*
   753 So. 2d 109 (Fla. 4th DCA 1998) ............................................................20

*Buckner v. Allergan Pharmaceuticals, Inc.,*
   400 So. 2d 820 (Fla. 5th DCA 1981) ............................................................20

*Cipollone v. Liggett Group, Inc.,*
   505 U.S. 504, 112 S. Ct. 2608 (1992) ................................................. 16, 17

*Conley v. Boyle Drug Co.,*
   570So. 2d 275 (Fla. 1990) ............................................................. 26-27, 32

*Conte v. Wyeth, Inc.,*
   168 Cal. App. 4th 89, 85 Cal. Rptr. 3d 299 (2008) ........................... 25-26, 30

*Craig v. Floyd County, Georgia,*
   643 F. 3d 1306 (11th Cir. 2011) ...................................................................12

*DeYoung v. Owens*,
   646 F. 3d 1319 (11th Cir. 2011) ...................................................................12

*Felix v. Hoffmann-LaRoche, Inc.,*
   540 So. 2d 102 (Fla. 1989) ...........................................................................20

*Fields v. Mylan Pharmaceuticals, Inc.*,
    751 F. Supp. 2d 1260 (M.D. Fla. 2009) ........................................................30

*Fisher v. Pelstring*,
    817 F. Supp. 2d 791(D.S.C. Sept. 30, 2011) ................................................24

*Foster v. American Home Products Corp.*,
    29 F. 3d 165 (4th Cir. 1994) ................................................................. 33-35

*Hart v. Hodges*,
    587 F. 3d 1288 (11th Cir. 2009) ...................................................................12

*Hassett v. Dafoe*, Nos. 2012 WL 1512551
    (Pa. Ct. Com. Pl. Mar. 22, 2012) ..................................................................24

*Hayes v. Spartan Chem. Corp.*,
    622 So. 2d 1352 (Fla. 2d DCA 1993)...................................................... 20-21

*Hunnings v. Texaco, Inc.*,
    29 F.3d 1480 (11th Cir. 1994) ............................................................... 19-20

*Johnson v. Davis*,
    480 So. 2d 625 (Fla. 1985) ...........................................................................32

*Kellogg v. Wyeth*,
    762 F. Supp. 2d 694 (D. Vt. 2010) ........................................... 25-26, 28, 30

*Levine v. Wyeth, Inc.*,
    684 F. Supp. 2d 1338 (M.D. Fla. 2010) ......................................................30

*Liggett Group, Inc. v. Engle*,
    853 So. 2d 434 (Fla. 3d DCA 2003)................................................ 26-30, 32

*Liggett Group, Inc. v. Engle*,
    945 So. 2d 1246 (Fla. 2006) ........................................................... 26-30, 32

*Lopez v. Target Corp.*,
    676 F. 3d 1230 (11th Cir. 2012) ..................................................................34

*McCall v. United States,*
   642 F. 3d 944 (11th Cir. 2011) ......................................................................33

*Medtronic, Inc. v. Lohr,*
   518 U.S. 470, 116 S. Ct. 2240 (1996) ...........................................................16

*\*Metz v. Wyeth, LLC,*
   830 F. Supp. 2d 1291 (M.D. Fla. 2011) ................................................ *passim*

*\*Metz v. Wyeth, LLC,*
   2012 WL 1058870 (M.D. Fla. Mar. 28, 2012) .............................................24

*Perkins v. State*,
   845 So. 2d 273 (Fla. 2d DCA 2003)..............................................................34

*\*PLIVA, Inc. v. Mensing*,
   131 S. Ct. 2567, ___ U.S. ___ (2011) ................................................... *passim*

*Powell v. Barrett*,
   541 F.3d 1298 (11th Cir. 2008) (en banc) .....................................................36

*\*Rey v. Philip Morris, Inc.,*
   75 So. 3d 378 (Fla. 3d DCA 2011).................................................... 29-30, 32

*Riegel v. Medtronic, Inc.,*
   552 U.S. 312, 128 S. Ct. 999 (2008) ................................................. 16-17, 18

*Sharp v. Leichus*,
   952 So. 2d 555(Fla. 1st DCA 2007) ...................................................... 33, 34

*Slatcoff v. Dezen*,
   76 So. 2d 792 (Fla. 1955) ..............................................................................36

*Suntrust Bank v. Riverside Nat'l Bank of Florida*,
   792 So. 2d 1222 (Fla. 4th DCA 2001)............................................................34

*Union Carbide Corp. v. Kavanaugh,*
   879 So.2d 42 (Fla. 4TH DCA 2004) ...................................................... 20-21

*Union Planters Bank, N.A. v. New York,*
436 F. 3d 1305 (11th Cir. 2006) ....................................................................33

*Vincent v. C. R. Bard, Inc.,*
944 So. 2d 1083 (Fla. 2d DCA 2006).................................................... 27-28

**Wyeth v. Levine*,
555 U.S. 555, 129 S. Ct. 1187 (2009) .................................................... 16-18

## Other Authorities

28 U.S.C. § 1291 .............................................................................................1

28 U.S.C. § 1332(a)(1).....................................................................................1

Pub. L. 104-180, 110 Stat. 1569 (Aug. 6, 1996).....................................................21

21 C.F.R. § 201.100(d)(1).................................................................................22

21 C.F.R. § 202.1(d)(1)....................................................................................24

Fla. Const., Art. I § 21 ....................................................................................36

Fla. R. App. P. 9.150(a) ...................................................................................33

FDA, Action Plan for the Provision of Useful Prescription
Medicine Information (1996), *available at*
http://www.fda.gov/downloads/AboutFDA/CentersOffices/
CDER/Reports Budgets/UCM163793.pdf ....................................................21

FDA, Guidance: Development and Use of Risk Minimization
Action Plans (2005), *available at*
http://www.fda.gov/downloads/Drugs/
GuidanceComplianceRegulatoryInformation/
Guidances/ UCM071616.pdf ........................................................................22

FDA, Guidance:  Drug Safety Information – FDA's
Communication to the Public (2007), *available at*
    http://www.fda.gov/downloads/Drugs/
    GuidanceComplianceRegulatoryInformation/
    Guidances/UCM295217.pdf.........................................................................22

Drugs@FDA Glossary of Terms, *available at*
    http://www.fda.gov/Drugs/
    informationondrugs/ucm079436.htm..................................................14

*Actavis, Inc. v. Demahy*, Petition for Certiorari of Actavis, Inc.,
    2010 WL 232535 (June 7, 2010).................................................................15

Jenny, *Did Failure-to-Warn Claims Against Generic
    Manufacturers Survive Mensing?,*
    40 J.L. Med. & Ethics 165 (2012)........................................................ 15-16

*PLIVA, Inc. v. Mensing*, Brief for the United States as Amicus Curiae
    2011 WL 741927 (Mar. 2, 2011)..................................................................15

*PLIVA, Inc. v. Mensing*, Petition for Certiorari of PLIVA, Inc.,
    2010 WL 638748 (Feb. 19, 2010) ...............................................................15

## STATEMENT OF JURISDICTION

For the reasons stated in the parties' joint Response to Jurisdictional Question from the Court, dated August 15, 2012, the district court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), in that there was complete diversity between Plaintiff and Defendants. This Court has jurisdiction, pursuant to 28 U.S.C. § 1291, because this is an appeal from a judgment of a district court, dated April 4, 2012 and an order denying a motion for reconsideration dated May 23, 2012. Plaintiff filed her notice of appeal on June 15, 2012.

## STATEMENT OF THE ISSUES

I.      Whether the district court erred in concluding that federal law preempts state law claims that a generic manufacturer of prescription drugs was negligent in failing to communicate the content of federally required prescription drug warnings to the public, and more particularly to the medical community.

II.     Whether the district court erred in concluding that Florida law prohibits claims of misrepresentation and fraud against manufacturers of brand name drugs, when the misrepresentation and fraud lead to the consumption of a generic form of the same drug manufactured by a third party.

III.    Whether this Court should certify to the Supreme Court of Florida a Florida law issue concerning claims of misrepresentation and fraud against manufacturers of brand name drugs, when the misrepresentation and fraud lead to

1

the consumption of a generic form of the same drug manufactured by a third party.

## STATEMENT OF THE CASE

This is a claim for damages arising out of injuries caused by a prescription drug. Plaintiff/Appellant, Andrea Guarino, was told by her physician told her to take a GI drug for abdominal pain. She followed her physician's instructions and developed a neurological disorder known as tardive dyskinesia, which is characterized by abnormal movements of the facial muscles, tongue and limbs. The drug in question caused Plaintiff's disorder. She sued the generic manufacturer of the drug (whose product she consumed) and the brand-name manufacturers of the drug on various state law theories, including negligent misrepresentation and fraud. The district court either dismissed or entered summary judgment as to every such theory, on grounds of federal preemption and Florida law, in favor of all Defendants. The district court concluded that Plainiff has no remedy for injuries caused by the use of this generic drug.

### Facts and Proceedings in the District Court

*The Complaint, Answers and Affirmative Defenses*

This case arises out of the use of Reglan or metoclopramide, a drug for symptomatic gastroesophageal reflux and recurrent diabetic gastric stasis. It should not be used for more than twelve weeks, even though Defendants/Appellees have represented that it was safe to use the drug for more than twelve weeks. (Doc 1 -

Pg 7). Patients who use Reglan/metoclopramide for longer periods are at significant risk for the development of severe and permanent neurological movement disorders, tardive dyskinesia, akathesia and tardive dystonia. (*Id.* - Pg 8). In 2007, Ms. Guarino received a prescription for Reglan/metoclopramide from her physician to treat abdominal pain and digestive problems and took the drug in accordance with her physician's directions continuously through August 2007. As a result, she developed tardive dyskinesia. (*Id.* - Pg 5, 8).

Ms. Guarino sought damages and sued Wyeth LLC ("Wyeth"), Schwarz Pharma, Inc. ("Schwarz"), Teva Pharmaceuticals USA, Inc. ("Teva"), all of which were manufacturers of Reglan/metoclopramide sold in the State of Florida (*id.* - Pg 2), or they are successors in interest to the manufacturers of Reglan/metoclopramide which are legally responsible for the actions of their predecessors. (*Id.* - Pg 8-10). Specifically, Wyeth is responsible for the actions of A.H. Robins Company, Inc., which first obtained approval to distribute Reglan/metoclopramide in 1983. (*Id.* - Pg 8). Schwarz in turn purchased the rights and liabilities of Wyeth associated with injuries caused by Reglan/metoclopramide. (*Id.* - Pg 10). Teva is a manufacturer of generic metoclopramide. (*Id.* - Pg 13).

Plaintiff's complaint contains five separately designated counts, negligence (I), strict liability (II), breach of warranties (III), misrepresentation and fraud (IV), negligence per se (V). (*Id.* Pg 18-22). Plaintiff does not seek review of the district

court's disposition of the strict liability, warranty claims or negligence per se claims. Plaintiff seeks review as to her negligence claim against Teva to the extent not preempted by federal law, and her claims sounding in misrepresentation and fraud claim against Wyeth and Schwarz (including negligent misrepresentation).

The negligence count contains various allegations of wrongdoing, including a failure to provide information to medical providers about the appropriate use of Reglan/metoclopramide, a failure to warn medical providers about the risks of extended use of Reglan/metoclopramide and the consequences of extended use, and active misrepresentations of is safety and efficacy. (*Id.* - Pg 16-18).

The Misrepresentation and Fraud Count alleges that Defendants knowingly misrepresented, downplayed and concealed the risks of Reglan/metoclopramide, and that their misrepresentations reached the FDA, the health care industry and Plaintiff. The specific misrepresentations and acts of concealment relate to the statistically significant increase in neuromuscular side effects of Reglan/metoclopramide that result in serious injury, that Reglan/metoclopramide should be limited to courses of no more than twelve weeks, and that Reglan had not been adequately tested for neuromuscular side effects. (*Id.* - Pg 19-21). In this appeal, review is sought only as the viability of these allegations against Wyeth and Schwarz.

4

Those portions of Plaintiffs' claims that sound in failure to warn and fraud rely in part on extensive allegations concerning the history of Reglan/metoclopramide's development and marketing. Among those allegations are the following. Wyeth intentionally and negligently disseminated misleading information to physicians concerning the adverse effects of long-term use of Reglan/metoclopramide. When Schwarz acquired the rights and liabilities associated with Reglan/metoclopramide, Schwarz knew or should have known that Reglan/metoclopramide's labeling misrepresented Reglan/metoclopramide's safety and withheld warnings of known side effects. Wyeth and Schwarz had actual knowledge resulting from research of the extent to which the medical community prescribed Reglan/metoclopramide for more than twelve weeks; they knew the extent to which physicians relied on the Physicians' Desk Reference ("PDR"); and they also had actual knowledge of Reglan/metoclopramide's risks arising from extended use. (*Id.* - Pg 9-16).

Wyeth and Schwarz knew that Reglan/metoclopramide was available in a generic form and that generic manufacturers were required by federal law to copy their package inserts and warning information verbatim. (*Id.* – Pg 12). They knew that physicians rely on warnings provided by brand name manufacturers of drugs, regardless of whether their prescriptions are filled by a brand name drug or a generic equivalent. They also knew that generic drug manufacturers rely on the

5

marketing efforts of a brand name manufacturer to generate sales of their own products. (*Id.* - Pg 12).

All Defendants failed to conduct post-market safety surveillance on Reglan/metoclopramide. They failed to review adverse drug information and make required reports concerning the safety and adequacy of existing warnings. They failed to monitor scientific data concerning the risks of Reglan/metoclopramide and concealed from physicians facts concerning Reglan/metoclopramide's warnings. They concealed the fact that Reglan/metoclopramide is a neuroleptic agent and dopamine antagonist, which can lead to injury, as well as the fact that use longer than twelve weeks is unlikely to be safe. (*Id.* - Pg 14-16).

All Defendants filed answers and affirmative defenses. Teva admitted that the "PDR and brand product labeling are among the resources available to physicians with respect to information relevant to the prescription of drugs." (Doc 12 - Pg 12-13). Wyeth and Schwarz denied this allegation. (Doc 11 - Pg 14; Doc 13 - Pg 13). All Defendants raised federal preemption as an affirmative defense. (Doc 12 - Pg 20; Doc 11 at. 11 - Pg 26, 27; Doc 13 - Pg 31, 37).

### *Teva's Motion to Dismiss, for Judgment on the Pleadings or for Summary Judgment*

After Plaintiff filed her complaint, the Supreme Court decided *PLIVA, Inc. v. Mensing*, ___ U.S. ___, 131 S. Ct. 2567 (2011) ("*Mensing*"), which prohibits failure to warn claims against the manufacturers of generic drugs, where such

claims would require the generic manufacturer of a prescription drug to alter or vary the content of federally required labeling, whether on drug labeling itself, or when communicating about the risks of that drug. Teva moved to dismiss, for judgment on the pleadings or for summary judgment on the basis of *Mensing*. According to Teva, Plaintiffs' claims and the party defendant (Teva itself) were the same as those in *Mensing*, and the injuries were the same. (Doc 30 - Pg 2). Each of Plaintiffs' counts was "based upon a failure-to-warn theory" (*id.*) and had to be dismissed, according to Teva.

In Plaintiff's response, she argued that the scope of *Mensing* was narrower than what Teva asserted. It was based on "impossibility preemption," which protects manufacturers from state law tort claims that would conflict with requirements of federal law. (Doc 31 - Pg 3). *Mensing* does not extend to allegations that Teva had failed to ensure that required labeling actually reach prescribing physicians. (*Id.* - Pg 2). Teva did nothing to communicate to the medical community the fact that in 2004 the required label for metoclopramide was strengthened to include for the first time warnings against metoclopramide therapy for more than twelve weeks. (*Id.* - Pg 16). Lawful means recognized by the FDA exist to communicate changes in product labeling, including "Dear Doctor" letters that announce important changes in product labeling (*id.* - Pg 14), and the FDA encourages "risk minimization" by manufacturers, through this and other

7

techniques. (*Id.* - Pg 13, 14).

According to Plaintiff, *Mensing* did not address state law claims that a manufacturer had failed to communicate to prescribers the content of federally approved labels (such as the 2004 label), and doing so is actually consistent with federal policy imposing such an obligation on manufacturers. (*Id.* - Pg 15). Prior to 2007, when Ms. Guarino's physician prescribed metoclopramide for longer than twelve weeks, the last labeling for metoclopramide published in the PDR appeared in 2002. (*Id.* - Pg 16). This was before the warnings related to long-term use were adopted, and Teva took no steps to alert the medical community to the important 2004 change in labeling. Plaintiff argued that preemption depends on the "exact nature" of the claims asserted in a tort suit. (*Id.* - Pg 16). *Mensing* did not address claims relating to the "inadequate *communication*" of a required warning, and Teva could not claim the benefit of preemption where it did "nothing to communicate" those warnings. (*Id.* - Pg 20) (emphasis in original).

In a reply memorandum authorized by the district court, Teva asserted that Plaintiff had "invent[ed]" her "failure to communicate" theory, which was a failure to warn claim "by another name" and accordingly preempted. (Doc 34 - Pg 2). Because all claims were predicated on a failure to warn, all were preempted. (*Id.* - Pg 4). Finally, Teva argued that *Mensing* expressly rejects a "failure to communicate" theory of liability. (*Id.* - Pg 7).

8

The district court granted Teva's motion, agreeing that all of Plaintiff's claims against Teva were preempted. (Doc 39 - Pg 4). The court also concluded that *Mensing* foreclosed any claim that Teva failed to communicate the content of the 2004 required warning that included the risks of metoclopramide. (*Id.* - Pg 5).

Plaintiff moved the court to reconsider its order on the ground that another Judge in the Middle District of Florida had considered and accepted the viability of Plaintiff's "failure to communicate" theory, though entering summary judgment based on the learned intermediary doctrine. (Doc 63 - Pg 4).[1] Teva opposed reconsideration. It argued that the other District Judge had not needed to reach the issue of the availability of the "failure to communicate" theory, and that this theory was in fact preempted under *Mensing* as well. (Doc 64 - Pg 3). The district court denied Plaintiff's motion for reconsideration. (Doc 66 - Pg 1).

### Wyeth and Schwarz's Motion for Summary Judgment

Wyeth and Schwarz's motion for summary judgment was based upon the undisputed fact that Ms. Guarino took only generic metoclopramide and never took any brand-name Reglan manufactured by them or their predecessor. (Doc 44 - Pg 9). Because Wyeth and Schwarz owe a duty of care "only to consumers of their own products" (*id.* - Pg 7), they asserted entitlement to judgment as a matter of

---

[1]The referenced case, *Metz v. Wyeth, et al.*, No. 12-13321-BB, is currently before this Court on review of related issues.

law. Wyeth and Schwarz cited to Florida Supreme Court precedent which they asserted foreclosed Plaintiffs' causes of action for misrepresentation and fraud. (*Id.* - Pg 5-7). They argued that Florida law, as they described it, was consistent with a national consensus rejecting claims that a brand-name drug manufacturer may be liable for products sold by a generic manufacturer. (*Id.* - Pg 13-18). Finally, they anticipated Plaintiffs' arguments that *Mensing* influenced the applicable law on this subject and anticipatorily urged rejection of those arguments. (*Id.* - Pg 20-25).

Plaintiff's opposition explained that her claims against Wyeth and Schwarz did not depend on allegations that the product she consumed was defective. Rather, her claims against these defendants sound in negligence and fraud and focused on their public communications and concealment of information concerning the risks of Reglan/metoclopramide. (Doc 47 - Pg 4). She described the testimony of corporate representatives of A.H. Robins and Wyeth reflecting the companies' knowledge of these same risks, and failure to communicate that knowledge to the public. (*Id.* - Pg 5-7). She also recited testimony of a corporate representative of Schwarz reflecting similar knowledge. (*Id.* - Pg 8-9).

Plaintiff acknowledged the authorities that generally prohibit product defect claims against brand name drug manufacturers for the harms arising out of the use of generic drugs, but urged the district court to consider the reasoning in two specific Reglan/metoclopramide cases that have allowed claims for

misrepresentation and fraud. (*Id.* - Pg 13-16). Plaintiff argued, as Wyeth and Schwarz had predicted, that *Mensing* removes certain legal underpinnings of arguments that prohibit such claims. (*Id.* - Pg 14). Finally, Plaintiff argued that Wyeth and Schwarz did have a common law duty to refrain from misrepresentations about the risks of their product. (*Id.* - Pg 19-20).

The district court granted Wyeth and Schwarz's motion, finding the material facts were not in dispute. Plaintiff admitted that she had not used any brand name Reglan (Doc 59 - Pg 2), and no theory of liability allows for the recovery of damages against the manufacturer of a product, unless that manufacturer's product was actually used by a consumer. (*Id.*). The district court cited *Metz v. Wyeth, LLC*, 830 F. Supp. 2d 1291, 1295 (M.D. Fla. 2011) ("*Metz I*") which held that similar claims were barred by Florida law. (*Id.* - Pg 3-4).

Plaintiff moved for reconsideration (Doc 62), which Wyeth and Schwarz opposed (Doc 65) and the district court denied (Doc 66). This appeal followed.

**Standards of Review**

This appeal concerns an order of dismissal for failure to state a cause of action and orders of summary judgment. The applicable standard of review depends on the type of order. An order granting a motion to dismiss or for judgment on the pleadings is reviewed *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.

11

*See Hart v. Hodges,* 587 F. 3d 1288, 1290 n. 1 (11th Cir. 2009) (judgment on the pleadings); *DeYoung v.* Owens, 646 F. 3d 1319, 1324 n. 2 (11th Cir. 2011) (order of dismissal). The order granting the motions for summary judgment are also reviewed *de novo*, with the court "construing all facts and drawing all reasonable inferences in favor of the nonmoving party." *Craig v. Floyd County, Georgia*, 643 F. 3d 1306, 1309 (11th Cir. 2011).

## SUMMARY OF THE ARGUMENT

A warning which goes unheard is no warning at all. The district court erred in interpreting the Supreme Court's decision in *Mensing* as requiring the dismissal of all claims against Teva as a generic drug manufacturer. Plaintiff alleged and argued that Teva failed to discharge its common law duty to ensure that a federally-required warning reached the medical community. These allegations were not preempted by federal law because Teva could have complied with both the requirements of federal law and state law. The warnings added to the label for metoclopramide in 2004 were directly aimed at discouraging dangerous long-term use, the type of use that resulted in Plaintiff's injuries. Holding Teva liable for failure to communicate that warning (without altering its content) would not pose any conflict with federal law or drug labeling requirements.

The district court erred in concluding that Florida law in all circumstances prohibits claims sounding in misrepresentation and fraud against the manufacturer

of a brand name drug, when a consumer's injuries are caused by the generic form of the same drug, manufactured by a third party. Outside the context of strict liability and product defect claims, a brand name manufacturer of a product can be liable to a consumer who uses the product of another, if the brand name manufacturer's conduct induces reliance and action by a consumer (or a prescriber in the case of prescription drugs), which causes injury. The brand usage requirement identified by the district court does not apply to claims for misrepresentation or fraud. If the Court concludes that Florida law is unsettled as to this determinative issue, Plaintiff asks the Court to certify the issue to the Florida Supreme Court for resolution.

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    The District Court Erred in Concluding that Federal Law Preempts All State Law Claims against Teva.**

**A.    *Mensing's* Scope Is Limited to Claims that Would Require a Generic Drug Manufacturer to Vary or Alter FDA-Approved Label Contents.**

The sole issue before the U.S. Supreme Court in *Mensing* was whether state tort law can impose a duty on a generic drug manufacturer to change its labeling to add or strengthen warnings contained in the label of the Reference Listed Drug (the

"RLD").[2] It is clear from the entirety of the decision that the preemption principle

identified applies only to allegations that a generic manufacturer should have

unilaterally changed the content of its metoclopramide label:

> [Plaintiffs] claimed that 'despite mounting evidence that long term metoclopramide use carries a risk of tardive dyskinesia far greater than that indicated on the label,' none of the Manufacturers had changed their label to adequately warn of that danger.

> The parties do not dispute that, if these allegations are true, state law required them to use a different, safer label.

> What is in dispute is whether, and to what extent, generic manufacturers may change their labels *after* initial FDA approval.

> Taking Mensing and Demahy's allegations as true, this duty required the Manufacturers to use a different, stronger label than the label they actually used.

> If the manufacturers had independently changed their labels to satisfy their state-law duty….

> Here, state law imposed a duty on the Manufacturers to take a certain action, and federal law barred them from taking that action.

*Mensing,* 131 S.Ct. at 2567, 2573, 2574, 2577, 2578, 2581. The *Mensing* Court

also made clear that it was not making a determination that the laws at issue

actually required a generic manufacturer to change their label, but rather stated that

the parties "did not dispute" that the laws of Minnesota and Louisiana required a

---

[2]The RLD is an "approved drug to which generic versions are compared to show that they are bioequivalent." By designating a single RLD as the standard for comparison, FDA seeks to avoid variations "among generic drugs and their brand name counterpart." Drugs@FDA Glossary of Terms, *available at* http://www.fda.gov/Drugs/informationondrugs/ucm079436.htm

generic manufacturer to take such action. *Id.* at 2573.

What was not considered in Mensing was the extent to which a generic manufacturer could be held liable for selling an unreasonably dangerous product, for supplying false information about potential risks associated with metoclopramide, and for concealing important safety information from the FDA, consumers, and the medical community. *See PLIVA, Inc. v. Mensing*, Brief for the United States as Amicus Curiae 2011 WL 741927 at *25-26 (Mar. 2, 2011) ("Respondent's [arguments] are directed only to the labeling of petitioners' drugs."). The parties certainly sought review as to a limited question. *See PLIVA, Inc. v. Mensing*, Petition for Certiorari of PLIVA, Inc., 2010 WL 638748 at *i (Feb. 19, 2010) (question presented concerned failure to warn claim in contravention of federal requirement that generic drug label be the same as FDA-approved labeling for branded drug); *Actavis, Inc. v. Demahy*, Petition for Certiorari of Actavis, Inc., 2010 WL 232535 at *i (June 7, 2010) (question presented: "Are the states preempted under the Supremacy Clause … from requiring additional safety information on a generic product where the brand has not changed its label?"). The Court did not consider any of the other non-warning claims for relief appearing in Plaintiff's complaint here, nor did it consider any failure-to-warn claims that would not require the generic manufacturers to vary their labeling from that of the RLD. *See* Jenny, *Did Failure-to-Warn Claims*

15

*Against Generic Manufacturers Survive Mensing?,* 40 J.L. Med. & Ethics 165, 167 (2012) ("There are other theories on which a generic drug company may be liable for a failure to warn, such as neglecting to send out supplemental warnings *consistent with* the drug's label.") (emphasis in original).

In considering whether a state-law claim is preempted by federal law, a court must be guided by "two cornerstones" of the Supreme Court's preemption jurisprudence. *Wyeth v. Levine*, 555 U.S. 555, 564, 129 S.Ct. 1187, 1194 (2009) ("*Levine*"). The first is the purpose of Congress. *Id.* (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250 (1996) ("*Lohr*")). The second is: "in all pre-emption cases, and particularly in those in which Congress has 'legislated in a field which the states have traditionally occupied,' [a court must] 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (citations omitted). If the extent of Congress's intent is unclear, then there is a presumption against preemption. *Lohr*, 518 U.S. at 485, 116 S. Ct. at 2250.

In analyzing whether a claim is preempted, each state-law claim must be examined against federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 523, 112 S. Ct. 2608, 2621 (1992); *see also Lohr*, 518 U.S. at 500 n. 19, 116 S. Ct. at 2240 n. 19 (need for "searching inquiry into the relationship between the federal requirement and the state requirement at issue"); *Riegel v. Medtronic, Inc.,* 552

U.S. 312, 322, 128 S. Ct. 999, 1007 (2008) (careful comparison between the state and federal duties at issue); *Mensing*, 131 S.Ct. at 2567, 2573 ("[p]re-emption analysis requires us to compare federal and state law"). The central inquiry in each case is straightforward: whether the legal duty that is imposed by state law is prohibited by the text of the federal statute or regulations at issue. *Cipollone,* 505 U.S. at 524, 112 S. Ct. at 2621. And while the presence of federally mandated warnings may bear on the materiality of allegedly false statements made by a defendant, "that possibility does not change [plaintiff's] case from one about the statements into one about the warnings." *Altria Group v. Good*, 555 U.S. 70, 83, 129 S. Ct. 538, 546 (2008).

In assessing the overall status of federal preemption law, it is useful to note the contrast between the broad question analyzed in *Levine*, as compared with the narrow question presented in *Mensing*. In *Levine*, the question was "whether the FDA's drug labeling judgments 'preempt state law product liability claims premised on the theory that different labeling judgments were necessary to make drugs reasonably safe for use.'" 555 U.S. at 563, 129 S. Ct. at 1193 (citation omitted). That broad question stands in stark contrast to the narrow question presented to the Court in *Mensing*, *i.e.,* "whether, and to what extent, generic manufacturers may change their labels *after* initial FDA approval." 131 S. Ct at 2574.

*Levine* squarely rejects the idea that federal law preempts claims based on the injuries caused by drugs themselves, and squarely rejects the argument that federal law establishes a "floor and a ceiling for drug regulation." 555 U.S. at 573-74, 129 S. Ct. at 1199. Rather, "[a]ll evidence of Congress' purpose is to the contrary." While Congress has not provided a remedy for "consumers *harmed by unsafe or ineffective drugs*, ... [e]vidently, it determined that *widely available state rights of action provided appropriate relief for injured consumers.*" *Id.* at 574, 129 S. Ct. at 1199 (emphasis added). In fact, state-law remedies "further consumer protection by motivating manufacturers to produce safe and effective drugs and to give adequate warnings." *Id.* at 574, 129 S. Ct. at 1200. Despite entering the field of drug regulation long ago, Congress has never enacted express preemption provisions and "*despite its 1976 enactment of an express pre-emption provision for medical devices,... Congress has not enacted such a provision for prescription drugs.*" *Id.* (emphasis added) (citing *Riegel*, 552 U.S. at 327, 128 S. Ct. at 1009)). This is "powerful evidence" that Congress did not intend for state tort suits to be eliminated as a means of "ensuring drug safety and effectiveness." *Id.*

Although Plaintiff's initial pleadings (filed before *Mensing*) included extensive allegations concerning the required warning labels, they also included allegations that would subject Teva to liability under Florida law on distinct grounds that would not require Teva to alter the content of the required label, or

communicate warning content at odds with the required label. Claims based on these allegations survive *Mensing*.

> **B.    The District Court Erred in Dismissing Plaintiff's Allegations that Teva Failed to Communicate the Content of Required Labeling to Physicians.**

The district court erred in concluding that "no parallel state-law claims or alternative theories of liability [against a generic drug manufacturer] survive the Supreme Court's ruling in *Mensing*" (Doc 39 - Pg 5), including Plaintiff's allegations that Teva failed to communicate FDA-approved labeling content to the medical community. Congress and the FDA have indicated their desire for manufacturers to provide useful information about prescription drugs to the individuals who need this information the most. As a result, state law claims that seek to impose liability on a generic manufacturer for failing to inform physicians of FDA-approved label content and warnings would be consistent with the federal law and not conflict with it. Plaintiff should have been allowed to pursue a claim based on Florida law that Teva failed to communicate the content of approved warnings added to metoclopramide in 2004.

Florida law imposes a duty on the manufacturer "to take reasonable precautions to avoid reasonably foreseeable injuries to those who might use the commodity." *Hunnings v. Texaco, Inc.,* 29 F. 3d 1480, 1484 (11th Cir. 1994) (quoting *Advance Chemical Co. v. Harter*, 478 So. 2d 444, 447 (Fla. 1st DCA

1985)). If a manufacturer knows or should know that adequate warnings are not reaching the individuals to whom they owe a duty, it may be held liable for failing to take appropriate action. *Id* at 1485. A manufacturer's duty to take reasonable precautions to protect consumers from foreseeable harm from the use of its products "must be measured against its knowledge of the circumstances by which the product reaches the public." *Id* at 1486.

Under Florida law, a prescription drug manufacturer's duty to warn of dangerous side effects is directed to the physician rather than the patient. *Felix v. Hoffmann-LaRoche, Inc.,* 540 So. 2d 102, 104 (Fla. 1989) (citing *Buckner v. Allergan Pharmaceuticals, Inc.,* 400 So. 2d 820 (Fla. 5th DCA 1981)). This is because the prescribing physician, acting as a "learned intermediary" between the manufacturer and the consumer, weighs the potential benefits against the dangers in deciding whether to recommend the drug to meet the patient's needs. *Id.* A learned intermediary is defined as "one who has knowledge of the danger and whose position vis-a-vis the manufacturer and consumer, confers a duty to convey the requisite warnings to the consumer." *Union Carbide Corp. v. Kavanaugh,* 879 So. 2d 42, 44 (Fla. 4th DCA 2004) (quoting *Brito v. County of Palm Beach,* 753 So. 2d 109, 111 n. 1 (Fla. 4th DCA 1998)); *see also, Hayes v. Spartan Chem. Corp.,* 622 So. 2d 1352, 1354 (Fla. 2d DCA 1993). In certain instances, however, warnings from a supplier to an intermediary alone, are insufficient. Circumstances

may require supplier to ensure that a warning reaches ultimate user. Those circumstances include (1) a product's dangerous nature, (2) its manner of use, (3) the intensity of warnings given, (4) the burdens imposed by additional warnings, and (5) the likelihood that warnings will adequately reach foreseeable users. *Id.* at 45.

In 1996, Congress joined FDA in recognizing problems regarding the ineffective communication of important information regarding prescription drug products, and directed the pharmaceutical industry and other stakeholders to develop a long-range comprehensive action plan to achieve goals consistent with FDA's proposed rule.[3]  In providing guidance regarding the dissemination of information to the public, FDA has, for example, suggested that sponsors also should use various methods to communicate drug safety information. For example, a sponsor may distribute a 'Dear Health Care Professional' letter (sometimes referred to as a "Dear Doctor" letter) to convey important information regarding a marketed drug. A sponsor may issue a Dear Healthcare Professional letter on its

---

[3]*See* Pub. L. 104-180, 110 Stat. 1569 (Aug. 6, 1996). In response to Congress' directive, a committee including representatives of the pharmaceutical industry submitted a plan to the Secretary of the Department of Health and Human Services in December, 1996. *See* Action Plan for the Provision of Useful Prescription Medicine Information, *available at*
    http://www.fda.gov/downloads/AboutFDA/CentersOffices/CDER/Reports
    Budgets/UCM163793.pdf.
Among the goals of this plan were to reduce inappropriate prescriptions by physicians of drugs which result in serious harm to patients. *Id.* at 6.

21

own initiative or following a request by the FDA.[4] FDA explained that "Dear Healthcare Professional letters" may be used to "announce important changes in product labeling,"[5] an action would not pose risks of conflict with the obligations concerning required labeling. The FDA has identified other tools for public communication which could also serve as a platform to educate the public and prescribers of changes in the contents of required labeling.[6]

Federal policy accordingly supports the idea that manufacturers need to ensure that information regarding the safety and efficacy of prescription drugs—as stated in required labeling—reaches those who prescribe, dispense and consume those drugs. *Mensing* does not address or bar claims where a drug manufacturer has inadequately communicated information already appearing in FDA-approved

---

[4]Guidance: Drug Safety Information–FDA's Communication to the Public 10 (2007), *available at*

http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/UCM295217.pdf

These letters must still be "consistent with and not contrary to the drug's approved labeling" 21 C.F.R. § 201.100(d)(1).

[5]*Id.*

[6]These include prominent professional or public notifications to inform healthcare practitioners. Guidance for Industry: Development and Use of Risk Minimization Action Plans (2005) 8-9, *available at*

http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/ UCM071616.pdf

Attempting to reach the prescribing community about labeling changes through this means would not conflict with a manufacturer's obligations concerning that labeling.

labeling. Instead, *Mensing* addresses only those claims involving a generic manufacturer's duty to change the *content* of the drug's labeling.

Plaintiff alleged that Teva failed to take steps to ensure that the medical community learned of the strengthened 2004 label content, and argued to the district court that the PDR had not been updated since 2002 (and therefore did not include the 2004 approved warning content). Allegations that Teva had such a duty under Florida law to alert the medical community to this important change are not preempted because they are equal or identical to the requirements of federal law (and expressly encouraged by FDA). Because Florida law recognizes the learned intermediary doctrine, Teva had a duty to warn prescribers such as Plaintiff's physician of the 2004 label content's warnings concerning extended use of metoclopramide.

To be sure, *Mensing* indicates that state law cannot require generic manufacturers to send "Dear Doctor" letters with warnings that differed from required labeling. *See* 131 S.Ct. at 2576 ("[W]e conclude that federal law did not permit the Manufacturers to issue *additional* warnings through Dear Doctor letters.") (emphasis added). As noted above, however, the parties stipulated and the Supreme Court assumed in *Mensing* that the relevant state laws (*i.e.*, those of Louisiana and Minnesota) require *additional* information. The decision does not

prohibit communications that are "'consistent with and not contrary to [the drug's] approved ... labeling.'" *Id.* (quoting 21 C.F.R. §202.1(d)(1)).

After *Mensing*, some district courts have allowed similarly situated plaintiffs to pursue this theory of liability. *See, e.g., Fisher v. Pelstring*, 817 F. Supp. 2d 791, 835 (D.S.C. Sept. 30, 2011) ("[T]his court finds that the plaintiffs ... sufficiently plead a theory of recovery based on an argument PLIVA should have done more when the 2003 and 2004 labeling changes occurred, such as issue a 'Dear Doctor' letter."); *Brashley-Thrash v. Teva Pharmaceuticals USA, Inc.*, 2011 WL 4025734, *2-3 & n. 1 (S.D. Ala. Sept. 12, 2011) (*Mensing* "did not directly address the issue at hand," with respect to Dear Doctor letters because plaintiff's claim "does not implicate 'additional' warnings."). Another Judge from the Middle District of Florida concluded that these allegations might not be preempted (though that Judge entered summary judgment on the grounds of the learned intermediary doctrine). *Metz v. Wyeth, LLC*, 2012 WL 1058870 (M.D. Fla. Mar. 28, 2012) ("*Metz II*).[7]

The district court's disposition of these issues depended on an erroneously broad view of the impact of *Mensing*, which this Court should correct. *Mensing* did not foreclose liability for failing to adequately communicate a required warning,

---

[7]One state court responsible for "[a]pproximately two thousand" Reglan/metoclopramide cases appears to have rejected the arguments of generic manufacturers that *Mensing* forecloses all allegations sounding in failure to warn, including those allegations that the manufacturers failed to effectively communicate the content of approved label changes in 2004. *Hassett v. Dafoe*, 2012 WL 1512551 (Pa. Ct. Com. Pl. Mar. 22, 2012).

either through the use of Dear Doctor letters, or other forms of communication that did not pose conflicts with Teva's obligations under federal law.

## II.    Florida Law Allows Claims Sounding in Fraud against Wyeth and Schwarz, Even Though They Did Not Manufacture Drugs Consumed by Plaintiffs.

The district court held that there is no legal theory that allows the consumer of generic drugs to seek damages against the brand name manufacturer of such drugs when it did not manufacture the drugs consumed. The court relied substantially on the decision in *Metz I*, which rejected similar claims and allegations. It also relied on a series of (mostly unpublished) decisions in similar cases applying Florida law which reach this result.  Plaintiff urged the district court to consider the decisions in other cases, primarily *Kellogg v. Wyeth,* 762 F. Supp. 2d 694 (D. Vt. 2010) ("*Kellogg*") and *Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 85 Cal. Rptr. 3d 299 (2008) ("*Conte*"), which allowed plaintiffs to pursue claims against Wyeth for negligently and fraudulently disseminating inaccurate and misleading information concerning metoclopramide.

In *Kellogg*, the court held that Vermont's law of strict liability requires that a manufacturer must have sold the product in question in order to be held liable. 762 F. Supp. 2d at 703-04. But the law of strict liability did not eliminate common law actions for negligence or fraud. The court concluded that Wyeth owed a duty to refrain from misrepresenting the risks of Reglan and there was no reason to limit

that duty to circumstances in which a brand name drug was prescribed. As the court explained, the existence of that duty should not depend on the "pharmacist's choice of generic bioequivalent drug to fill the physician's prescription." *Id.* at 708-09.

*Conte*, upon which *Kellogg* relies, similarly explained that the case against Wyeth was a case of "negligent misrepresentation, and not a products liability action. For this reason, Wyeth's reliance on numerous strict products liability cases for the rule that a plaintiff … must the defendant made or sold the allegedly defective product that causes injury sheds no light on the issue presented for our consideration." 168 Cal. App. 4th at 101, 85 Cal. Rptr. 3d at 310. *Conte* also concluded that California law imposed a duty of ordinary care to refrain from misrepresenting the properties of Reglan. *Id.*, 168 Cal. App. 4th at 103-06, 85 Cal. Rptr. 3d at 312-15.

Florida law similarly recognizes these principles, contrary to the conclusions of the district court, which relied on *Metz I* for its analysis of this point. *Metz I* in turn cited *Conley v. Boyle Drug Co.*, 570 So. 2d 275 (Fla. 1990) ("*Conley*"), and *Liggett Group Inc. v. Engle*, 853 So. 2d 434 (Fla. 3d DCA 2003) ("*Engle I*"), *aff'd in part, quashed in part,* 945 So. 2d 1246 (Fla. 2006) ("*Engle II*") for the proposition that a consumer can never sue a manufacturer under Florida law when the consumer does not use that manufacturer's product. Thus, *Metz I* concludes

that Florida law prohibits claims against parties occupying the position of Wyeth and Schwarz because they did not manufacture the product ultimately consumed by the plaintiff. *Metz I*'s conclusions were error and they led to error in this case. Parties occupying the position of Wyeth and Schwarz can be liable to a consumer both for negligent misrepresentation and fraud.

In *Conley*, the Florida Supreme Court adopted the market-share theory of liability for product defect claims arising out of the use of drugs. The market share liability theory permits product defect suits against all manufacturers of a drug when the plaintiff cannot identify the particular manufacturer of the drug consumed by the plaintiff. Any recovery is pro-rated, based on the market share of each respective manufacturer. 570 So. 2d at 279-80. The *Conley* court nonetheless permitted an individual defendant to be excluded from the market share calculus if it could affirmatively show that the plaintiff did not consume that manufacturer's drug. *Id.* at 287.

*Conley*'s holding, that a manufacturer can sometimes be held liable in the absence of certain brand usage, cannot be reasonably be read to prohibit *all* claims against parties occupying the position of Wyeth and Schwarz. Fundamentally, *Conley* authorizes a suit against at least some non-use manufacturers behaving "tortiously," when they contribute to the risk of harm. *Id.* at 281, 287. In another Florida case, *Vincent v. C.R. Bard, Inc.,* 944 So. 2d 1083, 1085-86 (Fla. 2d DCA

27

2006), the court held that a product designer which also manufactures may be liable to foreseeable users of the product for negligent design, even after it sells its manufacturing operation to a third party, and the product that causes by harm is manufactured by that third party. While Plaintiff is not pursuing a negligent design claim against Wyeth and Schwarz in this case, *Vincent* provides another example of a situation in which a manufacturer of a product not used by a consumer can owe a duty of care to that consumer.

The reliance on the *Engle* litigation in this context warrants close examination. *Engle I*'s full history reveals that it does not impose a blanket ban against claims against a non-use manufacturer. As the *Metz I* court noted, 830 F. Supp. 2d at 1295, *Engle I* was subject to further treatment by the Florida Supreme Court in *Engle II*. That court did affirm the relevant aspect of the *Engle I*, 853 So. 2d at 466 n. 46, cited in *Metz I*: to prevail on "negligence, breach of warranty or strict liability" claims, plaintiff must be injured by product sold by a defendant. In context, the court obviously was not referring to claims sounding in fraud. In fact, *Engle II*'s holding and subsequent course show that intentional torts and claims sounding in fraud stand on a different footing, just as the *Kellogg* and *Conte* courts explained as to Vermont and California law.

In *Engle II*, the Florida Supreme Court decertified a statewide class action against the tobacco industry, but preserved for individual class member suits

certain class-wide findings from a jury verdict obtained by the class. One of those findings, that the *Engle* defendants entered into an agreement to conceal the health effects of cigarettes and the addictive properties of nicotine, 945 So. 2d at 1257 n. 4, 1277, can render an *Engle* defendant liable for a class member's smoking-related injuries, even if that defendant did not manufacture cigarettes consumed by a particular class member.

Florida's Third District Court of Appeal has recently had occasion to explain the very language relied upon in *Metz I* from its decision in *Engle I* (prior to review by the supreme court). In *Rey v. Philip Morris, Inc.*, 75 So. 3d 378 (Fla. 3d DCA 2011), some of *Engle* defendants contended that they were not proper defendants in an individual *Engle* case because the class member's estate did not allege that the class member had smoked any cigarettes manufactured by those defendants. The Third District *rejected* arguments that *Engle II* prohibits claims against manufacturers whose products are not consumed by a particular class member. While the Third District was focused on a claim for conspiracy, the underlying tort was concealment, and the court made it clear that the earlier "'brand usage' requirement" imposed by the same court related to only "product liability claims," and not a class member's conspiracy to conceal claim. *Id.* at 380. In a section of the decision labeled "Conspiracy Versus Traditional Product Liability Claims," the court expressly rejected the idea that *Engle II* imposed a brand usage requirement

in that setting. *Id.* at 380-81. Thus, a non-manufacturing defendant that participates in a fraud (which induces reliance and causes harm) *can* be subject to liability—*Engle II* plainly teaches that. While Plaintiff in this case did not allege a conspiracy among the Defendants, she did allege that Wyeth and Schwarz acted to suppress the health effects of a product and mislead the public as to those effects (just as in *Engle*). As the entire course of *Engle* and *Rey* reveals, those allegations do not sound in "traditional" product defect theories, and can result in the imposition of liability against a non-use manufacturer. Thus, Plaintiff's position, urging the district court to follow *Kellogg* and *Conte*, was not only justified, it was the correct view of Florida law.

The district court here (Doc 59 - Pg 3), and *Metz I*, 830 F. Supp. 2d at 1295, also relied on *Levine v. Wyeth, Inc.*, 684 F. Supp. 2d 1338, 1348 (M.D. Fla. 2010), which rejects suits sounding in fraud against parties occupying the position of Wyeth and Schwarz. That is because, according to this decision, there is no contractual or fiduciary duty under Florida law which requires the disclosure of material information to a *consumer*. *Id.* at 1348. The reasoning of this decision should not be endorsed. Just as with failure to warn claims, the learned intermediary doctrine applies to claims against drug manufacturers sounding in fraud, *see Fields v. Mylan Pharmaceuticals, Inc.*, 751 F. Supp. 2d 1260, 1263 (M.D. Fla. 2009) (summary judgment on this ground), and the relevant duties

extend to physicians, not Plaintiff herself. This Court, certainly, should not conclude as a matter of law a drug manufacturer is without duty to refrain from deceiving prescribers concerning the risks of a drug.

Plaintiff's complaint included allegations, which Wyeth and Schwarz did not remove from material dispute, that Wyeth and its predecessor knew that false statements concerning the safety of long-term use of metoclopramide would be relied upon by the medical community and physicians. (Doc 1 - Pg 8-9). She alleged that Schwarz acquired Wyeth while it was in the midst of litigation concerning Reglan and still agreed to indemnify Wyeth for claims relating to its misrepresentations concerning Reglan's safety. (*Id.* - Pg 10). She alleged Wyeth and Schwarz knew that physicians commonly consult the PDR to obtain information about drugs and that it contained inaccurate information. (*Id.* - Pg 12-13). She alleged they concealed the fact that earlier information concerning Reglan disseminated by A.H. Robins was unscientific and false. (Id. - Pg 15). She alleged that Wyeth and Schwarz knew generic manufacturers rely on brand manufacturer marketing to generate sales. (*Id.* – Pg 12). She alleged that representations made to Plaintiff's prescribing physician were negligent. (*Id.* - Pg 17). She alleged that Wyeth and Schwarz concealed material facts and made material misrepresentations and that their concealment and misrepresentation reached the "health care industry." (*Id.* - Pg 20).

31

In arguing against Wyeth and Schwarz's motion, Plaintiff recited the elements of fraud and negligent misrepresentation under Florida law. (Doc 47 - Pg 13). The former requires a false statement of material fact, knowledge of its falsity, intention to induce action in reliance, and injury resulting from reliance. *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985). The latter requires misrepresentation of material fact, negligence as to its truth or falsity, intention to induce action, and injury resulting from reliance. *Baggett v. Electricians Local 915 Credit Union*, 620 So. 2d 784, 786 (Fla. 2d DCA 1993). Plaintiff fairly alleged that her physician (acting as a learned intermediary) was induced to act by the negligent and intentional misrepresentations of Wyeth and Schwarz. These allegations did not sound in product defect and were not controlled by the portions of *Conley* or *Engle I* cited in *Metz I*. Plaintiff alleged that Wyeth and Schwarz's conduct and statements (at least based in part outside the context of federally required labeling) affected the prescribing practices of her physician, which in turn caused her damages. The district court's conclusion that Plaintiff could not pursue such claims was error.

### III. If in Doubt, the Court Should Certify to the Florida Supreme Court the Issue Whether Florida Law Requires Consumers to Establish Brand Usage for Claims against Drug Manufacturers that Sound in Fraud.

While *Engle II* and *Rey* show that Florida does not impose a 'brand usage' requirement in this context, the Court may conclude that there is no controlling

Florida decision which disposes of the precise issues raised here. Certainly, it is Plaintiff's view that the decisions relied upon by the district court and *Metz I* are only persuasive authority at most as to how a Florida appellate court might address that precise issue. Bound as it is under *Erie*, in the absence of "controlling precedent," the Court has the option of addressing such "determinative" questions of law to the Florida Supreme Court pursuant to Fla. R. App. P. 9.150(a). This case may provide an appropriate vehicle to do so for the reasons that appear here. *See, e.g., Union Planters Bank, N.A. v. New York*, 436 F. 3d 1305, 1306 (11th Cir. 2006) (certification of questions to avoid "*Erie* guesses" and to allow state court to "interpret or change existing law"), *quoted in McCall v. United States*, 642 F. 3d 944, 952 (11th Cir. 2011).

Other decisions cited by the district court do not control the disposition of Plaintiff's allegations that Wyeth and Schwarz induced the consumption of a generic drug through misrepresentation or fraud. Again relying on *Metz I* (Doc 59 – Pg 3)*,* the district court cited only one reported Florida decision, *Sharp v. Leichus*, 952 So. 2d 555 (Fla. 1st DCA 2007) ("*Sharp*"). *Sharp* in turn cites *Foster v. American Home Products Corp.*, 29 F. 3d 165 (4th Cir. 1994) ("*Foster*"). Applying Maryland law, *Foster* did reject a claim of negligent misrepresentation against a brand-name manufacturer when the plaintiff consumed only a generic drug. *Sharp¸* however, is a so-called "citation PCA," meaning it cites *Foster*

without any opinion or other information.[8] Such a decision is reviewable by the

Florida Supreme Court only if the decision cited (*i.e., Foster* itself) is pending

review in the Florida Supreme Court, or has been reversed by the Florida Supreme

Court. *Perkins v. State*, 845 So. 2d 273, 274 (Fla. 2d DCA 2003). Because *Foster*

did not arise from the Florida courts, *Sharp* obviously could not have been

reviewed by the Florida Supreme Court. The district court in this case relied in part

on the trial court decision in *Sharp.* (Doc. 59 - Pg 3). But in discharging its

obligations under *Erie*, this Court typically confines its consideration to the

decisions of Florida's appellate courts. *E.g., Lopez v. Target Corp.*, 676 F. 3d

1230, 1236 (11th Cir. 2012). Per curiam affirmances without opinion have "no

precedential value whatever" in the Florida system, *Suntrust Bank v. Riverside

Nat'l Bank of Florida*, 792 So. 2d 1222, 1232 (Fla. 4th DCA 2001), and should not

be considered by this Court as precedent. These circumstances warrant

consideration by the Court in deciding whether to certify the issue identified to the

Florida Supreme Court.

---

[8]Plaintiff questions the vitality of *Foster*, decided seventeen years before
*Mensing*, because it expressly rejected the "assertion that a generic manufacturer is
not responsible for negligent misrepresentations *on its product* labels if it did not
initially formulate the warnings and representations itself." 29 F. 3d at 169
(emphasis added). Rather the court assumed that a generic manufacturer used such
labeling at its peril. *Id.* at 169-70. *Foster* is no longer good law as to this point after
*Mensing*, and Plaintiff believes this calls into question whether its rejection of such
misrepresentation claims against a brand manufacturer remains on firm ground.

The denial of any common law remedy by the district court points in the same direction. Wyeth and Schwarz suggested to the district court that *Mensing* supports the denial of all remedies, against all potential defendants, in this setting. (Doc - Pg 31 n. 9). Teva had made the same argument more forcefully. (Doc 30 - Pg 6). All three Defendants suggested that Justice Sotomayor's dissent in *Mensing* confirms this view. *See Mensing*, 131 S. Ct. at 2592 (Sotomayor, J., dissenting) (If consumer takes "a generic drug, as occurs 75 percent of the time, she now has no right to sue."). And the district court in *Metz I* (again, relied upon the district court in this case) accepted the argument:

> The Court recognizes that, like *Foster*, many of the *pre-Mensing* decisions in Florida and elsewhere apparently assumed that consumers would have a remedy against generic drug manufacturers. This recognition, however, does not compel the conclusion that *Mensing* changed Florida law…. Tellingly, the Supreme Court in *Mensing* appeared to contemplate that consumers of generic drugs may be without a remedy when it noted "the unfortunate hand that federal drug regulation has dealt [consumers of generic drugs]." *Id.* at 2581; *see id.* at 2592 (Sotomayor, J., dissenting) (noting that under majority's decision a consumer of a generic "now has no right to sue"). Even assuming, without deciding, that sound policy reasons exist for broadening the scope of brand name pharmaceutical manufacturers' liability in light of *Mensing*, that is a matter best addressed by the Florida Legislature or the Supreme Court of Florida.

*Metz I*, 830 F. Supp. at 1294 (select citations omitted). For reasons expressed here,

*Mensing* should not be so broadly read.[9]

If, however, this Court adopts the idea that *Mensing*'s scope is as broad as Defendants contend, the need for certification to the Florida Supreme Court intensifies. Obviously, for any theory that is preempted by federal law, federal law reigns. Where that is not the case, however, a federal court exercising diversity jurisdiction should not assume that Florida law countenances the denial of all remedies to an injured consumer, including those damaged by misrepresentation or fraud. The Florida Constitution "guarantees that a remedy shall be provided for every injury, and was intended to codify the familiar maxim, 'ubi jus, ubi remedium.'" *Slatcoff v. Dezen*, 76 So. 2d 792, 794 (Fla. 1955). The state reiterated this principle in the 1968 revision to the Florida Constitution, Art. I. § 21: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."

---

[9] A Justice's dissent does not provide the applicable rule of law, and this Court has expressed the need for caution in using the dissent of a Supreme Court Justice to interpret the effect of a majority decision. It "can be risky to place too much reliance on dissenting opinions because they sometimes take a Chicken Little or doomsday approach, exaggerating aspects of the majority opinion in order to have a bigger target to attack." *Powell v. Barrett*, 541 F.3d 1298, 1308 (11th Cir. 2008) (en banc); *see also id.* at 1314 (Edmonson, J., concurring) ("I think it is jurisprudentially unsound to look at a Justice's dissenting opinion to determine what the Supreme Court has decided in a case."). While the Court has certainly used this interpretive tool in a proper setting, *see id.* at 1308, its use is unwise in this case because *Mensing* nowhere discusses the viability of the state law claim addressed here.

Plaintiff believes that existing Florida law supports her claims against Wyeth and Schwarz but, if the Court has any doubt, she again urges that the issue be certified to the Florida Supreme Court for a definitive response. The fact that the district court left Plaintiff with no redress supports this course of action.

## CONCLUSION

For the reasons argued herein, the Court should reverse the judgment of the district court as to the orders of dismissal and partial summary judgment in favor of Teva, and the order of summary judgment in favor of Wyeth and Schwarz. If the Court is in doubt as to the viability of Plaintiff's misrepresentation and fraud claims against Wyeth and Schwarz, the Court should certify that issue to the Florida Supreme Court for resolution.

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this initial brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B).  This brief contains 8,929 words (including words in footnotes) in Microsoft Word 2010.

_____
David J. Sales

## CERTIFICATE OF SERVICE

I certify that the foregoing has been served via Federal Express ground service and email on this <u>28</u> th day of August, 2012 to all persons on the attached service list.

David J. Sales
Florida Bar Number 794732
DAVID J. SALES, P.A.
1001 U.S. Highway One
Suite 200
Jupiter, FL 33477
(561) 744-0888
(561) 744-0880 (fax)
david@salesappeals.com

# SERVICE LIST

**Brent R. Bigger**
bbigger@uiterwyklaw.com
Abrahamson Uiterwyk
900 W Platt St
Tampa, FL 33606
Telephone:  813-222−0500
Fax:            813-221−4738

**Daniel J. McGlynn**
danny@mcglynnglisson.com
**Terrence J. Donahue , Jr.**
joe@mcglynnglisson.com
McGlynn Glisson Mouton
340 Florida St
Baton Rouge, LA 70801
Telephone:  225-344-3555
Fax:            225-344-3666

**Hildy M. Sastre**
hsastre@shb.com
**Mihai M. Vrasmasu**
mvrasmasu@shb.com
Shook, Hardy &Bacon, LLP
Suite 2400
201 S Biscayne Blvd
Miami, FL 33131-4332
Telephone:  305-358-5171
Fax:            305-358-7470

**Andrew J. Calica**
acalica@mayerbrown.com
**Henninger S. Bullock**
hbullock@mayerbrown.com
**C. J. Summers**
csummers@mayerbrown.com
Mayer Brown, LLP
1675 Broadway
New York, NY 10019-5820
Telephone:  212-506-2500
Fax:             212-262-1910


**Lindsey C. Boney, IV**
lboney@babc.com
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL  35203
Telephone:  205-521-8914
Fax:             205-488-6914


**Scott Parker Yount**
syount@garrisonyount.com
Garrison, Yount, Forte, Mulcahy,
  & Lehner, LLC
601 N. Bayshore Blvd., Suite 800
Tampa, FL 33606-2760
Telephone:  813-275-0404
Fax:             813-275-0304


**David Christopher Banker**
dbanker@bushross.com
**Meredith A Freeman**
mfreeman@bushross.com
Bush Ross, PA
1801 N Highland Ave
PO Box 3913
Tampa, FL 33601-3913
Telephone:  813-224-9255
Fax:             813-223-9620

**Jonathan I. Price**
JPrice@goodwinprocter.com
Goodwin Procter, LLP
The New York Times Building
650 Eighth Ave.
New York, NY 10018-1405
Telephone:  212-459-7480
Fax:          212-355-3333

**Richard A. Oetheimer**
roetheimer@goodwinprocter.com
**Sarah K. Frederick**
sfrederick@goodwinprocter.com
**William F. Sheehan**
wsheehan@goodwinproctor.com
Goodwin Procter, LLP
Exchange Place
53 State St
Boston, MA 02109