No. 12-13263-DD

*In the*

# United States Court Of Appeals

*for the*

# Eleventh Circuit

ANDREA GUARINO,

Appellant-Plaintiff,

v.

WYETH, LLC, SCHWARZ PHARMA, INC.
and TEVA PHARMACEUTICALS USA, INC.,

Appellees-Defendants.

On Appeal from the United States District Court for the
Middle District of Florida,  No. 10-CV-02885-JSM-TGW
Hon. James S. Moody, United States District Judge

## BRIEF OF APPELLEE TEVA PHARMACEUTICALS USA, INC.

William F. Sheehan
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001
Tel.:  202.346.4000
Fax:  202.346.4444
wsheehan@goodwinprocter.com


October 29, 2012

Counsel for Appellee

Richard A. Oetheimer
Sarah K. Frederick
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Tel.: 617.570.1000
Fax: 617.523.1231
roetheimer@goodwinprocter.com
sfrederick@goodwinprocter.com

## RULE 26 CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

1.      Abrahamson & Uiterwyk – Counsel for Appellant Andrea Guarino

2.      Banker, David Christopher – Counsel for Appellee Teva Pharmaceuticals USA, Inc.

3.      Bigger, Brent R. – Counsel for Appellant Andrea Guarino

4.      Boney, IV, Lindsey, C. – Counsel for Wyeth LLC

5.      Bradley Arant Boult Cummings, LLP – Counsel for Appellee Wyeth LLC

6.      Bullock, Henninger S. – Counsel for Appellee Schwarz Pharma, Inc.

7.      Bush Ross, PA – Counsel for Appellee Teva Pharmaceuticals USA, Inc.

8.      Calica, Andrew J. – Counsel for Appellee Schwarz Pharma, Inc.

9.      Curtis, William B. – Counsel for Appellant Andrea Guarino

10.     Curtis Law Group – Counsel for Appellant Andrea Guarino

11.     Donahue, Terrence J. – Counsel for Appellant Andrea Guarino

12.     ERGO Versicherung AG – Insurer for Appellee Schwarz Pharma, Inc. n/k/a UCB, Inc.

13.     Frederick, Sarah K. – Counsel for Appellee Teva Pharmaceuticals USA, Inc.

14.    Freeman, Meredith A. – Counsel for Appellee Teva Pharmaceuticals USA, Inc.

15.    Garrison, Yount, Forte, Mulcahy & Lehner, LLC – Counsel for Appellee Schwarz Pharma, Inc. n/k/a UCB, Inc.

16.    Goodwin Procter LLP – Counsel for Appellee Teva Pharmaceuticals USA, Inc.

17.    Guarino, Andrea – Plaintiff/Appellant

18.     HDI-Gerling Industrie Versicherung AG – Insurer for Appellee Schwarz Pharma, Inc. n/k/a UCB, Inc.

19.    Mayer Brown LLP – Counsel for Appellee Schwarz Pharma, Inc. n/k/a UCB, Inc.

20.    McGlynn, Daniel J. – Counsel for Appellant Andrea Guarino

21.    McGlynn Glisson & Mouton – Counsel for Appellant Andrea Guarino

22.    Mize, Joshua A. – Counsel for Appellee Teva Pharmaceuticals USA, Inc.

23.    Moody, The Honorable James S., Jr. – United States District Judge in the district court proceedings

24.    Oetheimer, Richard A. – Counsel for Appellee Teva Pharmaceuticals USA, Inc.

25.     Pfizer, Inc. – Acquired Appellee Wyeth LLC effective October 15, 2009.  Pfizer trades on the New York Stock Exchange under the symbol PFE.

26.     Price, Jonathan I. – Counsel for Appellee Teva Pharmaceuticals USA, Inc.

27.     Sales, David J. – Counsel for Appellant Andrea Guarino

28.     Sastre, Hildy M. – Counsel for Appellee Wyeth LLC

29.     Schwarz Pharma, Inc. – Appellee Schwarz Pharma, Inc. is now known as UCB, Inc.  UCB, Inc. is wholly owned by UCB Holdings, Inc.

30.     Sheehan, William F. – Counsel for Appellee Teva Pharmaceuticals USA, Inc.

31.     Shook, Hardy & Bacon, LLC – Counsel for Appellee Wyeth LLC

32.     Summers, Carl J. – Counsel for Appellee Schwarz Pharma, Inc. n/k/a UCB, Inc.

33.     Teva Pharmaceuticals USA, Inc. – Appellee Teva Pharmaceuticals USA, Inc.'s parent companies are:  Orvet UK, Teva Pharmaceutical Holdings Coöperatieve U.A., Teva Pharmaceuticals Europe B.V., and Teva Pharmaceutical Industries, Ltd.  Teva Pharmaceutical Industries, Ltd. (Ticker:  TEVA), an Israeli corporation, is the only publicly-traded company that owns – through the aforementioned chain  – 10% or more of Teva Pharmaceuticals USA, Inc.

34.     Yount, Scott Parker – Counsel for Appellee Schwarz Pharma, Inc.

35.    Vrasmasu, Mihai M. – Counsel for Appellee Wyeth LLC

36.    Wyeth LLC – Appellee Wyeth LLC was acquired by Pfizer, Inc.

effective October 15, 2009.  Pfizer trades on the New York Stock Exchange under

the symbol PFE.

37.    XL Insurance – Insurance carrier for Appellee Teva Pharmaceuticals

USA, Inc.

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Teva Pharmaceuticals USA, Inc. believes that the issue presented in this appeal is sufficiently settled but agrees with Plaintiff-Appellant Andrea Guarino that, if the court deems it necessary, oral argument may assist the Court in addressing the issues presented by Ms. Guarino's appeal.

# TABLE OF CONTENTS

**RULE 26 CERTIFICATE OF INTERESTED PERSONS
    AND CORPORATE DISCLOSURE**......................................................C-1

**STATEMENT REGARDING ORAL ARGUMENT** ............................................i

**JURISDICTIONAL STATEMENT**....................................................1

**ISSUE PRESENTED** ...............................................................1

**STATEMENT OF THE CASE**........................................................1

**SUMMARY OF ARGUMENT** .........................................................5

**STANDARD OF REVIEW** ...........................................................7

**ARGUMENT** .....................................................................7

**I.**    The District Court Correctly Held That *Mensing* Requires Dismissal of
        Plaintiff's Negligence Count As Preempted....................................7

**II.**    Plaintiff's "Failure to Communicate" Theory Fails To State a Viable
        Claim for Relief. ..........................................................17

    **A.**    Under Florida Law, A Drug Manufacturer Fulfills Its Duty To
            Warn By Accompanying Its Product With an Adequate Warning.....18

    **B.**    Under Florida Law, There Is No Duty To Communicate
            Inadequate Warnings.......................................................21

**CONCLUSION**...................................................................23

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)** ...............................24

**ADDENDUM**

A.    *Smith v. Wyeth, Inc.*, Nos. 09-5460/5466/5509, slip op. (6th Cir. Nov.
        22, 2011). ..................................................................1a

B.    Appellant Gladys Mensing's Mot. for Leave to File a Suppl. Br.,
        *Mensing v. Wyeth, Inc.*, No. 08-3850 (8th Cir. Sept. 8, 2011). .....................2a

C.    *Billingsly v. Mem'l Hosp. at Gulfport*, Cause No. A2401-11-192, slip op. (Miss. Cir. Ct., Harrison Cnty. Oct. 8, 2012). .........................................6a

D.    *Kellogg v. Wyeth*, No. 2:07-cv-82, slip op. (D. Vt. Mar. 30, 2012). ...........12a

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">CASES</span>

*Altria Grp. v. Good*,
    555 U.S. 70 (2008)............................................................................17

*Billingsly v. Mem'l Hosp. at Gulfport*,
    Cause No. A2401-11-192, slip op. (Miss. Cir. Ct., Harrison Cnty. Oct. 8,
    2012) .............................................................................................15

*Bowman v. Wyeth, LLC*,
    No. 10-1946, 2012 WL 684116 (D. Minn. Mar. 2, 2012)............................14, 21

*Brasley-Thrash v. Teva Pharms. USA, Inc.*,
    No. 10-00031, 2011 WL 4025734 (S.D. Ala. Sept. 12, 2011) ....................15, 16

*Buckner v. Allergan Pharms., Inc.*,
    400 So. 2d 820 (Fla. 5th DCA 1981)..................................................18

*Cipollone v. Liggett Grp., Inc.*,
    505 U.S. 504 (1992)......................................................................17

*Coney v. Mylan Pharms., Inc.*,
    No. 6:11-cv-35, 2012 WL 170143 (S.D. Ga. Jan. 19, 2012)............................22

*Dayton v. Peck, Stow & Wilcox (Pexto)*,
    739 F.2d 690 (1st Cir. 1984)..............................................................21

*Del Valle v. PLIVA, Inc.*,
    No. B:11-113, 2011 WL 7168620 (S.D. Tex. Dec. 21, 2011) ....................11, 15

*Del Valle v. Qualitest Pharms., Inc.*,
    2012 WL 2899406 (S.D. Tex. June 22, 2012)..................................................11

*Demahy v. Schwarz Pharma, Inc.*,
    No. 11-31073, 2012 WL 5261492 (5th Cir. Oct. 25, 2012) ........................10, 21

*Douglas Asphalt Co. v. QORE, Inc.*,
    657 F.3d 1146 (11th Cir. 2011) ..........................................................20

iv

*E.R. Squibb & Sons, Inc. v. Farnes*,
  697 So. 2d 825 (Fla. 1997) ...........................................................................19, 20

*Felix v. Hoffman-LaRoche, Inc.*,
  540 So. 2d 102 (Fla. 1989) ......................................................................6, 18, 19

*Fisher v. Pelstring*,
  817 F. Supp. 2d 791 (D.S.C. 2011) .............................................................15, 16

*Gross v. Pfizer, Inc.*,
  825 F. Supp. 2d 654 (D. Md. 2011)...................................................................15

*Guarino v. Wyeth LLC*,
  No. 10-CV-02885-JSM-TGW, 2012 WL 28810 (M.D. Fla. Jan. 5, 2012) ..........4

*Guarino v. Wyeth LLC*,
  823 F. Supp. 2d 1289 (M.D. Fla. 2011).....................................................*passim*

*Hassett v. Dafoe*,
  Nos. 1551/1997, 2012 WL 1512551 (Pa. Ct. Common Pleas Mar. 22,
  2012) ...............................................................................................................16

*Hogue v. Pfizer, Inc.*,
  No. 2:10-cv-00805, 2012 U.S. Dist. LEXIS 140674 (S.D. Ohio Sept. 27,
  2012) ...............................................................................................................13

*Horsley v. Rivera*,
  292 F.3d 695 (11th Cir. 2002) ...........................................................................7

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*,
  MDL No. 2243, 2011 WL 5903623 (D.N.J. Nov. 21, 2011) ............................22

*Kellogg v. Wyeth*,
  No. 2:07-cv-82, 2012 WL 368658 (D. Vt. Feb. 3, 2012)...................................14

*Kellogg v. Wyeth*,
  No. 2:07-cv-82, slip op. (D. Vt. Mar. 30, 2012)................................................20

*Lucas v. W.W. Grainger, Inc.*,
  257 F.3d 1249 (11th Cir. 2001) ........................................................................17

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996).........................................................................................17

*Mensing v. Wyeth, Inc.*,
    562 F. Supp. 2d 1056 (D. Minn. 2008)................................................................8

*Mensing v. Wyeth, Inc.*,
    658 F.3d 867 (8th Cir. 2011) .............................................................................14

*Metz v. Wyeth, LLC*,
    No. 8:10-cv-2658, 2012 WL 1058870 (M.D. Fla. Mar. 28, 2012)....................19

*Moore v. Mylan Inc.*,
    840 F. Supp. 2d 1337 (N.D. Ga. 2012)...............................................................14

*Moretti v. PLIVA, Inc.*,
    No. 2:08-CV-00396, 2012 WL 628502 (D. Nev. Feb. 27, 2012) ......................14

*Morris v. Wyeth, Inc.*,
    No. 3:09-cv-854, 2012 WL 601455 (W.D. La. Feb. 23, 2012)....................21, 22

*Morris v. Wyeth, Inc.*,
    No. 3:09-cv-854, 2011 WL 4973839 (W.D. La. Oct. 19, 2011) ........................15

*\*PLIVA, Inc. v. Mensing*,
    131 S. Ct. 2567 (2011)................................................................................*passim*

*Smith v. Wyeth, Inc.*,
    657 F.3d 420 (6th Cir. 2011) .............................................................................13

*Smith v. Wyeth, Inc.*,
    Nos. 09-5460/5466/5509, slip op. (6th Cir. Nov. 22, 2011)..............................13

*Smith v. Wyeth, Inc.*,
    132 S. Ct. 2013 (2012)........................................................................................13

*Strayhorn v. Wyeth Pharms., Inc.*,
    No. 11-2058-STA-cgc, 2012 WL 3261377 (W.D. Tenn. Aug. 8, 2012) ...........17

*Waguespack v. PLIVA USA, Inc.*,
    No. 10-692, 2011 WL 5826015 (E.D. La. Nov. 3, 2011)...................................22

*Wyeth v. Levine*,
    555 U.S. 555 (2009)..............................................................................................9

**FEDERAL STATUTES AND RULES**

21 U.S.C. § 321(m) ................................................12

21 U.S.C. § 355(j)(2)(A) ...........................................5, 11

28 U.S.C. § 1291 .................................................1

28 U.S.C. § 1332(a) ..............................................1

**FEDERAL REGULATIONS**

21 C.F.R. § 201.100(d)(1) .........................................16

21 C.F.R. § 202.1(*l*)(2) ...........................................6, 11, 12

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) TORTS § 402A, cmt. k ..........................6, 19, 20

## JURISDICTIONAL STATEMENT

As set out in the parties' Joint Response to Jurisdictional Questions, filed herein at the request of the Court on August 15, 2012, the District Court had jurisdiction over this case under 28 U.S.C. § 1332(a) (diversity jurisdiction) because there is complete diversity of the parties and the amount in controversy is over $75,000.  This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## ISSUE PRESENTED

Whether the District Court correctly held that, under *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), Plaintiff's negligence claim against Teva is preempted by federal law.

## STATEMENT OF THE CASE

Plaintiff-Appellant Andrea Guarino ("Plaintiff") claims that she developed a condition known as tardive dyskinesia by taking the generic version of the drug Reglan®, called metoclopramide.  She sued several manufacturers of Reglan® as well as Teva Pharmaceuticals USA, Inc. ("Teva"), a manufacturer of metoclopramide.  (*See generally* Doc. 1.)  The Food and Drug Administration ("FDA") approved Reglan® in 1980 for the short-term (4- to 12-week treatment) of

stomach conditions like diabetic gastroparesis and gastroesophageal reflux disease.[1]  Generic metoclopramide has been available since 1985.

Plaintiff's physician prescribed Reglan® to her "in or around May 2007" to treat stomach pain and digestive problems.  (Doc. 1, ¶ 20.)  Plaintiff alleged that her doctor "relied upon information published in the package inserts and/or the Physicians' Desk Reference . . . or otherwise disseminated by" the brand-name drug manufacturer.  (Doc. 1, ¶ 22.)  Since well before May 2007, the Reglan® labeling has included the following warnings against long-term use and the risk of tardive dyskinesia:

- "**INDICATIONS AND USAGE** . . . Reglan Tablets are indicated as short-term (4 to 12 weeks) therapy . . . ."

- "**WARNINGS** . . . **Tardive Dyskinesia** . . . Both the risk of developing the syndrome and the likelihood that it will become irreversible are believed to increase with the duration of treatment and the total cumulative dose."

- "**DOSAGE AND ADMINISTRATION** . . . Therapy longer than 12 weeks has not been evaluated and cannot be recommended."

*See, e.g.*, Reglan® Package Insert (Feb. 2004).  In 2004, the phrase "therapy should not exceed 12 weeks in duration" was added to the Indications and Usage section of the label, and the FDA mandated a boxed warning about the risk of tardive

---

[1]  Doc. 1, ¶ 13; *see also* Reglan® Package Insert (Feb. 2004), *available at* Drugs@FDA, http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm?fuseaction=Search.Label_ApprovalHistory#labelinfo (search:  "Reglan") (last accessed Oct. 25, 2012) (hereinafter, "Reglan Package Insert (Feb. 2004)").

dyskinesia in 2009.  *Id.*; *see also* Reglan® Package Insert (Aug. 2011), *available at* Drugs@FDA, http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm? fuseaction=Search.Label_ApprovalHistory#labelinfo (search:  "Reglan") (last accessed Oct. 25, 2012).

Plaintiff took metoclopramide from approximately May 2007 "through and until approximately August 2007."  (Doc. 1, ¶ 20.)  She alleges that she began exhibiting symptoms of tardive dyskinesia in October 2007.  (Doc. 1, ¶¶ 27, 28.) She claims that she was harmed because of "Defendants' dissemination of inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the potential effects of exposure to and long-term ingestion of Reglan/metoclopramide to the medical community."  (Doc. 1, ¶ 29.)  Her Complaint includes many allegations that Reglan®/metoclopramide's labeling was inadequate to warn of the risk of tardive dyskinesia.  (Doc. 1, ¶¶ 26, 29, 31, 32, 33, 75, 79, 81, 83.)

Plaintiff brought five counts against Teva and the brand-name drug manufacturers—negligence, strict liability, breach of warranties, misrepresentation and fraud, and negligence per se.  Plaintiff has since abandoned all counts against Teva except for negligence.  Appellant's Br. at 3–4.

Relying on *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), Teva moved for judgment on the pleadings on the ground that Plaintiff's claims are preempted by

3

federal drug laws. *Mensing* held that state-law failure-to-warn claims against manufacturers of generic drugs are preempted. *See generally Mensing*, 131 S. Ct. at 2577–82. *Mensing* involved the same claims as in this case, the same alleged injury, the same generic manufacturer defendant, and the same federal laws. In addition—like this case—*Mensing* was decided at the pleadings stage (on a motion to dismiss).

The District Court rejected Plaintiff's argument that she had alleged non-preempted claims, including one for failing adequately to communicate the warnings contained in the drug's labeling. The court held that Plaintiff's complaint alleged "precisely the same kinds of preempted failure-to-warn claims" as the complaint in *Mensing* and that "the Supreme Court specifically rejected Plaintiff's failure-to-communicate argument." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1292 (M.D. Fla. 2011) (Doc. 39.)

Plaintiff moved for reconsideration but the court denied the motion because it presented no grounds for reconsideration and the weight of authority dismissing similar claims confirmed the propriety of dismissal. *Guarino v. Wyeth LLC*, No. 10-CV-02885-JSM-TGW, 2012 WL 28810, at *1 (M.D. Fla. Jan. 5, 2012) (Doc. 49) (noting "recently over twenty additional decisions have been entered dismissing materially identical claims in the face of the same or similar arguments").

4

Plaintiff moved for reconsideration again, but the District Court denied that motion as well.  (Doc. 66.)  This appeal followed.

## SUMMARY OF ARGUMENT

*PLIVA, Inc. v. Mensing* held that "federal drug regulations applicable to generic drug manufacturers directly conflict with, and thus pre-empt" state-law claims for an "alleged failure to provide adequate warning labels for generic metoclopramide."  131 S. Ct. at 2572.  The Court's holding was based on federal law that requires generic drug labeling to be the "same as" that of brand-name drugs.  *See* 21 U.S.C. § 355(j)(2)(A).  Generic drug manufacturers cannot be subject to state-court judgments that would require them to warn differently from their brand-name counterparts.  *Mensing*, 131 S. Ct. at 2577–78.

The Supreme Court in *Mensing* acknowledged that "the special, and different, regulation of generic drugs" means that "federal law pre-empts these lawsuits"—for the *Mensing* plaintiffs ***and for "others similarly situated."***  *Id.* at 2581–82 (emphasis added).  Plaintiff is one of those "other[] similarly situated" plaintiffs.

Plaintiff contends that Teva can be held liable in negligence for failing adequately to communicate the 2004 revision of the Reglan® labeling through "Dear Doctor" letters (an informational and promotional mailing to physicians).  Appellant's Br. at 12.  That argument is squarely precluded by *Mensing*.  The

5

plaintiffs in *Mensing* argued that, despite generic drug manufacturers' inability to change the warning language on the labels that accompany drugs with shipment, they could still fulfill their duty to warn by sending a "Dear Doctor" letter.  *See Mensing*, 131 S. Ct. at 2576.  The Supreme Court took a different view—*i.e.,* that Dear Doctor letters "qualify as 'labeling'" under federal regulations and are subject to the duty of sameness.  *Id.*; *see* 21 C.F.R. § 202.1(*l*)(2).  It held that "if generic drug manufacturers, but not the brand-name manufacturer, sent such letters, that would inaccurately imply a therapeutic difference between the brand and generic drugs and thus could be impermissible 'misleading.'"  *Mensing*, 131 S. Ct. at 2576.

Apart from preemption, Plaintiff has failed to state a viable claim against Teva for negligence under Florida substantive law, which would apply to this Florida resident.  A drug company's duty to warn is satisfied by the provision of an adequate label accompanying the product.  *See Felix v. Hoffman-LaRoche, Inc.*, 540 So. 2d 102, 105 (Fla. 1989) (holding that where a drug's package insert is "accurate, clear, and unambiguous" in conveying the risks of the drug, a court must direct judgment to the pharmaceutical defendant); RESTATEMENT (SECOND) TORTS § 402A, cmt. k (A product "incapable of being made safe for their intended and ordinary use," such as many drugs, if "properly prepared, ***and accompanied by proper directions and warning***, is not defective, nor is it unreasonably dangerous." (emphasis added)).  Accordingly, Plaintiff's claim that Teva had an extra duty to

6

communicate the existence of the 2004 label change to the medical community
fails to state a claim under settled Florida law.

Moreover, Plaintiff's contention that Teva should have communicated the
2004 label change to the medical community is defeated by her allegations that the
2004 warning itself was "inadequate."  (*See, e.g.*, Doc. 1, ¶ 31 ("Recognizing **the
inadequate nature of the Defendants' [2004] label and warnings,** in February
2009" the FDA required a black box warning for Reglan®.  (emphasis added)); *see
also id.* ¶¶ 29, 96, 97.)  Having alleged that the 2004 warning was inadequate,
Plaintiff cannot now argue for the existence of a duty to communicate an
inadequate warning.  No Florida court has ever recognized such a duty, and there is
no reason for this Court to be the first one to do so.

## STANDARD OF REVIEW

On review of a dismissal on the pleadings, this Court accepts all factual
allegations in the Complaint as true and reviews the District Court's legal rulings
*de novo.  See Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).

## ARGUMENT

**I.    The District Court Correctly Held That *Mensing* Requires Dismissal of
Plaintiff's Negligence Count As Preempted.**

*Mensing* is on all fours with this case.  *Mensing* involved the same generic
drug, metoclopramide.  It involved the same claims:  Ms. Mensing alleged that she
was injured by defendants' "dissemination of inaccurate, misleading, materially

7

incomplete, false, and otherwise inadequate information concerning the potential effects of exposure to" the drug.  J.A., Vol. 1, *PLIVA, Inc. v. Mensing*, 2011 WL 1209890, at *23 (U.S. Jan. 24, 2011).  Likewise, Plaintiff here alleges that she was injured by the "Defendants' dissemination of inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the potential effects of exposure to" the drug.  (Doc. 1, ¶ 29.)  *Mensing* also involved the same alleged injury, tardive dyskinesia; it involved the same federal law governing the labeling of generic drugs; and it came before the Supreme Court in the same procedural posture—on appeal from a motion to dismiss.  *See Mensing*, 131 S. Ct. at 2573.

Mensing spread her claims across fifteen counts[2] but, as the Minnesota District Court held in that case, all of them were "essentially 'failure to warn' claims."  *Mensing v. Wyeth, Inc.*, 562 F. Supp. 2d 1056, 1061 n.6 (D. Minn. 2008). The Supreme Court agreed:  it held in unequivocal terms that "federal drug regulations applicable to generic drug manufacturers directly conflict with, and thus, pre-empt these state-law claims."  *Mensing*, 131 S. Ct. at 2572.  The Court

---

[2] They included strict products liability, negligence, misrepresentation by omission, negligent misrepresentation, fraud by concealment, violation of a state consumer protection act, breach of implied warranties, constructive fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress.  J.A., Vol. 1, *PLIVA, Inc. v. Mensing*, 2011 WL 1209890, at *106–50.

recognized that its holding would apply to all plaintiffs who take generic prescription drugs:

> Had Mensing and Demahy taken Reglan, the brand-name drug prescribed by their doctors, *Wyeth* [*v. Levine*, 555 U.S. 555 (2009),] would control and their lawsuits would not be pre-empted. But because pharmacists, acting in full accord with state law, substituted generic metoclopramide instead, federal law pre-empts these lawsuits.

*Id.* at 2581; *see also id.* (noting its holding applies to "Mensing, Demahy, **and others similarly situated**" (emphasis added)).[3]

Plaintiff's claim for negligence against Teva is a failure-to-warn claim on its face and falls squarely under *Mensing*. She alleges that she was injured due to Teva's dissemination of "inadequate information" (Doc. 1, ¶ 29), and that Teva "failed to warn that" Reglan® may cause injury (*id.* ¶ 96), and, similarly, "[f]ailed to accompany [its] product with proper or adequate warnings"; "[f]ailed to provide warnings"; "[f]ailed to adequately test and/or to warn"; and "[f]ailed to adequately warn" about the dangers and severity of injury caused by Reglan® (*id.* ¶ 97). Her brief describes her negligence claim as asserting "a failure to provide information to medical providers about the appropriate use of [the drug, and] a failure to warn medical providers about the risks of extended use of" the drug. Appellant's Br.

---

[3] The dissent in *Mensing* agreed that the controlling decision was sweeping: "If a consumer takes a brand-name drug, she can sue the manufacturer for inadequate warnings under our opinion in *Wyeth*. If, however, she takes a generic drug, as occurs 75 percent of the time, she now has no right to sue." *Mensing*, 131 S. Ct. at 2592 (Sotomayor, J., dissenting).

at 4.  As the District Court correctly recognized, however, "Plaintiff's claims are, on their face, premised on an allegedly inadequate warning," and, moreover, the Supreme Court in *Mensing* "specifically rejected Plaintiff's failure-to-communicate argument."  *Guarino*, 823 F. Supp. 2d at 1292; *see also Demahy v. Schwarz Pharma, Inc.*, No. 11-31073, 2012 WL 5261492, at *6 (5th Cir. Oct. 25, 2012) (rejecting plaintiff's argument that her claims fell outside *Mensing*'s scope, holding they "are, at base, failure-to-warn claims, which would be preempted in light of *Mensing*").

Plaintiff says that she eludes *Mensing*'s reach because she makes a claim *Mensing* supposedly did not address—that generic manufacturers have a state-law duty not only to label their drugs accurately but also to communicate the *fact* of drug labeling to doctors, a duty that is not satisfied by the label itself.  *See, e.g.*, Appellant's Br. at 7 (arguing that Teva failed "to communicate to the medical community the fact that in 2004 the required label for metoclopramide was strengthened"); *id.* at 8 (alleging that Teva "failed to communicate to prescribers the content of federally approved labels" and "took no steps to alert the medical community to the important 2004 change in labeling").  Plaintiff argues that Teva should have communicated the fact of the 2004 labeling change through a "Dear Doctor" letter.  *Id.* at 21.

10

That argument, as the District Court correctly held, was rejected in *Mensing*. Generic drugs must be the "same as" brand-name drugs in every clinically significant way, *see* 21 U.S.C. § 355(j)(2)(A), and that means, as *Mensing* noted, that the ***labeling*** must be the same.  131 S. Ct. at 2574.  "Labeling" encompasses an exceedingly broad set of written and oral communications.  It is not limited to the "package insert" (often colloquially referred to as the "label"), that accompanies the drug upon shipment.  Rather, the FDA defines "labeling" as:

> Brochures, booklets, mailing pieces, detailing pieces, file cards, bulletins, calendars, price lists, catalogs, house organs, letters, motion picture films, film strips, lantern slides, sound recordings, exhibits, literature, and reprints and similar pieces of printed, audio, or visual matter descriptive of a drug and references published (for example, the "Physicians Desk Reference") for use by medical practitioners, pharmacists, or nurses, containing drug information supplied by the manufacturer, packer, or distributor of the drug and which are disseminated by or on behalf of its manufacturer, packer, or distributor . . . .

21 C.F.R. § 202.1(*l*)(2); *see also Del Valle v. PLIVA, Inc.*, No. B:11-113, 2011 WL 7168620, at *6 (S.D. Tex. Dec. 21, 2011) (Magistrate Report and Recommendation) ("[L]abeling is so broadly defined that it encompasses nearly every conceivable form of communication with medical professionals."), *adopted sub nom. Del Valle v. Qualitest Pharms., Inc.*, 2012 WL 2899406 (S.D. Tex. June 22, 2012), *app. pending*.

The plaintiffs in Mensing argued that, short of changing the package insert, generic drug defendants "could have used 'Dear Doctor' letters to send additional

11

warnings to prescribing physicians and other healthcare professionals." *Mensing*, 131 S. Ct. at 2576.  The Supreme Court rejected that argument because "Dear Doctor letters qualify as 'labeling.'" *Id.* (citing 21 U.S.C. § 321(m); 21 C.F.R. § 202.1(*l*)(2)).  The Court held that, as a result, any claim based on a failure to send a Dear Doctor letter is preempted by federal law.  *Id.*

Plaintiff cannot save her claim from preemption by arguing that Teva could have sent "communications that are consistent with" the drug's approved labeling. Appellant's Br. at 24 (internal quotation marks omitted).  The plaintiffs in *Mensing* made the same argument—that "[e]specially at the motion to dismiss stage, the Court must assume that the [generic drug manufacturer] Defendants could have drafted a [Dear Doctor] letter that would not have implied any [] therapeutic difference" between the generic and the branded drug.  Br. for Resp'ts Gladys Mensing & Julie Demahy, *PLIVA, Inc. v. Mensing*, Nos. 09-993, 09-109, 09-1501, 2011 WL 686400, at *37 (U.S. Feb. 23, 2011).  But the Supreme Court rejected it, ruling that "if generic manufacturers, but not the brand-name manufacturer, sent such letters, that would inaccurately imply a therapeutic difference between the brand and generic drugs and thus could be impermissibly 'misleading.'" *Mensing*, 131 S. Ct. at 2576 (citing U.S. Br. at 19; 21 C.F.R. § 314.150(b)(3)).  The District Court in this case addressed this additional ground for dismissal in its opinion,

12

recognizing that "the Supreme Court specifically rejected Plaintiff's failure-to-communicate argument." *Guarino*, 823 F. Supp. 2d at 1292.

Since *Mensing*, many other courts, including the Sixth and Eighth Circuit Courts of Appeal, have dismissed claims based on the exact same argument.

Plaintiffs on appeal in three generic metoclopramide product liability cases in the Sixth Circuit were granted supplemental briefing on *Mensing*'s impact on their claims. They urged that "[c]laims against the Generic Drug Company Appellees . . . arising after July 2004 for failing to effectively communicate the FDA-approved warnings for metoclopramide" are not preempted. Appellants' Suppl. Letter Br., *Smith v. Wyeth, Inc.*, 2011 WL 3662688, at *1–2 (6th Cir. Aug. 15, 2011). The Sixth Circuit rejected that argument, holding: "The plain language of the [*Mensing*] decision compels the same result here." *Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011); *see also Hogue v. Pfizer, Inc.*, No. 2:10-cv-00805, 2012 U.S. Dist. LEXIS 140674, at *15–16 (S.D. Ohio Sept. 27, 2012) (noting plaintiff's argument "that *Mensing* does not preempt a negligence claim based on Generic Defendants' failure to communicate the FDA-approved warnings through use of Dear Doctor letters" and holding that the Sixth Circuit "rejected" the argument). Plaintiffs' petition for rehearing was denied, *Smith v. Wyeth, Inc.*, Nos. 09-5460/5466/5509, slip op. (6th Cir. Nov. 22, 2011) (1a), as was their petition for a writ of *certiorari*, *Smith v. Wyeth, Inc.*, 132 S. Ct. 2103 (2012).

13

On remand to the Eighth Circuit from the Supreme Court, plaintiff Mensing

asked for supplemental briefing on the "failure to communicate" theory.[4]  The

Eighth Circuit denied supplemental briefing and affirmed the district court's

dismissal of all claims.  *Mensing v. Wyeth, Inc.*, 658 F.3d 867 (8th Cir. 2011); *see*

*also Bowman v. Wyeth, LLC*, No. 10-1946, 2012 WL 684116, at *7 n.6 (D. Minn.

Mar. 2, 2012) (noting "it appears as though the Eighth Circuit *has* addressed this

claim and found it, too, to be preempted under *Mensing*").

In short, court after court applying *Mensing* to the same allegations of

inadequate warning against generic drug companies has ruled that "failure to

communicate" arguments essentially identical to Plaintiff's are preempted.[5]

---

[4] Appellant Gladys Mensing's Mot. for Leave to File a Suppl. Br., *Mensing v. Wyeth, Inc.*, No. 08-3850, at 3 (8th Cir. Sept. 8, 2011) (arguing that "claims arising from the Generic Drug Company Appellees' failure-to-effectively communicate the FDA-approved warnings for metoclopramide are not preempted") (2a).

[5] *See also Moore v. Mylan Inc.*, 840 F. Supp. 2d 1337, 1348 n.11 (N.D. Ga. 2012) (rejecting plaintiff's argument "that *Mensing* is silent as to the duty and ability of generic manufacturers to communicate existing warnings to the medical community, or to alert individuals to important safety related labeling changes made by brand-name labels"); *Moretti v. PLIVA, Inc.*, No. 2:08-CV-00396, 2012 WL 628502, at *5–6 (D. Nev. Feb. 27, 2012) ("The court rejects plaintiff's arguments that she has claims that survived *Mensing* based on . . . [the generic manufacturer's] failure to communicate warnings about metoclopramide by 'tools' other than the labeling for metoclopramide.  Numerous other courts have rejected th[is] same argument[] and dismissed lawsuits against generic drug manufacturers. . . .  The court agrees with the preemption analyses contained in those decisions."), *app. pending*; *Bowman*, 2012 WL 684116, at *5–6 (noting plaintiff "believes that claims based on [the generic defendant's] alleged failure to include or communicate the 2004 labeling changes to the brand-name drug are not

14

In response, Plaintiff cites three flawed cases to support her argument. *See* Appellant's Br. at 24. *Fisher v. Pelstring*, 817 F. Supp. 2d 791 (D.S.C. 2011), and *Brasley-Thrash v. Teva Pharmaceuticals USA, Inc.*, No. 10-00031-KD-N, 2011 WL 4025734 (S.D. Ala. Sept. 12, 2011), improperly fail to apply *Mensing*, and are out of step with the vast majority of cases dismissing ***all*** claims against generic defendants. As noted above, the Supreme Court in *Mensing* **rejected** the plaintiffs' argument that "the Court must assume" at the motion to dismiss stage that a Dear

preempted" and holding that "[a]lthough [plaintiff] attempts to distinguish his various theories of liability, his claims are all based on [the generic defendant's] alleged failure to provide adequate information or warnings, and thus are preempted under *Mensing*"); *Kellogg v. Wyeth*, No. 2:07-cv-82, 2012 WL 368658, at *5 (D. Vt. Feb. 3, 2012) ("To the extent the Kellogg's [Second Amended Complaint] can be read to assert liability against the Generic Defendants for failure to provide adequate warnings through dissemination of nonpromotional information, these claims are also preempted."); *Gross v. Pfizer, Inc.*, 825 F. Supp. 2d 654, 659 (D. Md. 2011*)* ("Plaintiff's claims based on [the generic drug manufacturer's] alleged concealment of safety information are preempted under *Mensing*."), *app. pending*; *Morris v. Wyeth, Inc.*, No. 3:09-cv-854, 2011 WL 4973839, at *2 (W.D. La. Oct. 19, 2011) (rejecting argument that "that Generic Defendants' failure to utilize various FDA-recommended 'communication tools' for the purpose of reporting newly identified product risks without seeking labeling changes suggests that the preemption described in *Mensing* should not preclude state law failure to warn claims" and dismissing all claims with prejudice), *app. pending*; *Del Valle*, 2011 WL 7168620, at *6 ("Del Valle also attempts to evade the holding of *Mensing* by arguing that the generic drug defendants could have taken other steps to communicate the dangers of the long term use of metoclopramide. This argument seems to ignore the fact that it is the FDA that controls the labeling of generic drugs."); *Billingsly v. Mem'l Hosp. at Gulfport*, Cause No. A2401-11-192, slip op. at 5 (Miss. Cir. Ct., Harrison Cnty. Oct. 8, 2012) ("*Mensing* is unequivocal, the warnings supplied by generic manufacturers are governed by federal law and any state law claim imposing warning requirements on generic manufacturers is preempted.") (6a).

15

Doctor letter would not "impl[y] any [] therapeutic difference" between and brand and generic drug.  Br. for Resp'ts Gladys Mensing & Julie Demahy, *PLIVA, Inc. v. Mensing*, 2011 WL 686400, at *37.  The Court held instead that a Dear Doctor letter "would inaccurately imply a therapeutic difference between the brand and generic drugs and thus could be impermissibly 'misleading.'"  *Mensing*, 131 S. Ct. at 2576.[6]  The third case cited by Plaintiff, *Hassett v. Dafoe*, Nos. 1551/1997, 2012 WL 1512551 (Pa. Ct. Common Pleas Mar. 22, 2012), is a mass tort case in which the court refused to dismiss the "communicate" theory on preliminary objections deemed "premature," and then certified its decision for immediate review, citing a strong divergence of opinion on an important question of law.  The case is pending on appeal and regardless is not authority in support of Plaintiff's argument.

In sum, the District Court correctly held that *Mensing* governs and requires the dismissal of Plaintiff's theory that Teva breached a state-law duty to

---

[6] Moreover, these cases cite 21 C.F.R. § 201.100(d)(1) for the proposition that generic drug companies can send warning letters that are "consistent with and not contrary to" a drug's approved labeling.  *Brasley-Thrash*, 2011 WL 4025734, at *3; *Fisher*, 817 F. Supp. 2d at 813–14.  "Consistency" is not the standard under federal law.  21 C.F.R. § 201.100(d)(1) states that all parts of a generic drug's labeling providing information about "indications, effects, dosages, routes, methods, and frequency and duration of administration ***and any relevant warnings***, hazards, contraindications, side effects, and precautions" ***must be*** "***the same in language and emphasis*** as"—not merely consistent with—labeling approved or permitted by FDA.  *Id.* (emphasis added).  It is only non-warnings information, such as the placement of trademarked material, that need only meet the less stringent "consistent with" standard.  *Id.*  Hence these cases are not only outliers but also rely on a misreading of section 201.100(d)(1).

communicate the contents of the 2004 label change to the medical community—a failure-to-warn case dressed in other garb. The District Court's decision is one of many federal court rulings addressing the "failure to communicate" theory and reaching the same result. This Court should endorse the reasoning and results in these many cases and affirm the judgment below.[7]

## II. Plaintiff's "Failure to Communicate" Theory Fails To State a Viable Claim for Relief.

The District Court did not reach the question whether Plaintiff's "failure to communicate" theory states a viable claim under Florida law. This Court, however, may affirm the judgment below "on any ground that finds support in the record." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (quoting *Jaffke v. Dunham*, 352 U.S. 280, 281 (1957)) (internal quotation marks omitted).

---

[7] The District Court also correctly rejected Plaintiff's reliance on express preemption cases such as *Altria Group v. Good*, 555 U.S. 70 (2008), *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992), and *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), holding that these decisions are "misplaced" in this case of "conflict preemption, which does not depend on the limitations of the language in a preemption provision." *Guarino*, 823 F. Supp. 2d at 1292; *see also Strayhorn v. Wyeth Pharms., Inc.*, No. 11-2058-STA-cgc, 2012 WL 3261377, at *15 (W.D. Tenn. Aug. 8, 2012) ("Plaintiffs' reliance on express preemption cases is not persuasive; express preemption differs from implied preemption."). *Mensing* did not rely upon express preemption cases; only the dissent did. 131 S. Ct. at 2586, 2591.

Plaintiff's theory fails to state a viable claim for at least two reasons (both raised below).  First, under Florida law, a drug manufacturer fulfills its duty to warn by accompanying its product with an adequate warning upon shipment of the drug.  There is no separate duty to communicate the fact of that warning directly to a doctor.  Second, Plaintiff's Complaint is replete with allegations that the 2004 warning Plaintiff alleges should have been communicated differently was ***still inadequate*** to warn of the risks of her alleged injury.  There is no duty under Florida law (or any other state law of which we are aware) to give a warning that is inadequate.

### A.    Under Florida Law, A Drug Manufacturer Fulfills Its Duty To Warn By Accompanying Its Product With an Adequate Warning.

In the course of arguing that her "failure to communicate" claim is not preempted, Plaintiff contends that both federal and Florida law *required* Teva to advise prescribing physicians of the 2004 label change.  Appellant's Br. at 22–23.  That argument is doubly wrong:  no federal law requires such a communication (Plaintiff identifies none) nor does Florida law.

Under Florida law, as Plaintiff recognizes, manufacturers' prescription drug warnings are written not for the consumer patient but for learned intermediaries— *i.e.,* prescribing physicians.  *See Felix*, 540 So. 2d at 104; *Buckner v. Allergan Pharms., Inc.*, 400 So. 2d 820, 822 (Fla. 5th DCA 1981).  The physician, "acting as a 'learned intermediary' between the manufacturer and the consumer, weighs the

18

potential benefits against the dangers in deciding whether to recommend the drug to meet the patient's needs." *Felix*, 540 So. 2d at 104 (citing *Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1276 (5th Cir. 1974)).

Accordingly, a drug company discharges its duty to warn when its package insert adequately describes the drug's risks.  As the Supreme Court of Florida has held, "[w]hether the physician in fact reads the warning, or passes its contents along to the recipient of the drug is irrelevant. . . .  Pharmaceutical manufacturers discharge their duty to warn the learned intermediary by way of a package insert which accompanies each vial of vaccine." *E.R. Squibb & Sons, Inc. v. Farnes*, 697 So. 2d 825, 827 (Fla. 1997).

A federal district court in Florida recently dismissed materially the same "failure to communicate" theory against a generic drug manufacturer on this basis:

> [Actavis'] warning, which was available both in the package insert and on the internet at *www.fda.gov*, satisfied Actavis' duty to provide Plaintiff's treating physician with adequate information about the risks associated with metoclopramide use (including the FDA indicated prohibition on long term use). . . .  The physician then owed a duty to Plaintiff to apprise himself of the risk associated with metoclopramide and to exercise his judgment in prescribing the product and informing her of the risk.

*Metz v. Wyeth, LLC*, No. 8:10-cv-2658, 2012 WL 1058870, at *7 (M.D. Fla. Mar. 28, 2012), *app. pending*; *see also* RESTATEMENT (SECOND) TORTS § 402A, cmt. k ("There are some products which . . . are quite incapable of being made safe for their intended and ordinary use.  These are especially common in the field of

drugs. . . .  Such a product, properly prepared, and *accompanied by proper directions and warning*, is not defective, nor is it unreasonably dangerous." (emphasis added)).[8]

In short, Plaintiff is just wrong in contending that "Teva had a duty [under Florida law] to warn prescribers such as Plaintiff's physician of the 2004 label content's warnings concerning extended use of metoclopramide."  Appellant's Br. at 23.  On the contrary, "[p]harmaceutical manufacturers discharge their duty to warn the learned intermediary by way of a package insert which accompanies each [drug]."  *E.R. Squibb*, 697 So. 2d at 827.  Plaintiff has misstated existing Florida law and offers no reason why this Court should assume that Florida would change its existing law, which is consistent with the Restatement (see above) and the law in other states.  *See, e.g.*, *Kellogg v. Wyeth*, No. 2:07-cv-82, slip op. at 7 (D. Vt. Mar. 30, 2012) (applying Vermont law) ("State tort law demands an adequate warning; it does not require a drug manufacturer to educate the healthcare profession.") (12a).[9]

---

[8] Package inserts are also readily available in many places, including free databases supported by FDA and the National Institutes of Health.  *See* Drugs@FDA, available at http://www.accessdata.fda.gov/scripts/cder/drugsatfda (last accessed Oct. 25, 2012); DailyMed, available at http://dailymed.nlm.nih.gov/dailymed/about.cfm (last accessed Oct. 25, 2012).

[9]  *See also Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1154 (11th Cir. 2011) ("It is not the function of federal courts to expand state tort doctrine in novel directions absent state authority suggesting the propriety of doing so."); *see also*

Accordingly, Plaintiff's failure to state a claim under Florida law offers an alternative ground on which to uphold the District Court's dismissal of her Complaint against Teva.

### B. Under Florida Law, There Is No Duty To Communicate Inadequate Warnings.

Plaintiff argues that Teva has a duty to more adequately communicate a warning that she contends is "inaccurate, misleading, materially incomplete, false and otherwise inadequate." (Doc. 1, ¶ 29; *see also id.* ¶¶ 31, 96, 97.) That makes no sense. There is no duty to give an inadequate warning.

Numerous courts have recognized the inappropriateness of this so-called duty in cases where plaintiffs argued the very same theory of failure to communicate the 2004 Reglan® warning. *See, e.g.*, *Bowman*, 2012 WL 684116, at *7 (noting plaintiff "continues to contend that even the post-July 2004 Reglan warnings were inadequate" and holding "there is no duty for a manufacturer to provide an *inadequate* warning"); *Morris v. Wyeth, Inc.*, No. 3:09-cv-854, 2012 WL 601455, at *4 (W.D. La. Feb. 23, 2012) ("[A] fifth amendment in this case

---

*Demahy*, 2012 WL 5261492, at *4 (noting that federal courts are "bound to apply state law as it currently exists and may not change that law or adopt innovative theories of recovery" (internal quotation marks and alterations omitted)); *Dayton v. Peck, Stow & Wilcox (Pexto)*, 739 F.2d 690, 694 (1st Cir. 1984) ("Absent some authoritative signal from the [state] legislature or the [state] courts, . . . we see no basis for even considering the pros and cons of innovative theories of [liability]. We must apply the law of the forum as we infer it presently to be, not as it might come to be.").

would be futile because any claim based on the 2004 label would be inconsistent with Plaintiffs' assertion that all pre-2009 labeling failed to adequately warn."), *app. pending*; *Coney v. Mylan Pharms., Inc.*, No. 6:11-cv-35, 2012 WL 170143, at *4 (S.D. Ga. Jan. 19, 2012) (Plaintiff's "complaint does not allege that [the generic drug company] failed to communicate warnings that had already been adequately detailed on the warning label; [plaintiff] alleged that any warning attached to [the generic drug] was per se inadequate. [Plaintiff's] complaint simply does not support the argument he is now espousing."); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243, 2011 WL 5903623, at *8 (D.N.J. Nov. 21, 2011) (holding the "gravamen of the failure-to-warn claims is that the [generic drug] labeling should have been changed to include stronger warnings" and rejecting failure-to-communicate theory); *Waguespack v. PLIVA USA, Inc.*, No. 10-692, 2011 WL 5826015, at *2 (E.D. La. Nov. 3, 2011) (noting that plaintiff alleged that "warning[s] were inadequate" and rejecting plaintiff's failure to communicate argument).

Plaintiff offers no reason to believe that, having repeatedly alleged that the 2004 label change was inadequate to warn of the dangers of metoclopramide, Florida law would grant her a cause of action for Teva's alleged failure to have communicated that inadequate warning to the medical community. Hence this

22

Court may uphold the dismissal of her Complaint against Teva on this alternative ground as well.

## CONCLUSION

The judgment below should be affirmed.

Respectfully submitted,

  /s William F. Sheehan
William F. Sheehan
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001
Tel.:  202.346.4000
Fax:  202.346.4444
wsheehan@goodwinprocter.com

Richard A. Oetheimer
Sarah K. Frederick
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Tel.:  617.570.1000
Fax:  617.523.1231
roetheimer@goodwinprocter.com
sfrederick@goodwinprocter.com

David C. Banker
BUSH ROSS, P.A.
1801 North Highland Avenue
Tampa, FL 33602
Tel.:  813.224.9255
Fax:  813.223.9620
dbanker@bushross.com

*Counsel for Defendant-Appellee Teva Pharmaceuticals USA, Inc.*

23

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

The undersigned certifies this brief complies with the type and volume limitations prescribed by Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(7).  Exclusive of the exempted portions in Federal Rule of Appellate Procedure 32(a)(7)(iii) the brief contains 5,557 words.  The brief has been prepared in proportionally spaced typeface using Microsoft Office Word 2010 Times New Roman 14 point.  If the Court requests, the undersigned will provide an electronic version of the brief and/or a copy of the word or line printout.  The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type and volume limits in Federal Rule of Appellate Procedure 32(a) may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

October 29, 2012

  /s William F. Sheehan
William F. Sheehan
*Counsel for Defendant-Appellee Teva
Pharmaceuticals USA, Inc.*

Nos. 09-5460/5466/5509

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Nov 22, 2011*

LEONARD GREEN, Clerk

LALA SMITH (09-5460), ALICE WILSON (09-5466), DENNIS MORRIS (09-5509),                                    )
                                                                    )
    Plaintiffs-Appellants,                                          )
                                                                    )
v.                                                                  )       O R D E R
                                                                    )
WYETH, INC., ET AL.,                                                )
                                                                    )
    Defendants-Appellees.                                           )
                                                                    )

**BEFORE:**   DAUGHTREY, GILMAN, and SUTTON, Circuit Judges.

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and no judge of this court having requested a vote on the suggestion for rehearing en banc, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the cases. Accordingly, the petition is denied.

**ENTERED BY ORDER OF THE COURT**

**Leonard Green, Clerk**

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No. 08-3850

GLADYS MENSING,

Appellant,

v.

WYETH, INC., D/B/A WYETH; SCHWARZ PHARMA, INC.; PLIVA, INC.;
TEVA PHARMACEUTICALS, USA, INC.; UDL LABORATORIES, INC.; AND
ACTAVIS ELIZABETH, LLC,

Appellees.

Appeal from United States District Court
for the District of Minnesota - Minneapolis
Case No. 07-cv-03919-DWF-SRN

## APPELLANT GLADYS MENSING'S MOTION FOR
## LEAVE TO FILE A SUPPLEMENTAL BRIEF

On June 23, 2011, the Supreme Court of the United States issued its decision in *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), overturning—at least in part—this Court's November 27, 2009 decision in this matter. On August 18, 2011, in response to the Supreme Court ruling, this Court issued an order in which it reversed the Court's November 27, 2009 judgment, recalled the mandate, and reopened the case. Ct. Order Recalling Mandate, Aug. 18, 2011, ECF No. 200. In light of that order, Appellant Gladys Mensing hereby seeks leave of the Court to

2a

file a supplemental brief regarding the implications of the Supreme Court ruling for this reopened appeal. Appellant further requests that the Court establish a briefing schedule to address the effects of the Supreme Court's decision.[1]

In support of this motion, Appellant states:

1.    In *Mensing*, the Supreme Court ruled that generic drug companies may not be held liable under state law for failing to change the labeling on their generic metoclopramide from the labeling that the FDA had approved for the reference listed drug (RLD) Reglan in order to add a stronger warning about the risk of tardive dyskinesia associated with long-term metoclopramide use. A 5-4 majority of the Supreme Court ruled that such claims were impliedly preempted on grounds of impossibility, because federal law prohibited generic drug companies from "independently" changing their labels to provide stronger warnings. The Court announced a new test for impossibility preemption: "The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." 131 S. Ct. at 2579. Because the Court found that generic drug companies could not change their labeling to provide stronger warnings without FDA approval, state law claims premised on a generic

---

[1] The United States Court of Appeals for the Sixth Circuit recently adopted this procedure to address the implications of the Supreme Court's *Mensing* decision in three consolidated appeals that had been stayed pending the Supreme Court's ruling. Ct. Order Granting Mot. for Leave to File Supp. Br., *Smith v. Wyeth, Inc.*, No. 09-5460 (6th Cir. Aug. 3, 2011).

2

manufacturer's duty to strengthen its labeling beyond that approved for the RLD were preempted.

2.    In light of the Supreme Court's ruling, Appellant can no longer premise generic manufacturer liability on the Generic Drug Company Appellees' failure to add a warning to their labels that the FDA had not approved. That was, to be sure, a central thrust of Appellant's original theory of liability, which this Court upheld. Appellant, however, also has other theories of liability and causes of action. Each of these theories of liability is premised on state-law legal duties that the Appellees could have satisfied independently; they are thus not preempted under the Supreme Court's reasoning.

3.    First, claims arising from the Generic Drug Company Appellees' failure-to-effectively communicate the FDA-approved warnings for metoclopramide are not preempted. In July 2004, during the time that Gladys Mensing was taking metoclopramide, the FDA approved a change to the Reglan label to add a warning that "Therapy should not exceed 12 weeks in duration." Appellants' Br. 6. Unfortunately, this labeling change was never communicated to prescribing physicians either by Schwarz Pharma, then the manufacturer of Reglan, or by the manufacturers of generic metoclopramide. Schwarz Pharma never published the revised label in the Physicians Desk Reference, the primary source of drug labeling information for physicians. And the generic drug company

3

defendants never sought to alert physicians to this label change in any way. Indeed, none of the Generic Drug Company Appellees here even modified their labels to add this new warning during the time that Ms. Mensing was still using their metoclopramide, even though FDA regulations allowed them to implement this change "independently" once the change to the Reglan label had been approved. As a result, all of Appellant's claims concerning failure to warn her prescribing physician of the 2004 warning limiting the duration of metoclopramide use are entirely consistent with the Supreme Court's ruling, are not preempted, and should be reinstated by this Court.

4.    Second, Appellant contends that, because the Generic Drug Company Appellees knew or should have known that the labeling on metoclopramide lacked adequate warnings regarding the risks of long-term use of the product, those companies should have suspended sales of the drug until such time as an adequate warning was approved by the FDA. These claims are also entirely consistent with the Supreme Court ruling. *Mensing* holds that state law cannot impose liability on generic drug companies for failing to change the warnings on their labels, because federal law prohibited them from making changes to those labels "independently", without FDA approval. 131 S. Ct. at 2571. But nothing in federal law prohibited the Generic Drug Company Appellees from suspending sales of their drug, an action the companies could have taken entirely on their own initiative. This Court

4

**IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

JUDITH BILLINGSLY, ON BEHALF
OF THE GUARDIANSHIP OF JODYTH
BILLINGSLY, A MINOR                                    **PLAINTIFF**

VERSUS                                      **CAUSE NO. A2401-11-192**

MEMORIAL HOSPITAL AT GULFPORT
AND PHARMACEUTICAL ASSOCIATES, INC.                **DEFENDANTS**

**ORDER GRANTING**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

CAME ON FOR HEARING the Motion for Judgment on the Pleadings filed by the

Defendant, Pharmaceutical Associates, Inc. [PAI] based upon Federal Preemption and Miss. R.

Civ. P. 12(c).  The Defendant argues that in light of ***PLIVA, Inc. v. Mensing***, —— U.S. ——, 131

S.Ct. 2567, 180 L.Ed.2d 580 (2011), judgment should be entered in favor of the Defendant, PAI

and Plaintiff's complaint should be dismissed.  Upon due consideration of the pleadings,

arguments of counsel and related authorities the Court finds that the motion should be granted.

On June 8, 2011, the Plaintiff filed her Complaint against Memorial Hospital at Gulfport

[MHG] and Pharmaceutical Associates, Inc.  The complaint alleges that the minor plaintiff, born

March 10, 2008, was prescribed the prescription drug Reglan/metoclopramide for the treatment

of reflux.  The child took the generic form of metoclopramide manufactured by PAI from

January 13, 2009 until on or about August 1, 2009.  The child was subsequently diagnosed with

Tardive dyskinesia.

Page 1 of  6

Plaintiff's Complaint alleges negligence, breach of implied warranty, and strict liability claims.   Defendant PAI argues that all of the claims set forth in the complaint are preempted by the United States Supreme Court holding in ***PLIVA v. Mensing***, 564 U.S. ___, 131 S. Ct. 2567, 180 L.Ed.2d 580 (2011) reh'g denied.  In response Plaintiff argues that there are surviving claims including one for design defect. *See i.e.* ***Bartlett v. Mutual Pharmaceutical Company, Inc.,*** *et al*, 678 F.3d 30 (1st Cir. 2012) (Whether and to what extent the Federal Food, Drug and Cosmetic Act preempts design defect claims against generic drug manufacturers is a question of exceptional importance that the Supreme Court has yet to decide.)  The ***Bartlett*** Court noted that "while the generic maker has no choice as to label–the decision to make the drug and market it in New Hampshire is wholly its own." Id. ¶4.  The ***Bartlett*** Court recognized a "developing split in the lower courts" regarding the breadth of federal preemption in the generic drug cases.

In ***Mensing*** the Supreme Court held that federal drug regulations applicable to generic drug manufacturers directly conflicted with, and thus preempted, a plaintiff's state law claims for failure to provide an adequate warning label. ***Id.*** at 2571.  The regulations, enacted pursuant to the "Hatch-Waxman Amendments" to the FDCA, require generic drugs to be "the same" in every clinically-significant way–the same active ingredients, the same route of administrations, and the same FDA-approved labeling as the brand-name drug.[1]  Therefore, the federal drug regulations applicable to generic drug manufacturers effectively pre-empt state-law claims. ***Mensing***, 131 S. Ct. At 2572.   Claims brought under state tort law were held preempted because "it was not

---

[1] The FDA regulates and approves both brand-name prescription medication labels such as Reglan®, *see* 21 C.F.R. § 314.50, and generic brand medication labels such as metoclopramide, *see* 21 C.F.R. § 314.94(a)(8).

Page 2 of 6

lawful under federal law for the manufacturers to do what state law required of them." *Id.* at 2577.

Plaintiff argues this is a narrow holding limited to failure to warn and not to her State law breach of warranty and strict liability claims (often referred to as "wrongful marketing" or "failure-to-withdraw" claims).   The eighth circuit on remand of the ***PLIVA Inc. v. Mensing***[2] case held that the Supreme Court's opinion in ***Mensing*** encompassed any "wrongful marketing" "failure to withdraw theories." ***Mensing v. Wyeth, Inc.***, 658 F.3d 867 (8th Cir. 2011)  On remand the Eighth Circuit interpreted the Supreme Court's holding on preemption to include these claims. The Eighth Circuit vacated sections of its original opinion including Section III.  Section III had stated in part:

> The generic defendants were not compelled to market metoclopramide.  If they realized their label was insufficient but did not believe they could even propose a label change, they could have simply stopped selling the product.  Instead, they are alleged to have placed a drug with inadequate labeling on the market and profited from its sales.

> *Id.* 611.

The Sixth Circuit also refused to recognize a "failure-to-withdraw" claim post-***Mensing*** in ***Smith v. Wyeth, Inc.***, 657 F.3d 420 (6th Cir. 2011).  Both of these opinions were relied on in an opinion handed down in the Multi-District Litigation involving propoxyphene (Darvon and Darvocet).  Following the ***Mensing*** decision, the MDL Court held that "[N]o matter how they frame their allegations, the plaintiffs cannot avoid ***Mensing***'s effect." ***In re Darvocet, Darvon and Propoxyphene Products Liability Litigation***, 2012 WL 718618, *2 (March 5, 2012).  Also

---

[2]Styled ***Mensing v. Wyeth, Inc.*** in the lower court.

recognizing preemption of all state law claims is *Truddle v. Wyeth*, *LLC,* 2012 WL 3338715, 7

(N.D.Miss. August 14, 2012)  The Plaintiffs in *Truddle* alleged that the decedent, nineteen-year-

old Eric Carmichael suffered from akathisia which led to his suicide. The Plaintiffs allege that

Eric's condition and suicide were caused by Reglan/metoclopramide /metoclopramide HCI, a

medication he was prescribed and sued both brand-name and generic manufacturers of the drug

asserting negligence, strict liability, breach of warranties, misrepresentation and fraud, and

negligence *per se* based on the Defendants' alleged failure to warn of the risks of their products.

All of Truddle's claims were dismissed based on the United States Supreme Court holding in

*PLIVA, Inc. v. Mensing*.  The Court in Truddle was of the "opinion that in the case subjudice,

the Plaintiffs' claims, which are predicated on a failure-to-warn state tort claim, are preempted by

federal law under *Mensing*." *Id.* \*4  "The Court is very sympathetic and saddened by Ms.

Truddle's set of circumstances, but is powerless to sustain the claims against the Generic

Defendants. Those claims must be dismissed as a matter of law in light of United States Supreme

Court precedent." *Truddle v. Wyeth*, LLC 2012 WL 3338715, \*7 (N.D.Miss. 2012)  This Court

is also compelled to reject this Plaintiff's claims for the same reason.

      Any recovery under Mississippi's "learned intermediary" doctrine under these facts was

eliminated by *Mensing*.  "[W]e conclude that federal law did not permit Manufacturers to issue

additional warnings through Dear Doctor letters." *Mensing* at 2576.   Plaintiffs' maintain they

might have a claim if discovery reveals that the warnings communicated by PAI failed to include

any revision or update that might have occurred to the label.  Failure to update a warning is still

a failure to warn claim and pre-empted by *Mensing*.   Nor does Plaintiffs' claim survive as

Page 4 of  6

having arisen after the passage of the Food and Drug Administration Amendments Act of 2007

pursuant to *Wyeth  v. Levine*, 555 U.S. 555, 129 S. Ct. 1187 (2009).  While *Mensing* did not

specifically address the 2007 amendments, the amendments did not eliminate or amend any

statues or regulations relied on in *Mensing*.  *Mensing* is unequivocal, the warnings supplied by

generic manufacturers are governed by federal law and any state law claim imposing warning

requirements on generic manufacturers is preempted.

Plaintiff also attempts to establish the viability of claims for failure to use due care in

developing and manufacturing metoclopramide and in failing to monitor and conduct post-

marketing surveillance of the drug to determine its safety.  Plaintiff argues that generic drug

manufacturers have the duty under federal law to monitor the safety of their products since they

"may" approach the FDA to propose a label change when they believe a change is required.

However, there is no private right of action under FDCA regulations.  See 21 **U.S.C.** §337(a) and

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854

(2001).  Finally, any allegations that PAI could be liable under Mississippi Products Liability

law or for breach of an implied warranty of merchantability and fitness for use suffer the same

fate.  For the reasons set out previously, these "failure to withdraw" claims are not viable.  The

failure to warn is "the heart of Plaintiff's" claim and is encompassed by the *Mensing* Court's

preemption analysis, as well  as Plaintiff's theories arising from Mississippi products liability

law.

This Court is inclined to agree with Justice Sotomayor's dissent[3] in *Mensing*.

---

[3]Joined by Justice Ginsburg, Justice Breyer, and Justice Kagan.

[A]s a result of today's decision, whether a consumer harmed by inadequate warnings can obtain relief turns solely on the happenstance of whether her pharmacist filled her prescription with a brand-name or generic drug. The Court gets one thing right: This outcome 'makes little sense.' *Ante*, at 18."

*Mensing* dissent at 2853.

The Court is sympathetic to Plaintiff's set of circumstances but her claims must be dismissed as a matter of law in light of the United States Supreme Court decision in *PLIVA v. Mensing* and subsequent precedent. Pharmaceutical Associates, Inc. is entitled to Judgment on the Pleadings. It is, therefore,

ORDERED AND ADJUDGED that the Motion for Judgment on the Pleadings, is granted and the complaint against Pharmaceutical Associates, Inc. is dismissed without prejudice.

SO ORDERED AND ADJUDGED, this the ___8___ day of _October_ 2012.

_____
ROGER T. CLARK
CIRCUIT COURT JUDGE



FILED
OCT - 8 2012
GAYLE PARKER CIRCUIT CLERK
By _____ D.C.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ETHEL KELLOGG,                          :
                                        :
          Plaintiff,                    :
                                        :
     v.                                 :    Case No. 2:07-cv-82
                                        :
WYETH, Individually and as Successor-in-:
Interest to A.H. ROBINS COMPANY, INC.   :
and AMERICAN HOME PRODUCTS CORPORATION; :
SCHWARZ PHARMA, INC.; ACTAVIS, INC.;    :
ACTAVIS-ELIZABETH, L.L.C.; ALPHARMA,    :
INC.; PUREPAC PHARMACEUTICAL COMPANY,   :
INC.; TEVA PHARMACEUTICALS, USA, INC.;  :
BAR PHARMACEUTICALS, INC.; PLIVA, INC.; :
and DRUG COMPANY DOES 1 THROUGH 10,     :
inclusive,                              :
                                        :
          Defendants.                   :

**MEMORANDUM AND ORDER**

Plaintiff Ethel Kellogg has moved this Court to reconsider

its Memorandum Opinion and Order dated February 3, 2012, in which

it granted the motion of Defendants Actavis Elizabeth LLC, Barr

Pharmaceuticals, LLC and PLIVA, Inc. ("Generic Defendants") for

judgment on the pleadings on preemption grounds.  She contends

that the Court erred in ruling that her state tort claims against

the Generic Defendants for failure to provide adequate warnings

were preempted pursuant to the United States Supreme Court's

decision in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011).

The well-established "standard for granting such a motion is

strict, and reconsideration will generally be denied unless the

moving party can point to controlling decisions or data that the

court overlooked—matters, in other words, that might reasonably

be expected to alter the conclusion reached by the court."
*Shrader v. CSC Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).
The motion "should not be granted where the moving party seeks
solely to relitigate an issue already decided."  *Id.*

At issue is whether the Court failed to consider Kellogg's
argument that a generic drug manufacturer's dissemination of
information about its drug through reprint distribution or
sponsorship of continuing medical education ("CME") programs is
lawful, and therefore constitutes means for it to provide
adequate warnings to physicians about the risks associated with
its drug.  The Court considered and rejected this argument:

> Regardless of whether the warning information is
> offered for promotional or educational purposes;
> regardless of whether the warning information is
> directed toward an approved or an unapproved use;
> *Mensing* declares that material which satisfies the
> definition of labeling cannot be proffered by generic
> manufacturers without running afoul of the requirements
> that the information be consistent with and not
> contrary to the approved labeling, and that the
> information not imply a therapeutic difference between
> the brand and generic drugs.

Mem. Op. & Order 11-12, ECF No. 302; *see generally id.* at 10-12.
Kellogg believes that this conclusion was error, Mem. in Supp. of
Pl.'s Mot. to Reconsider ("Pl.'s Mem.") 3-4, ECF No. 306-1, but
because she seeks to relitigate an issue already decided,
reconsideration is inappropriate.

Were this Court to entertain her motion to reconsider, it
would reach the same conclusion:  that the United States Supreme

Court in *Mensing* intended to foreclose the means Kellogg
advocates.  She virtually acknowledges as much:  "[w]hat the
plaintiff has suggested . . . are ways in which drug companies
can circumvent the restrictions imposed by federal law, as
interpreted and applied in [*Mensing*], and still provide adequate
warnings for their generic prescription drug products . . . ."
Pl.'s Reply 1, ECF No. 316.  This Court is not in the habit of
devising or countenancing means to circumvent federal law as
interpreted by the Supreme Court.

The *Mensing* decision has undeniably placed injured consumers
of generic drugs in a cruel situation:  often without choice as
to whether they received a brand-name or generic drug, they are
unable to seek redress from the manufacturer of the drug that
allegedly injured them.  The consumer of the brand-name drug
faces no such obstacle.  *See Mensing*, 131 S. Ct. at 2592
(Sotomayor, J., dissenting); Katie Thomas, *Generic Drugs Prove
Resistant to Damage Suits*, N.Y. Times, Mar. 21, 2012, at A1.  The
majority in *Mensing* "acknowledge the unfortunate hand that
federal drug regulation has dealt" these plaintiffs, *Mensing*, 131
S. Ct. at 2581, but point out that Congress and the FDA may
"change the law and regulations if they so desire."  *Id.* at 2582.

Kellogg suggests that the law and regulations as they
currently exist afford her a loophole.  Dissemination of
information through reprint distribution and sponsorship of CME

3

14a

programs is lawful for brand-name and generic manufacturers alike, she states.  The subject matter may be off-label uses of the drug, which would by definition be inconsistent with and contrary to the information contained in the FDA-approved label. Section 201.100(d)(1), which requires that any "labeling" be "consistent with and not contrary to . . . approved or permitted labeling," therefore cannot apply to reprints of peer-reviewed research articles or to materials from independently produced CME programs that discuss off-label use, according to her argument.

Kellogg posits that a CME program, sponsored but "not directed or too closely influenced by" a drug manufacturer, might present information about a prescription drug and its off-label uses without violating FDA policy.  Pl.'s Mem. 11.  If the agency were to determine that such activity is sufficiently independent, it would not regulate it under the labeling and advertising provisions of the Food, Drug and Cosmetic Act ("FDCA").  *See, e.g.*, Final Guidance on Industry-Supported Scientific and Educational Activities, 62 Fed. Reg. 64093 (Dec. 3, 1997) (distinguishing between programs and materials performed by or on behalf of drug manufacturers and such activities that are independent and nonpromotional, even though industry-supported).

Kellogg concludes that because the Generic Defendants could have supported independent and nonpromotional activity such as disseminating journal reprints or sponsoring CME programs, it was

4

15a

not impossible for them to ensure that doctors were adequately warned about the risks of prolonged metoclopramide therapy.  Her speculation that it was possible for Generic Defendants to avoid FDA's labeling and advertising regulations by engaging in nonpromotional scientific and educational activities does not win reconsideration, however.  For one thing, only "independent" drug manufacturer-supported activity escapes advertising and labeling regulation.  If the generic drug manufacturer sponsors a CME program or disseminates journal reprints with a particular aim or goal in mind—even the laudable aim of strengthening the warnings for metoclopramide—it may have to influence the presentation of information, either directly or indirectly.  Once it exerts such influence, the activity would no longer be considered independent and nonpromotional, and would be subject to regulation under the labeling and advertising provisions of the FDCA.  *See id.*

Even assuming that Generic Defendants might lawfully disseminate information about the risks of metoclopramide through reprint distribution and sponsorship of CME programs, this activity would not satisfy their duty to warn.  Under Vermont law, a drug manufacturer may be liable for inadequate warning of the known dangers of its product.  *See Levine v. Wyeth*, 944 A.2d 179, 182 (Vt. 2006), *aff'd*, 555 U.S. 555 (2009).  In order to satisfy the requirements of state law, a generic drug manufacturer must therefore provide an adequate warning of the

dangers of its product.  In order to be adequate, that warning must be communicated by the manufacturer to the users and consumers of the product, i.e., prescribing physicians and patients.  *See Webb v. Navistar Int'l Transp. Corp.*, 692 A.2d 343, 347 (Vt. 1996) ("A manufacturer . . . has a duty to warn users and consumers . . . ."); *see also Town of Bridport v. Sterling Clark Lurton Corp.*, 693 A.2d 701, 704 (Vt. 1997) (holding in a product liability action that where a manufacturer has a duty to warn, the warning must be designed to draw the attention of a potential user).  General distribution of information from a source sufficiently independent of the manufacturer, through articles and seminars, with the expectation that the information will include stronger warnings than appears on the drug's approved label and that healthcare professionals would take heed of that information, does not satisfy Vermont's requirement that drug warnings be adequate and communicated by the manufacturer to users and consumers.[1]

Under state law a drug manufacturer has a duty to warn users and consumers of the known dangers of its product; that duty is not satisfied by sponsoring CMEs and reprinting journal articles.

---

[1]  Were the Generic Defendants to attempt to defend this case by producing evidence that they had sponsored educational seminars in which the risks of prolonged metoclopramide therapy were discussed, Kellogg would undoubtedly be quick to protest that such activity constituted an inadequate warning as a matter of law.

State tort law demands an adequate warning; it does not require a drug manufacturer to educate the healthcare profession.

Kellogg's motion for reconsideration, ECF No. 306, is **denied.**


Dated at Burlington, this 30th day of March, 2012.

<u>/s/ William K. Sessions III</u>
William K. Sessions III
District Court Judge

7

18a

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 29, 2012, I electronically filed the foregoing document with the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Service List.  I further certify that on October 29, 2012, I served a copy of the foregoing document on the parties or their counsel of record by first-class mail, postage prepaid, or by overnight mail to those indicated as non-registered participants on the attached Service List.

<u>    /s William F. Sheehan            </u>

**SERVICE LIST**

| Contact Info | Service Preference |
|---|---|
| Brent R. Bigger<br>Abrahamson & Uiterwyk<br>900 W PLATT ST STE 100<br>TAMPA, FL 33606-2173<br>Email: bbigger@uiterwyklaw.com | US Mail |
| Lindsey Boney IV<br>Bradley Arant Boult Cummings, LLP<br>1819 5TH AVE N<br>BIRMINGHAM, AL 35203<br>Email: lboney@babc.com | Email |
| Henninger S. Bullock<br>Mayer Brown, LLP<br>1675 BROADWAY<br>NEW YORK, NY 10019-5820<br>Email: hbullock@mayerbrown.com | Email |
| Andrew J. Calica<br>Mayer Brown, LLP<br>1675 BROADWAY<br>NEW YORK, NY 10019-5820<br>Email: acalica@mayerbrown.com | US Mail |
| Daniel J. McGlynn<br>McGlynn Glisson Mouton<br>340 FLORIDA ST<br>BATON ROUGE, LA 70801<br>Email: danny@mcglynnglisson.com | US Mail |
| Joshua A. Mize<br>Akerman Senterfitt, LLP<br>420 S ORANGE AVE STE 1200<br>ORLANDO, FL 32801 | US Mail |

| Contact Info | Service Preference |
|---|---|
| Email: joshua.mize@akerman.com | |
| Kevin Christopher Newsom<br>Bradley Arant Boult Cummings, LLP<br>1819 5TH AVE N<br>BIRMINGHAM, AL 35203<br>Email: knewsom@babc.com | Email |
| Brian Oltchick<br>Garrison Yount Forte Mulcahy and Lehner LLC<br>601 BAYSHORE BLVD STE 800<br>TAMPA, FL 33606-2268<br>Email: boltchick@garrisonyount.com | US Mail |
| David Joseph Sales<br>David J. Sales, PA<br>1001 N HWY 1 STE 200<br>JUPITER, FL 33477-4480<br>Email: david@salesappeals.com | Email |
| Hildy M. Sastre<br>Shook Hardy & Bacon, LLP<br>201 S BISCAYNE BLVD STE 2400<br>MIAMI, FL 33131-4332<br>Email: hsastre@shb.com | Email |
| Mihai M. Vrasmasu<br>Shook Hardy & Bacon, LLP<br>201 S BISCAYNE BLVD STE 2400<br>MIAMI, FL 33131-4332<br>Email: mvrasmasu@shb.com | Email |
| Scott Parker Yount<br>Garrison Yount Forte Mulcahy and Lehner LLC<br>601 BAYSHORE BLVD STE 800<br>TAMPA, FL 33606-2268 | Email, US Mail |

| Contact Info | Service Preference |
|---|---|
| Email: syount@garrisonyount.com | |