**No. 12-13263-DD**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ANDREA GUARINO,

*Plaintiff–Appellant*

v.

WYETH LLC; SCHWARZ PHARMA, INC.; AND TEVA PHARMACEUTICALS USA, INC.,

*Defendants–Appellees.*

On Appeal From the United States District Court for the Middle District of Florida
No. 8:10-cv-02885-JSM-TGW (Hon. James S. Moody)

## BRIEF FOR APPELLEES
## WYETH LLC and SCHWARZ PHARMA, INC. n/k/a UCB, Inc.

Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place 1819 Fifth Avenue North
Birmingham, AL 35203

Kannon K. Shanmugam
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

*Attorneys for Appellee Wyeth LLC*

Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1675 Broadway
New York, NY 10019

Carl J. Summers
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000

*Attorneys for Appellee Schwarz Pharma, Inc. n/k/a UCB, Inc.*

*Guarino v. Wyeth LLC*, No. 12-13263-DD

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned counsel certifies that, in addition to the persons listed in Plaintiff's opening brief, the following persons or entities have an interest in the outcome of this case:

1. Newsom, Kevin C.– Attorney for Appellee Wyeth LLC

2. Shanmugam, Kannon K. – Attorney for Appellee Wyeth LLC

3. Williams & Connolly LLP – Law firm for Appellee Wyeth LLC

## CORPORATE DISCLOSURE STATEMENT

Wyeth LLC, formerly known as Wyeth Inc., is a wholly owned subsidiary of Pfizer Inc., which is a publicly held corporation.  No publicly held company owns 10% or more of Pfizer Inc.'s stock.

Schwarz Pharma, Inc. is now known as UCB, Inc.  UCB, Inc. is a wholly owned subsidiary of UCB Holdings, Inc., which is a wholly owned subsidiary of UCB, S.A., a publicly held corporation.  Financiére de Tubize S.A., a publicly held company, owns 10% or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff's claims against Defendants-Appellees Wyeth LLC and Schwarz Pharma, Inc. n/k/a UCB, Inc., ("Brand Defendants") are foreclosed by long-settled principles of Florida law because Plaintiff never used Brand Defendants' products. Six state and federal courts have applied Florida law to claims identical to those at issue here, and all six have granted summary judgment for Brand Defendants. Moreover, Florida law is consistent with the overwhelming national consensus on the question presented here, as scores of decisions under the laws of dozens of states have rejected Plaintiff's theory of liability. Because the law on this issue is so clear and well settled, Brand Defendants submit that no oral argument is necessary with respect to Plaintiff's claims against them. If the Court decides to hear oral argument on the issue, then Brand Defendants agree with Plaintiff that this case can be heard with *Metz v. Wyeth, LLC*, No. 12-13321-B, which presents the same issue with respect to Brand Defendants. In that event, ten minutes per side would be adequate.

# TABLE OF CONTENTS

Page

ISSUES PRESENTED ......................................................................... 1

STATEMENT OF THE CASE .............................................................. 1

STATEMENT OF FACTS ................................................................... 3

STANDARD OF REVIEW .................................................................. 4

SUMMARY OF THE ARGUMENT ..................................................... 4

ARGUMENT ..................................................................................... 6

I.   Florida Does Not Recognize Plaintiff's Novel Theory Of Liability. ............ 6

    A.   Courts applying Florida law have unanimously rejected
         claims identical to those Plaintiff raises here. .................................... 7

    B.   Florida's product-identification requirement is grounded in
         fundamental principles of Florida tort law. ....................................... 12

    C.   In any event, Brand Defendants owed no duty to Plaintiff. .............. 18

II.  Plaintiff's Theory Of Liability Against Brand Defendants
     Consistently Has Been Rejected In State After State Across The
     Country ..................................................................................... 19

III. This Case Is Not Appropriate For Certification. ......................................... 30

    A.   The controlling Florida law is settled. ............................................ 31

    B.   *Mensing* did not change Florida law. .............................................. 32

CONCLUSION ................................................................................. 37

ADDENDUM .................................................................................... 41

  • *Dietrich v. Wyeth, Inc.*,
    No. 50-2009-CA-021586, slip op. (Fla. Cir. Ct. Sept. 4, 2012)

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Barnes v. Kerr Corp.*, 418 F.3d 583 (6th Cir. 2005) ................................................ 18

*Barnhill v. Teva Pharms. USA, Inc.*,
    No. 06-CV-0282, 2007 WL 5787186 (S.D. Ala. Apr. 24, 2007) ............... 22, 27

*Baymiller v. Ranbaxy Pharms., Inc.*,
    __ F. Supp. 2d __, 2012 WL 3929768 (D. Nev. Sept. 6, 2012) ........... 20, 28, 29

*Bell v. Pfizer Inc.*,
    No. 5:10-cv-00101, 2011 WL 904161 (E.D. Ark. Mar. 16, 2011) ............. *passim*

*Beutella v. A.H. Robins Co.*, No. 98-05-CV-02372,
    2001 WL 35669202 (Utah Dist. Ct. Dec. 10, 2001) ................................... 22, 23

*Block v. Wyeth, Inc.*,
    3:02-CV-1077, 2003 WL 203067 (N.D. Tex. Jan. 28, 2003) ............... 22, 23, 24

*Buchanan v. Wyeth Pharms., Inc.*, No. CV-2007-900065,
    2008 WL 7136137 (Ala. Cir. Ct. Oct. 20, 2008) ................................... 22, 23, 27

*Burke v. Wyeth, Inc.*,
    No. G-09-00082, 2009 WL 3698480 (S.D. Tex. Oct. 29, 2009) ..... 21, 23, 24, 29

*Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514 (E.D. Pa. 2006) ........................... 22

*Conley v. Boyle Drug Co.*, 570 So. 2d 275 (Fla. 1990) .................................. *passim*

*Conte v. Wyeth*, *Inc.*, 85 Cal. Rptr. 3d 299 (Ct. App. 2008) ...................... 27, 28, 29

*Cooper v. Wyeth, Inc.*,
    No. 09-CV-929, 2010 WL 4318816 (M.D. La. Oct. 26, 2010) ....... 21, 23, 28, 29

*Couick v. Wyeth, Inc.*, 691 F. Supp. 2d 643 (W.D.N.C. 2010) ................... 21, 23, 28

*Coundouris v. Wyeth*, No. ATL-L-1940-10,
    2012 WL 2401776 (N.J. Super. Ct. June 26, 2012) ................................... *passim*

*Cousins v. Wyeth Pharms., Inc.*, No. 3:08-CV-0310-N,
    2009 WL 648703 (N.D. Tex. Mar. 10, 2009) ....................................... 21, 23, 29

ii

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Craig v. Pfizer, Inc.*,
    No. 3:10-00227, 2010 WL 2649544 (W.D. La. June 29, 2010)............ 21, 23, 28

*In re Darvocet*, 856 F. Supp. 2d 904 (E.D. Ky. 2012)..................................... *passim*

*In re Darvocet*,
    No. 2:11-MD-02226, 2012 WL 767595 (E.D. Ky. Mar. 7, 2012) ............ *passim*

*In re Darvocet*,
    2:11-md-2226, 2012 WL 3610237 (E.D. Ky. Aug. 21, 2012).............. 20, 28, 29

*In re Darvocet*,
    No. 2:11-md-2226, 2012 WL 3842271 (E.D. Ky. Sept. 5, 2012) ..................... 28

*In re Darvocet*,
    2:11-md-2226, 2012 WL 3984871 (E.D. Ky. Sept. 10, 2012) ............... 6, 20, 28

*Del Valle v. Pliva, Inc.*,
    No. 11-CV-113, 2012 WL 4747259 (S.D. Tex. Sept. 12, 2012)..... 20, 23, 28, 29

*Demahy v. Schwarz Pharma, Inc.*,
    No. 11-31073, 2012 WL 5261492 (5th Cir. Oct. 25, 2012) ...................... *passim*

*Dietrich v. Wyeth, Inc.*,
    No. 50-2009-CA-021586, slip op. (Fla. Cir. Ct. Sept. 4, 2012) ........... 29, 35, 36

*Dietrich v. Wyeth, Inc.*, No. 50-2009-CA-21586,
    2009 WL 4924722 (Fla. Cir. Ct. Dec. 21, 2009) ....................................... *passim*

*Eckhardt v. Qualitest Pharms. Inc.*,
    __ F. Supp. 2d __, 2012 WL 3600194 (S.D. Tex. Aug. 9, 2012).... 20, 23, 28, 29

*Elliott v. Elliott*, 648 So. 2d 137 (Fla. Dist. Ct. App. 1994) ............................. 10, 32

*Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006).............................. *passim*

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).......................................... 26, 31, 33, 34

*Fields v. Wyeth, Inc.*, 613 F. Supp. 2d 1056 (W.D. Ark. 2009)...................... *passim*

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Finnicum v. Wyeth, Inc.*,
    708 F. Supp. 2d 616 (E.D. Tex. 2010) .................................................. 21, 23, 28

*Fisher v. Pelstring*,
    No. 4:09-cv-00252, 2010 WL 2998474 (D.S.C. July 28, 2010) ........... 21, 23, 28

*Flynn v. Am. Home Prods. Corp.*,
    627 N.W. 2d 342 (Minn. Ct. App. 2001) .......................................................... 22

*Foster v. Am. Home Prods. Corp.*, 29 F.3d 165 (4th Cir. 1994) ..................... *passim*

*Fullington v. Pfizer, Inc.*, No. 4:10-cv-000236,
    2010 WL 3632747 (E.D. Ark. Sept. 17, 2010) ...................................... 21, 23, 28

*Fullington v. Pliva, Inc.*, No. 4:10-CV-00236,
    2011 WL 6153608 (E.D. Ark. Dec. 12, 2011) ............................................ 29, 35

*Goldych v. Eli Lilly & Co.*,
    No. 5:04-CV-1477, 2006 WL 2038436 (N.D.N.Y. July 19, 2006) ................... 22

*Green v. Wyeth Pharms., Inc.*,
    CV-06-3917, 2007 WL 6428717 (Ala. Cir. Ct. May 15, 2007) ........... 22, 23, 27

*Gross v. Pfizer, Inc.*,
    No. 8:10-CV-00110, 2010 WL 4485774 (D. Md. Nov. 9, 2010) .............. *passim*

*Guarino v. Wyeth LLC*, No. 8:10-cv-2885-T-30TGW,
    2012 WL 1138631 (M.D. Fla. Apr. 3, 2012) ............................................. *passim*

*Hardy v. Wyeth, Inc.*,
    No. 9:09-CV-152, 2010 WL 1222183 (E.D. Tex. Mar. 29, 2010) ........ 21, 23, 28

*Hogue v. Pfizer, Inc.*,
    __ F. Supp. 2d __, 2012 WL 4466609 (S.D. Ohio Sept. 27, 2012) ........... *passim*

*Howe v. Wyeth Inc.*,
    No. 8:09-cv-00610, 2010 WL 1708857 (M.D. Fla. Apr. 26, 2010) .......... *passim*

*Huck v. Trimark Physicians Grp.*, No. LACV018947,
    2009 WL 3760458 (Iowa Dist. Ct. Feb. 27, 2009) ............................... 22, 23, 29

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Jenkins v. State*, 385 So. 2d 1356 (Fla. 1980) ........................................................ 32

*Johnson v. Teva Pharm. USA, Inc.*,
    No. 2:10-cv-404, 2010 WL 3271934 (W.D. La. Aug. 16, 2010) ......... 21, 23, 28

*Kellogg v. Wyeth*, 762 F. Supp. 2d 694 (D. Vt. 2010) ............................... 27, 28, 29

*Kelly v. Wyeth*, No. 03-CV-3314,
    2005 WL 4056740 (Mass. Super. Ct. May 6, 2005)...................... 18, 22, 23, 24

*Lashley v. Pfizer, Inc.*, __ F. Supp. 2d __,
    2012 WL 2459148 (S.D. Miss. June 27, 2012) ............................... 20, 23, 28, 29

*Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012)..................... 4

*Leblanc v. Wyeth, Inc.*,
    No. 04-CV-0611, 2006 WL 2883030 (W.D. La. Oct. 5, 2006)....................... 22

*Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338 (M.D. Fla. 2010) ...................... *passim*

*Liggett Group Inc. v. Engle*,
    853 So. 2d 434 (Fla. Dist. Ct. App. 2003) ............................................ 14, 15, 17

*Mahl v. Dade Pipe & Plumbing Supply Co.*,
    546 So. 2d 740 (Fla. Dist. Ct. App. 1989) ......................................................... 17

*Matthews v. GSP Corp.*, 368 So. 2d 391 (Fla. Dist. Ct. App. 1979) ..................... 17

*Meade v. Parsley*, No. 2:09-cv-00388,
    2009 WL 3806716 (S.D. W. Va. Nov. 13, 2009) .................................. 21, 23, 28

*Mensing v. Wyeth, Inc.*, 588 F.3d 603 (8th Cir. 2009)..................................... *passim*

*Mensing v. Wyeth, Inc.*, 658 F.3d 867 (8th Cir. 2011)........................................... 34

*Mensing v. Wyeth, Inc.*,
    No. 07-3919, 2008 WL 4724286 (D. Minn. Oct. 27, 2008)..................... 21, 23

*Metz v. Wyeth LLC*, 830 F. Supp. 2d 1291 (M.D. Fla. 2011) ......................... *passim*

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Moretti v. Wyeth, Inc.*,
No. 2:08-CV-00396, 2009 WL 749532 (D. Nev. Mar. 20, 2009) ... 21, 23, 24, 29

*Morris v. Wyeth, Inc.*,
No. 1:07-CV-176, 2008 WL 2677048 (W.D. Ky. June 30, 2008) ........ 22, 23, 24

*Morris v. Wyeth, Inc.*,
No. 3:09-CV-0854, 2009 WL 4064103 (W.D. La. Nov. 23, 2009) ...... 21, 23, 28

*Morris v. Wyeth, Inc.,*
No. 3:09-CV-854, 2011 WL 4975317 (W.D. La. Oct. 19, 2011)............... 29, 35

*Mosley v. Wyeth, Inc.*,
719 F. Supp. 2d 1340 (S.D. Ala. 2010)......................................*passim*

*Neal v. Teva Pharms. USA, Inc.*,
No. 09-CV-1027, 2010 WL 2640170 (W.D. Ark. July 1, 2010)........... 21, 23, 28

*Negron v. Teva Pharms. USA, Inc.*,
No. 09-16519, 2010 WL 8357563 (Tex. Dist. Ct. May 7, 2010) ......... 22, 23, 29

*Nicholson v. Kellin*,
481 So. 2d 931 (Fla. Dist. Ct. App. 1985) ........................................ 15

*O'Neil v. Crane Co.*, 266 P.3d 987 (Cal. 2012)..................................... 28

*Overton v. Wyeth, LLC*,
No. 1:10-cv-00491, 2011 WL 1343391 (S.D. Ala. Apr. 7, 2011).............*passim*

*Phares v. Actavis-Elizabeth LLC*,
__ F. Supp. 2d __, 2012 WL 3779227 (S.D. Tex. Aug. 30, 2012)............*passim*

*Phelps v. Wyeth, Inc.*, 857 F. Supp. 2d 1114 (D. Or. 2012)...........................*passim*

*Pliva, Inc. v. Mensing*, 131 S. Ct. 2567 (2011).................................*passim*

*Possa v. Eli Lilly & Co.*,
No. 05-CV-1307, 2006 WL 6393160 (M.D. La. May 10, 2006) ..................... 22

### TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Pulte Home Corp. v. Ply Gem Indus., Inc.*,
  804 F. Supp. 1471 (M.D. Fla. 1992) ............................................................ 17, 18

*Pustejovsky v. Wyeth, Inc.*,
  No. 4:07-CV-103, 2008 WL 1314902 (N.D. Tex. Apr. 3, 2008) ......... 22, 23, 24

*Rey v. Philip Morris, Inc.*,
  75 So. 3d 378 (Fla. Dist. Ct. App. 2011) .................................................... 15, 16

*Reynolds v. Anton*, No. 01A-76719-3,
  2004 WL 5000272 (Ga. Super. Ct. Oct. 28, 2004) ........................................... 22

*Rossi v. Hoffman-LaRoche*,
  ATLL-690-05, 2007 WL 7632318 (N.J. Super. Ct. Jan. 3, 2007) ..................... 22

*Schrock v. Pliva USA, Inc.*,
  No. 08-CV-453, 2011 WL 6130924 (W.D. Okla. Dec. 8, 2011) ............... 29, 35

*Schrock v. Wyeth, Inc.*,
  601 F. Supp. 2d 1262 (W.D. Okla. 2009) .................................................. *passim*

*Sharp v. Leichus*, No. 2004-CA-0643,
  2006 WL 515532 (Fla. Cir. Ct. Feb. 17, 2006) .......................................... *passim*

*Sharp v. Leichus*, 952 So. 2d 555 (Fla. Dist. Ct. App. 2007) ................................ 10

*Sheeks v. Am. Home Prods. Corp.*, No. 02-CV-337,
  2004 WL 4056060 (Colo. Dist. Ct. Oct. 15, 2004)................................ 22, 23, 24

*Simpson v. Wyeth, Inc.*,
  No. 7:10-cv-01771, 2011 WL 10607 (N.D. Ala. Jan. 4, 2011) .................. *passim*

*Slatcoff v. Dezen*, 76 So. 2d 792 (Fla. 1955) (en banc)......................................... 36

*Sloan v. Wyeth*, No. MRS-L-1183-04,
  2004 WL 5767103 (N.J. Super. Ct. Oct. 13, 2004) .................................... 22, 23

*Smith v. Wyeth, Inc.*, 657 F.3d 420 (6th Cir. 2011).......................................... *passim*

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Smith v. Wyeth, Inc.*,
   No. 5:07-CV-18, 2008 WL 2677051 (W.D. Ky. June 30, 2008) ......... 21, 23, 24

*Stanley v. Wyeth, Inc.*, 991 So. 2d 31 (La. Ct. App. 2008) .................................... 22

*Stoddard v. Wyeth, Inc.*,
   630 F. Supp. 2d 631 (E.D.N.C. 2009).............................................. 21, 23, 24, 29

*Strayhorn v. Wyeth Pharms., Inc.*, __ F. Supp. 2d __,
   2012 WL 3217672 (W.D. Tenn. Aug. 8, 2012).............................. 20, 23, 28, 29

*Swicegood v. Pliva, Inc.*,
   543 F. Supp. 2d 1351 (N.D. Ga. 2008) ................................................ 22, 23, 24

*Tarver v. Wyeth, Inc.*,
   No. 3-04-CV-2036, 2005 WL 4052382 (W.D. La. June 7, 2005).............. 22, 23

*Tarver v. Wyeth, Inc.*,
   No. 3-04-CV-2036, 2006 WL 1517546 (W.D. La. Jan. 26, 2006)............. 22, 23

*Ugaz v. Am. Airlines, Inc.*,
   576 F. Supp. 2d 1354 (S.D. Fla. 2008) ............................................................. 16

*Vecta Contract, Inc. v. Lynch*,
   444 So. 2d 1093 (Fla. Dist. Ct. App. 1984) ..................................................... 17

*Vincent v. C.R. Bard, Inc.*,
   944 So. 2d 1083 (Fla. Dist. Ct. App. 2006) ..................................................... 19

*Washington v. Wyeth, Inc.*,
   No. 3:09-CV-1343, 2010 WL 450351 (W.D. La. Feb. 8, 2010) .......... 21, 23, 28

*Weeks v. Wyeth, Inc.*,
   No. 1:10-cv-602, 2011 WL 1216501 (M.D. Ala. Mar. 31, 2011) .................... 27

*Weeks v. Wyeth, Inc.*,
   No. 1:10-cv-602, 2011 WL 6988047 (M.D. Ala. Aug. 25, 2011).................... 27

*Westerlund v. Wyeth, Inc.*, No. MID-02174-05,
   2008 WL 5592753 (N.J. Super. Ct. Law Div. Oct. 20, 2008) .......................... 22

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Wilson v. Wyeth, Inc.*,
    No. 3:07-CV-378, 2008 WL 2677049 (W.D. Ky. June 30, 2008) ........ 22, 23, 24

*Wyeth, Inc. v. Weeks*,
    No. 1101397, 2011 WL 6989897 (Ala. Oct. 17, 2011) .................................... 27

*Yachting Promotions, Inc. v. Broward Yachts, Inc.*,
    792 So. 2d 660 (Fla. Dist. Ct. App. 2001) ......................................................... 36

**RULES AND REGULATIONS**

Fla. R. App. P. 9.150(a) ............................................................................................ 30

**MISCELLANEOUS**

Fla. Const. art. I, § 21 .............................................................................................. 34

## ISSUES PRESENTED

1.      Whether, under Florida law, the manufacturer of a brand-name drug may be held liable for injuries allegedly caused by a plaintiff's use of a generic version of the medicine manufactured and sold by another company.

2.      Whether the Court should certify the first question to the Florida Supreme Court, even though that court already—at least twice—has addressed the governing legal principle.

## STATEMENT OF THE CASE

This is a product-liability action under Florida law in which Plaintiff alleges that she was injured by using the generic version of the prescription drug metoclopramide.  Plaintiff sued Teva Pharmaceuticals USA, Inc. ("Teva"), the manufacturer of the generic metoclopramide that she used, as well as Wyeth and Schwarz, two former manufacturers of Reglan®, the brand-name formulation of metoclopramide.  Her complaint asserted claims for negligence, strict liability, breach of warranties, misrepresentation and fraud, negligence per se, and a demand for punitive damages.  With respect to Brand Defendants, however, Plaintiff has explicitly abandoned all of her claims except those "sounding in misrepresentation and fraud."  Pl.'s Br. 3-4.

On November 7, 2011, the district court dismissed with prejudice Plaintiff's claims against Teva, holding that those claims were preempted by federal

1

law under the Supreme Court's decision in *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567 (2011).  Doc. 39.

On November 14, 2011, in response to Brand Defendants' request for admission, Plaintiff conceded that she used only generic metoclopramide, and did ***not*** use any product manufactured by Brand Defendants.  *See* Pl.'s Br. 9, 11; Doc. 59.  Accordingly, Brand Defendants moved for summary judgment, citing the long-settled principle of Florida law that a defendant may not be held liable—under any theory of liability—for injuries allegedly caused by the plaintiff's use of a product unless the defendant manufactured or sold the product that the plaintiff used.  The district court granted Brand Defendants' motion on April 3, 2012, holding that, under "'long standing principles of Florida law,'" "the undisputed fact that Plaintiff did not use any metoclopramide manufactured by [Brand Defendants] is dispositive of her claims."  Doc. 59, at 3-4 (quoting *Metz v. Wyeth LLC*, 830 F. Supp. 2d 1291, 1295 (M.D. Fla. 2011) (dismissing identical claims against Brand Defendants brought by a plaintiff who used only generic metoclopramide)).  "Specifically, Plaintiff's claims against the Brand Defendants are barred because settled Florida law provides that a defendant cannot be held liable for injuries allegedly caused by a product, under any theory of liability, unless the

defendant manufactured or sold the product used by the plaintiff." *Id.* at 2 (citing

*Metz*; emphasis omitted).[1]

Plaintiff filed motions for reconsideration of the judgments entered in fa-

vor of Teva and Brand Defendants. The district court held that those motions

were simply an attempt to "re-litigate issues already considered and rejected by

this Court" and thus did "not raise proper grounds for reconsideration." Doc. 66

at 2. This appeal followed.

## STATEMENT OF FACTS

Metoclopramide is an FDA-approved prescription drug that is available in

both generic and branded formulations. At different times, Brand Defendants

have manufactured and distributed Reglan®, the brand-name formulation of me-

toclopramide. Wyeth and its predecessors-in-interest manufactured and distri-

buted Reglan® from approximately 1989 to 2001. In December 2001, Wyeth

sold the rights and liabilities associated with Reglan® tablets to Schwarz, which

manufactured and distributed Reglan® tablets until February 2008, when it trans-

ferred those rights to another company. Since the mid-1980s, several compa-

nies—including Teva—have manufactured and distributed generic metoclopra-

mide. Doc. 44, Exs. A and B.

---

[1]    The *Metz* decision currently is on appeal to this Court and has been as-
signed docket number 12-13321-B (filed June 15, 2012).

3

In 2004, the FDA approved Schwarz's request to include in the label for Reglan® multiple bolded warnings against using the drug for longer than 12 weeks. Pl.'s Br. 7. Plaintiff used generic metoclopramide from May to August 2007 and alleges that her "long-term ingestion of the Reglan/metoclopramide caused her injuries," a neurological condition known as tardive dyskinesia. Doc. 1 at 5-6 (Compl. ¶¶ 20-25); *see also* Pl.'s Br. 2 ("The drug in question caused Plaintiff's disorder.").

Although Brand Defendants disagree with much of the rest of Plaintiff's statement of facts, the only fact that is relevant to the viability of Plaintiff's claims against Brand Defendants under Florida law is undisputed: Plaintiff never used Brand Defendants' products. *See* Pl.'s Br. 9.

## STANDARD OF REVIEW

This Court "review[s] de novo a district court's grant of summary judgment." *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012).

## SUMMARY OF THE ARGUMENT

The issue presented here is not novel (although the theory of liability that Plaintiff seeks to create would be). Including the court below, six courts applying Florida law—including one of Florida's District Courts of Appeal—have considered this issue and rejected Plaintiff's position. Moreover, the Fourth,

4

Fifth, Sixth, and Eighth Circuits have rejected Plaintiff's theory of liability under the laws of Maryland, Louisiana, Kentucky, and Minnesota, respectively. In total, 74 courts applying the laws of 25 states have considered the issue raised here and rejected claims like those Plaintiff has asserted against Brand Defendants.

That courts have developed this overwhelming and consistent body of case law should come as no surprise. The principle that a manufacturer is liable only for injuries caused by its own products is fundamental to tort law and is embodied in long-settled Florida common law. There is no Florida authority to the contrary and no basis for reaching a different result under any of the authorities that Plaintiff has identified. Accordingly, this Court should refuse Plaintiff's invitation to create a new form of expanded liability under Florida law, particularly because doing so would place Florida outside a clear national consensus on this issue. The district court's order granting summary judgment for Brand Defendants should be affirmed.

There also is no basis for certifying this question to the Florida Supreme Court. As numerous courts applying Florida law to this issue have held, the principles that are fatal to Plaintiff's claims are well settled by long-standing precedent from the Florida Supreme Court.

5

## ARGUMENT

## I.    Florida Does Not Recognize Plaintiff's Novel Theory Of Liability.

In six cases, state and federal courts applying Florida law have dismissed claims *identical* to those brought by Plaintiffs here, holding that Brand Defendants may not be held liable for injuries allegedly caused by a plaintiff's use of generic metoclopramide manufactured by Brand Defendants' competitors.  *See* Doc. 59; *Metz v. Wyeth LLC*, 830 F. Supp. 2d 1291, 1295 (M.D. Fla. 2011); *Howe v. Wyeth Inc.*, No. 8:09-cv-00610, 2010 WL 1708857, at *3-*4 (M.D. Fla. Apr. 26, 2010); *Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1343-48 (M.D. Fla. 2010); *Dietrich v. Wyeth, Inc.*, No. 50-2009-CA-21586, 2009 WL 4924722, at *2-*6 (Fla. Cir. Ct. Dec. 21, 2009); *Sharp v. Leichus*, No. 2004-CA-0643, 2006 WL 515532, at *2-*8 (Fla. Cir. Ct. Feb. 17, 2006), *aff'd per curiam*, 952 So. 2d 555 (Fla. Dist. Ct. App. 2007).[2]

These decisions are grounded in controlling Florida Supreme Court authority holding that a plaintiff may not recover from a manufacturer—under *any* theory of liability—for injuries caused by a product unless the plaintiff used that manufacturer's product.  *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1276

---

[2]    Additionally, the Eastern District of Kentucky, presiding over the Propoxyphene Products Liability MDL, recently dismissed claims asserted by residents of Florida against the manufacturers of brand-name Darvocet® because the plaintiffs had ingested only the generic version of the drug.  *See In re Darvocet*, 2:11-md-2226, 2012 WL 3984871, at *1-*2 (E.D. Ky. Sept. 10, 2012) ("*Darvocet IV*").

6

(Fla. 2006); *Conley v. Boyle Drug Co.*, 570 So. 2d 275, 286 (Fla. 1990). Indeed, in *Conley* the court specifically held that a drug manufacturer may not be held liable for a plaintiff's injuries when it did not manufacture the drug that the plaintiff used—the very circumstance presented by this case.

This controlling principle of Florida law is part of an overwhelming national consensus on this issue: 74 decisions under the laws of 25 states—including opinions from the Fourth, Fifth, Sixth, and Eighth Circuits—have rejected efforts to impose liability on brand-name manufacturers for injuries allegedly caused by a generic product. As the district court correctly held, Florida law on this point is clear, uncontroversial, and consistent with an equally clear and uncontroversial national consensus.

### A.    Courts applying Florida law have unanimously rejected claims identical to those Plaintiff raises here.

"A continuous line of well-established and binding Florida law holds that a product manufacturer cannot be held liable under any theory of liability—be it based in traditional product liability under strict liability or negligence, or fraudulent or negligent misrepresentation, or otherwise—if the plaintiff never used that manufacturer's product." *Dietrich*, 2009 WL 4924722, at *2. Both federal and state courts in Florida repeatedly have addressed—and uniformly have rejected—efforts, like Plaintiff's, to impose liability on a brand-name manufacturer for injuries allegedly caused by a generic product that it did not manufacture or sell. In-

deed, this is the sixth case in which a court applying Florida law has granted summary judgment for Brand Defendants because the plaintiff used only another company's generic metoclopramide. *See* page 6, *supra*.

In *Sharp*, the earliest of these cases, the plaintiff alleged that she developed tardive dyskinesia as a result of ingesting generic metoclopramide. Although the plaintiff did not ingest any product manufactured by Brand Defendants, she sought to hold them liable as manufacturers of brand-name Reglan® under theories of misrepresentation and fraud. *Sharp*, 2006 WL 515532, at *1-*2. The court framed the issue as "whether a plaintiff may impose liability on two manufacturers that can show that they did not make the drug ingested by [the plaintiff]." *Id.* at *3. Relying on the Florida Supreme Court's decision in *Conley*, 570 So. 2d at 286, the *Sharp* court answered this question in the negative, holding that the plaintiff could not prevail on a fraud or misrepresentation claim against Brand Defendants because she did not use their products. *See* 2006 WL 515532, at *3. The court relied on the "fundamental principle" of Florida law embodied in *Conley* that "a plaintiff may only recover from the defendant who manufactured or sold the product that caused the injuries in question." *Id.* at *2. The court recognized that, in *Conley*, the Florida Supreme Court "specifically ruled that a pharmaceutical manufacturer could *not* be liable where it could prove that it did not manufacture the drug that was ingested." *Id.* In view of this binding, on-point

8

precedent, the *Sharp* court found *Conley* to be "dispositive" of all claims. *Id.* at *3.

The *Sharp* court further held that, under Florida law, Brand Defendants owed a duty of care only to consumers of their own products, not to consumers of products made by their competitors. *See id.* at *4 ("[A] name brand manufacturer [is] under no duty to the consumers of another company's product and could not be held liable for injuries caused by the ingestion of a competing generic product."); *id.* at *7 ("It would be unreasonable, as a matter of law, to say that … Schwarz and Wyeth should have undertaken an additional obligation to warn about [another] company's product.").

The court explicitly rejected the plaintiffs' attempt to distinguish between product-liability claims and principles of negligence, fraud, and misrepresentation, holding that "[i]t is abundantly clear that the [p]laintiffs' case is, in fact, a products liability case." *Sharp*, 2006 WL 515532, at *6. As the court explained, "[t]he warnings and representations at issue here are only relevant to the extent that they pertain to the dangers of the underlying *product*, which in this case is generic metoclopramide." *Id.* Accordingly, it dismissed the plaintiffs' fraud and misrepresentation claims—which were identical to the fraud and misrepresentation claims brought here—based on a lack of product identification. *Id.*

The Florida First District Court of Appeals affirmed the circuit court's de-

9

cision *per curiam*.[3]  *Sharp*, 952 So. 2d 555.

Subsequent Florida decisions from both state and federal courts have agreed with the *Sharp* court's reasoning and holding.  In *Dietrich*, plaintiffs asserted causes of action against manufacturers of brand-name Reglan® for negligence, strict liability, breach of warranty, misrepresentation, fraud, and negligence *per se*.  The court viewed those claims as "identical" to those "previously disposed of" in *Sharp*.  *Dietrich*, 2009 WL 4924722, at *3.  It further reasoned that the Florida Supreme Court's intervening decision in *Engle*, 945 So. 2d at 1276, strengthened the force of *Sharp*'s holding by adding to a "long line of cases that uniformly applied what can only be deemed a fundamental principle of Florida tort and product-liability law ….  Plaintiffs, such as the Plaintiffs here, have no cause of action against a product manufacturer unless they actually used that manufacturer's product."  *Dietrich*, 2009 WL 4924772, at *3.

In *Levine*, the plaintiff again sought to impose liability on Brand Defendants for injuries purportedly caused by another company's generic metoclopramide.  The district court granted judgment as a matter of law on these claims—including claims for misrepresentation and fraudulent concealment—explaining:

---

[3]     "It is fundamental black letter law that a per curiam disposition affirming a trial court order without a written opinion, occurs when the points of law raised are so well settled that a further writing would serve no useful purpose." *Elliott v. Elliott*, 648 So. 2d 137, 138 (Fla. Dist. Ct. App. 1994).

"It is well established under Florida law and elsewhere that identification of the product that caused the harm as the one sold or manufactured by the defendants is an essential element of traditional tort law." *Levine*, 684 F. Supp. 2d at 1345.

And in *Howe* the district court noted that "Florida courts and the overwhelming majority of courts in the United States have held that brand manufacturers are not liable for injuries caused by generic drugs produced by generic manufacturers, including the generic drug at issue in this case." *Howe*, 2010 WL 1708857, at *3. Finding the claims (including misrepresentation and fraudulent concealment) and pertinent facts of the case to be "identical to those in *Levine*," the Court granted summary judgment to Brand Defendants on the same grounds as it had in *Levine*. *Id.*

In *Metz*, the district court again granted summary judgment for Brand Defendants in a case in which the plaintiff ingested only generic metoclopramide manufactured by Brand Defendants' competitors. According to the court, "[t]he vast majority of courts, in Florida and elsewhere, that have addressed the issue now before the Court have consistently held that consumers may not bring claims for negligence, fraud, strict liability, misrepresentation, or breach of warranty against a brand name pharmaceutical manufacturer when the consumers only ingested generic versions of the drug manufactured by third parties." *Metz*, 830 F. Supp. 2d at 1293.

11

Here, the district court reached the same conclusion about Florida law as did the courts in *Sharp*, *Dietrich*, *Levine*, *Howe*, and *Metz*.  It reaffirmed the settled principle of Florida law, followed in each of those cases, that "a defendant cannot be held liable for injuries allegedly caused by a product, under any theory of liability, unless the defendant manufactured or sold the product used by the plaintiff."  Doc. 59, at 2 (emphasis omitted).  Accordingly, the court dismissed all of Plaintiff's claims as a matter of law.

## B.    Florida's product-identification requirement is grounded in fundamental principles of Florida tort law.

The product-identification rule applied here, as well as in *Sharp*, *Dietrich*, *Levine*, *Howe*, and *Metz*, is not unique to metoclopramide litigation; it rests on a fundamental and long-settled principle of Florida law: "A continuous line of well-established and binding Florida law holds that a product manufacturer cannot be held liable under any theory of liability—be it based in traditional product liability under strict liability or negligence, or fraudulent or negligent misrepresentation, or otherwise—if the plaintiff never used that manufacturer's product."  *Dietrich*, 2009 WL 4924722, at *2.  The Florida Supreme Court has repeatedly and consistently followed that common-sense rule.  *See, e.g.*, *Engle,* 945 So. 2d at 1276 (directing judgment for a defendant that "did not manufacture or sell any of the products that allegedly caused injury"); *Conley*, 570 So. 2d at 286 ("an individual defendant may exculpate itself from liability by proving … that it *did not*

12

*produce or market the [drug] taken by the [plaintiff]*") (emphasis added).

In *Conley*, the Florida Supreme Court addressed claims of injury from die-thylstilbestrol ("DES"), a drug made by numerous manufacturers in generic form. 570 So. 2d at 279.  The plaintiff, alleging that her cancer was linked to her moth-er's use of DES while pregnant, sought to impose liability under theories of neg-ligence, strict liability, breach of warranty, and fraud.  *See id.*  Unable to identify the manufacturer of the DES that her mother had ingested years earlier, the plain-tiff asked the court to adopt a "market share" theory of liability.  *Id.*  Although the court recognized that a limited version of that theory could apply in certain narrowly constrained circumstances, it also clearly held that a defendant drug manufacturer *may not* be held liable under *any* theory of recovery—including negligence, strict liability, breach of warranty, and fraud—when the evidence af-firmatively establishes that the plaintiff did not use that defendant's product.  *See id.* at 286.

Plaintiff tries to twist this outcome, claiming that, by adopting a limited version of market share liability, "*Conley* authorizes a suit against at least some non-use manufacturers behaving 'tortiously,' when they contribute to the risk of harm."  Pl.'s Br. 27.  On the contrary, *Conley* does not authorize suit against *any* "non-use manufacturers."  It authorizes market share liability only "as a theory of last resort … where there is an inherent inability to identify the manufacturer of

13

the product that caused the injury." *Conley*, 570 So. 2d at 285 (internal quotation marks omitted). But that expansion of "traditional principles of tort law" (*id.* at 283) is not available "[w]here a plaintiff can identify a specific tortfeasor as causing her injury," and *Conley* affirmatively prohibits *any* form of liability against a defendant when the evidence shows that the plaintiff did *not* use a defendant's product (*id.* at 285-86). "Non-use manufacturers"—like Brand Defendants here—may *never* be held liable under Florida law.

The Florida Supreme Court reached the same conclusion in *Engle*, holding that two cigarette manufacturers were entitled to judgment as a matter of law because the plaintiffs never used those manufacturers' products. The plaintiffs had asserted claims sounding in negligence, strict liability, breach of warranty, misrepresentation, and fraud against a number of tobacco companies for injuries allegedly caused by smoking. *See Engle*, 945 So. 2d at 1255, 1257 n.4. Following trial, the jury found for the plaintiffs and against each defendant. The District Court of Appeal vacated the verdict against two of the defendants and directed entry of judgment in their favor because the evidence conclusively demonstrated that the plaintiffs did not smoke cigarettes manufactured by those two companies. *Liggett Group Inc. v. Engle*, 853 So. 2d 434, 466 (Fla. Dist. Ct. App. 2003), *aff'd on this point, rev'd on other grounds*, 945 So. 2d 1246 (Fla. 2006). As the court explained, "[i]t is aphoristic that a plaintiff cannot prevail on claims for negli-

14

gence, breach of warranty or strict liability, unless the plaintiff establishes that the product which allegedly caused the plaintiff's injury was manufactured or sold by the defendant." *Id.* at 466 n.46. The Florida Supreme Court affirmed, holding that those defendants were entitled to judgment as a matter of law on *all* of the plaintiffs' claims because those defendants did not manufacture or sell the products that caused the plaintiffs' injuries. *See Engle*, 945 So. 2d at 1276.

Plaintiff contends that *Engle* actually supports the existence of her novel theory because, in a follow-on case, an intermediate appellate court allowed a *civil conspiracy* claim against a tobacco defendant, even though the plaintiff used only a co-conspirator tobacco company's product. Pl.'s Br. 28-30. As emphasized by the very case Plaintiff cites for this proposition, however, the "law of civil conspiracy is striking in its extension of liability to a co-conspirator which may not have caused any direct injury to the claimant." *Rey v. Philip Morris, Inc.*, 75 So. 3d 378, 381-83 (Fla. Dist. Ct. App. 2011); *see also, e.g.*, *Nicholson v. Kellin*, 481 So. 2d 931, 935 (Fla. Dist. Ct. App. 1985) ("Each act done in pursuance of a conspiracy by one of several conspirators is an act for which each is jointly and severally liable."). That distinguishes civil conspiracy from misrepresentation and fraudulent concealment—the causes of action at issue here and in *Conley*—which do *not* extend liability to harm caused by others and thus *do* require product identification whenever the alleged harm is caused by a product.

15

As Florida courts repeatedly have held, interpreting misrepresentation or fraud claims more broadly would "render virtually any manufacturer liable for the defective products of an entire industry, even if it could be demonstrated that the product which caused the injury was not made by the defendant." *Rey*, 75 So. 3d at 382-83 (internal quotation marks omitted). Indeed, *Rey* limited its holding to claims for "civil conspiracy—fraud by concealment" and explicitly distinguished *Conley* simply by observing that *Conley* involved only negligence and fraud claims, not "conspiracy to conceal material facts among a group of manufacturer defendants." *Rey*, 75 So. 3d at 382. So too here. Plaintiff tellingly concedes that she has not alleged a conspiracy between Brand Defendants and the generic manufacturers (nor could she). *See* Pl.'s Br. 30 ("Plaintiff in this case did not allege a conspiracy among the Defendants"). There is thus no basis on which she could hold Brand Defendants liable for harm caused by a generic manufacturer's products.

Moreover, "*Engle* and *Conley* are only two more recent cases in a long and unbroken line of Florida authority holding that a product manufacturer cannot be liable, regardless of the claim or theory asserted, when the plaintiff did not use or consume the manufacturer's product." *Dietrich*, 2009 WL 4924722, at *2 (citing cases). Accordingly, "the proper defendants [in a product case] are the manufacturers and perhaps other persons in the chain of distribution." *Ugaz v. Am. Air-*

16

*lines, Inc.*, 576 F. Supp. 2d 1354, 1375 (S.D. Fla. 2008) (granting summary judgment to defendants that neither made nor distributed the product that injured the plaintiff) (citing *Liggett Group*, 853 So. 2d at 466 n.46); *see also Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1484-85 (M.D. Fla. 1992) ("It is well established under Florida law and elsewhere that identification of the product that caused the harm as the one sold or manufactured by the defendant is an essential element of traditional tort law."); *Mahl v. Dade Pipe & Plumbing Supply Co.*, 546 So. 2d 740, 741 (Fla. Dist. Ct. App. 1989) (affirming summary judgment based on lack of product identification); *Vecta Contract, Inc. v. Lynch*, 444 So. 2d 1093, 1094 (Fla. Dist. Ct. App. 1984) (ordering judgment for defendant because plaintiff failed to prove that collapsed chair was manufactured by defendant rather than previous manufacturer of the same chair); *Matthews v. GSP Corp.*, 368 So. 2d 391, 392 (Fla. Dist. Ct. App. 1979) (affirming directed verdict based on lack of product identification).

The Florida courts have uniformly applied this rule for good reason. Limiting liability to cases where the defendant's product caused the plaintiff's injury "serves the important functions in tort law of assigning blame-worthiness to culpable parties, and also limits the scope of potential liability and thereby encourages useful activity that would otherwise be deterred if there were excessive exposure to liability …. '[W]ithout this element every manufacturer and vendor

17

would become a virtual insurer of all like products on the market.'" *Levine*, 684

F. Supp. 2d at 1345 (quoting *Pulte*, 804 F. Supp. at 1485).[4]

### C.     In any event, Brand Defendants owed no duty to Plaintiff.

Plaintiff's claims against Brand Defendants fail not only for lack of product

identification, but also because Brand Defendants did not owe Plaintiff—with

whom they had no relationship—a duty of care.  As the *Sharp* case held: "There

is nothing in [the cases cited by the plaintiff] requiring a finding that Wyeth or

Schwarz had a duty to warn about the dangers of a drug that was manufactured

by another company.  Nor is there any case in Florida that imposes such a duty."

2006 WL 515532, at *6; *see also, e.g.*, *Dietrich*, 2009 WL 4924722, at *3; *Le-*

---

[4]     Other courts have agreed that holding brand-name manufacturers liable for
other companies' products would impermissibly expose brand-name manufactur-
ers to indefinite liability as insurers for an entire market.  *See, e.g.*, *Barnes v.
Kerr Corp.*, 418 F.3d 583, 590 (6th Cir. 2005) ("[I]f a manufacturer could be held
liable for injury merely because it foresaw a danger created by another party,
there would literally be no end of potential liability. To sustain such a theory
would be to cast manufacturers into the role of insurers of products manufactured
by others." (internal quotation marks omitted)); *Bell v. Pfizer Inc.*, No. 5:10-CV-
00101, 2011 WL 904161, at *3 (E.D. Ark. Mar. 16, 2011) ("[I]f [the innovator-
liability theory] were adopted, brand-name drug manufacturers would become the
insurers of the generic manufacturers."). The unfairness of such a scheme is par-
ticularly acute given the dynamics of pharmaceutical-market risk, which is borne
almost exclusively by brand-name manufacturers, who incur the expense of re-
search, development, and advertising, all of which inevitably inure (essentially at
no cost) to generic manufacturers' benefit.  *See, e.g.*, *Foster*, 29 F.3d at 170;
("[B]rand-name manufacturers bear all of the up-front costs associated with de-
veloping drugs, navigating the regulatory maze to obtain FDA approval, and then
marketing those drugs ...."); *Kelly v. Wyeth*, No. Civ. A. MICV200303314B,
2005 WL 4056740, at *4–5 (Mass. Super. Ct. May 6, 2005) (describing high
costs of developing new drug as opposed to a generic equivalent).

*vine*, 684 F. Supp. 2d at 1345; *Howe*, 2010 WL 1708857, at *3.[5]  That reflects

both Florida law and general black-letter tort principles.  As explained below,

scores of courts around the country—including four U.S. Courts of Appeals—

have dismissed claims against Brand Defendants in part based on the absence of

a duty owed to users of other manufacturers' products.

## II.    Plaintiff's Theory Of Liability Against Brand Defendants Consistently Has Been Rejected In State After State Across The Country.

Plaintiff not only asks this Court to abandon settled principles of Florida

law, she invites the Court to saddle Florida with an aberrant and unique tort rule.

The overwhelming national consensus is that a brand-name manufacturer cannot

be liable for injuries allegedly caused by ingestion of a generic product manufac-

tured and sold by its competitor.  To date, *74 decisions applying the law of 25 dif-*

---

[5]    Plaintiff makes a misguided effort to infer such a duty from *Vincent v. C.R. Bard, Inc.*, 944 So. 2d 1083 (Fla. Dist. Ct. App. 2006).  Pl.'s Br. 27-28.  In *Vincent*, the plaintiff's son was injured by a pain pump designed by Bard.  The plain-tiff could not tell, however, whether the pump was manufactured by Bard itself or a third party that had purchased Bard's pump-manufacturing division.  The court merely held that the plaintiff could pursue a negligent design claim against Bard because designers who then sell their design to another company for purposes of manufacture owe the same duties to users of those products as designers who manufacture the product themselves.  944 So. 2d at 1086.  That rule is consistent with *Engle*, *Conley*, and the district court's dismissal of Plaintiff's claims against Brand Defendants.  Bard had a direct connection to the specific product that caused the plaintiff's injury—it both designed and profited from the sale of the pump.  Here, on the contrary, Brand Defendants did not have *any* relationship with Plaintiff or the generic product that she used and, of course, did *not* profit from the sale of their competitor's metoclopramide.  In any event, Plaintiff tell-ingly concedes that she "is not pursuing a negligent design claim against Wyeth and Schwarz in this case." Pl.'s Br. 28.

*ferent states*[6] (Alabama, Arkansas, Colorado, Florida, Georgia, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Minnesota, Mississippi, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah and West Virginia) have held that a brand-name drug manufacturer (or "innovator") may not be held liable for injuries caused by the use of another manufacturer's generic equivalent product.[7]  Indeed,

---

[6]     The court overseeing the Darvocet MDL also has dismissed claims on this basis that were asserted by residents of Connecticut, Indiana, Michigan, Missouri, and New Hampshire.  *See Darvocet IV*, 2012 WL 3984871, at *1-*2; *In re Darvocet*, 2:11-md-2226, 2012 WL 3610237, at *2 & n.7 (E.D. Ky. Aug. 21, 2012) ("*Darvocet III*"); *In re Darvocet*, No. 2:11-MD-02226, 2012 WL 767595 (E.D. Ky. Mar. 7, 2012) ("*Darvocet II*"); *In re Darvocet*, 856 F. Supp. 2d 904 (E.D. Ky. 2012) ("*Darvocet I*").

[7]     *See Demahy v. Schwarz Pharma, Inc.*, No. 11-31073, 2012 WL 5261492, at *3-*4 (5th Cir. Oct. 25, 2012); *Smith v. Wyeth, Inc.*, 657 F.3d 420, 424 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 2103 (2012); *Mensing v. Wyeth, Inc.*, 588 F.3d 603, 612-14 (8th Cir. 2009), *rev'd on other grounds sub nom. PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011); *Foster v. Am. Home Prods. Corp.*, 29 F.3d 165, 170 (4th Cir. 1994); *Hogue v. Pfizer, Inc.*, __ F. Supp. 2d __, 2012 WL 4466609, at *2-*5 (S.D. Ohio Sept. 27, 2012); *Del Valle v. Pliva, Inc.*, No. 11-CV-113, 2012 WL 4747259, at *1 (S.D. Tex. Sept. 12, 2012), *adopting* Report and Recommendation of U.S. Magistrate Judge, slip op. at 7-11 (S.D. Tex. Aug. 8, 2012); *Darvocet IV*, 2012 WL 3984871, at *1-*2; *Baymiller v. Ranbaxy Pharms., Inc.*, __ F. Supp. 2d __, 2012 WL 3929768, at *8-*9 (D. Nev. Sept. 6, 2012); *Phares v. Actavis-Elizabeth LLC*, __ F. Supp. 2d __, 2012 WL 3779227, at *9-*11 (S.D. Tex. Aug. 30, 2012); *Darvocet III*, 2012 WL 3610237, at *2 & n.7; *Eckhardt v. Qualitest Pharms. Inc.*, __ F. Supp. 2d __, 2012 WL 3600194, at *2-*6 (S.D. Tex. Aug. 9, 2012); *Strayhorn v. Wyeth Pharms., Inc.*, __ F. Supp. 2d __, 2012 WL 3217672, at *7-*8 (W.D. Tenn. Aug. 8, 2012); *Lashley v. Pfizer, Inc.*, __ F. Supp. 2d __, 2012 WL 2459148, at *4-*5 (S.D. Miss. June 27, 2012); *Phelps v. Wyeth, Inc.*, 857 F. Supp. 2d 1114, 1119-21 (D. Or. 2012), *adopting* Report and Recommendation of U.S. Magistrate Judge, 2012 WL 1021084 (D. Or. Feb. 24,

2012); *Guarino v. Wyeth LLC*, No. 8:10-cv-2885-T-30TGW, 2012 WL 1138631, at *2 (M.D. Fla. Apr. 3, 2012); *Darvocet II*, 2012 WL 767595, at *2 & n.5, *4; *Darvocet I*, 856 F. Supp. 2d at 908 & n.2; *Metz*, 830 F. Supp. 2d at 1293-95; *Overton v. Wyeth, LLC*, No. 1:10-cv-00491, 2011 WL 1343391 (S.D. Ala. Apr. 7, 2011), *adopting* Report and Recommendation of U.S. Magistrate Judge, 2010 WL 1343392, at *6-*7 (S.D. Ala. Mar. 15, 2011); *Bell v. Pfizer Inc.*, No. 5:10-cv-00101, 2011 WL 904161, at *2-*3 (E.D. Ark. Mar. 16, 2011); *Simpson v. Wyeth, Inc.*, No. 7:10-cv-01771, 2011 WL 10607 (N.D. Ala. Jan. 4, 2011), *adopting* Report and Recommendation of U.S. Magistrate Judge, 2010 WL 5485812, at *4-*5 (N.D. Ala. Dec. 9, 2010); *Gross v. Pfizer, Inc.*, No. 8:10-CV-00110, 2010 WL 4485774, at *2-*3 (D. Md. Nov. 9, 2010); *Cooper v. Wyeth, Inc.*, No. 09-CV-929, 2010 WL 4318816, at *2-*3 (M.D. La. Oct. 26, 2010); *Fullington v. Pfizer, Inc.*, No. 4:10-cv-000236, 2010 WL 3632747, at *2 (E.D. Ark. Sept. 17, 2010); *Johnson v. Teva Pharm. USA, Inc.*, No. 2:10-cv-404, 2010 WL 3271934, at *2-*3 (W.D. La. Aug. 16, 2010); *Fisher v. Pelstring*, No. 4:09-cv-00252, 2010 WL 2998474, at *6, *8 (D.S.C. July 28, 2010); *Neal v. Teva Pharms. USA, Inc.*, No. 09-CV-1027, 2010 WL 2640170, at *2 (W.D. Ark. July 1, 2010); *Craig v. Pfizer, Inc.*, No. 3:10-00227, 2010 WL 2649544 (W.D. La. June 29, 2010), *adopting* Report and Recommendation of U.S. Magistrate Judge, 2010 WL 2649545, at *3-*4 (W.D. La. May 26, 2010); *Mosley v. Wyeth, Inc.*, 719 F. Supp. 2d 1340, 1347-51 (S.D. Ala. 2010); *Finnicum v. Wyeth, Inc.*, 708 F. Supp. 2d 616, 621 (E.D. Tex. 2010); *Howe,* 2010 WL 1708857, at *3-*4; *Hardy v. Wyeth, Inc.*, No. 9:09-CV-152, 2010 WL 1222183, at *1 (E.D. Tex. Mar. 29, 2010), *adopting* Report and Recommendation of U.S Magistrate Judge, 2010 WL 1049588, at *5 (E.D. Tex. Mar. 8, 2010); *Couick v. Wyeth, Inc.*, 691 F. Supp. 2d 643, 645-46 (W.D.N.C. 2010);  *Levine*, 684 F. Supp. 2d at 1344-48; *Washington v. Wyeth, Inc.*, No. 3:09-CV-1343, 2010 WL 450351, at *1-*2 (W.D. La. Feb. 8, 2010); *Morris v. Wyeth, Inc.*, No. 3:09-CV-0854, 2009 WL 4064103, at *2-*5 (W.D. La. Nov. 23, 2009); *Meade v. Parsley*, No. 2:09-cv-00388, 2009 WL 3806716, at *2-*3 (S.D. W. Va. Nov. 13, 2009); *Burke v. Wyeth, Inc.*, No. G-09-00082, 2009 WL 3698480, at *2-*3 (S.D. Tex. Oct. 29, 2009); *Stoddard v. Wyeth, Inc.*, 630 F. Supp. 2d 631, 633-34 (E.D.N.C. 2009); *Fields v. Wyeth, Inc.*, 613 F. Supp. 2d 1056, 1060-61 (W.D. Ark. 2009); *Moretti v. Wyeth, Inc.*, No. 2:08-CV-00396, 2009 WL 749532, at *3-*4 (D. Nev. Mar. 20, 2009); *Schrock v. Wyeth, Inc.,* 601 F. Supp. 2d 1262, 1266-67 (W.D. Okla. 2009); *Cousins v. Wyeth Pharms., Inc.,* No. 3:08-CV-0310-N, 2009 WL 648703, at *2 (N.D. Tex. Mar. 10, 2009); *Mensing v. Wyeth, Inc.*, No. 07-3919, 2008 WL 4724286, at *3-*5 (D. Minn. Oct. 27, 2008), *aff'd,* 588 4F.3d 603, 612-14 (8th Cir. 2009); *Smith v. Wyeth, Inc.*, No. 5:07-CV-18, 2008 WL 2677051, at *4 (W.D. Ky. June 30, 2008), *aff'd,* 657 F.3d

in circumstances *identical* in relevant respects to those here, *58 different deci-*

---

420 (6th Cir. 2011); *Morris v. Wyeth, Inc.*, No. 1:07-CV-176, 2008 WL 2677048, at *4 (W.D. Ky. June 30, 2008), *aff'd* 657 F.3d 420 (6th Cir. 2011); *Wilson v. Wyeth, Inc.*, No. 3:07-CV-378, 2008 WL 2677049, at *4 (W.D. Ky. June 30, 2008), *aff'd* 657 F.3d 420 (6th Cir. 2011); *Pustejovsky v. Wyeth, Inc.*, No. 4:07-CV-103, 2008 WL 1314902, at *2 (N.D. Tex. Apr. 3, 2008); *Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1358 (N.D. Ga. 2008); *Barnhill v. Teva Pharms. USA, Inc.*, No. 06-CV-0282, 2007 WL 5787186, at *1-*2 (S.D. Ala. Apr. 24, 2007); *Leblanc v. Wyeth, Inc.*, No. 04-CV-0611, 2006 WL 2883030, at *6 (W.D. La. Oct. 5, 2006); *Goldych v. Eli Lilly & Co.*, No. 5:04-CV-1477, 2006 WL 2038436, at *6 (N.D.N.Y. July 19, 2006); *Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514, 540-41 (E.D. Pa. 2006), *aff'd on other grounds*, 521 F.3d 253 (3d Cir. 2008), *vacated and remanded on other grounds*, 129 S. Ct. 1578 (2009); *Possa v. Eli Lilly & Co.*, No. 05-CV-1307, 2006 WL 6393160, at *1 (M.D. La. May 10, 2006); *Tarver v. Wyeth, Inc.*, No. 3-04-CV-2036, 2006 WL 1517546, at *2 (W.D. La. Jan. 26, 2006); *Tarver v. Wyeth, Inc.*, No. 3-04-CV-2036, 2005 WL 4052382, at *2 (W.D. La. June 7, 2005); *Block v. Wyeth, Inc.*, 3:02-CV-1077, 2003 WL 203067, at *2 (N.D. Tex. Jan. 28, 2003); *Buchanan v. Wyeth Pharms., Inc.*, No. CV-2007-900065, 2008 WL 7136137, at *1 (Ala. Cir. Ct. Oct. 20, 2008); *Green v. Wyeth Pharms., Inc.*, CV-06-3917, 2007 WL 6428717, at *1 (Ala. Cir. Ct. May 15, 2007); *Sheeks v. Am. Home Prods. Corp.*, No. 02-CV-337, 2004 WL 4056060, at *2 (Colo. Dist. Ct. Oct. 15, 2004); *Dietrich*, 2009 WL 4924722, at *2-*5; *Sharp*, 952 So. 2d at 555; *Sharp*, 2006 WL 515532, at *4; *Reynolds v. Anton*, No. 01A-76719-3, 2004 WL 5000272, at *9 (Ga. Super. Ct. Oct. 28, 2004); *Huck v. Trimark Physicians Grp.*, No. LACV018947, 2009 WL 3760458, at *1 (Iowa Dist. Ct. Feb. 27, 2009); *Stanley v. Wyeth, Inc.*, 991 So. 2d 31, 34-35 (La. Ct. App. 2008); *Kelly v. Wyeth*, No. 03-CV-3314, 2005 WL 4056740, at *2-*5 (Mass. Super. Ct. May 6, 2005); *Flynn v. Am. Home Prods. Corp.*, 627 N.W. 2d 342, 350 (Minn. Ct. App. 2001); *Coundouris v. Wyeth,* No. ATL-L-1940-10, 2012 WL 2401776, at *2-*3 (N.J. Super. Ct. June 26, 2012); *Westerlund v. Wyeth, Inc.*, No. MID-02174-05, 2008 WL 5592753 (N.J. Super. Ct. Law Div. Oct. 20, 2008); *Rossi v. Hoffman-LaRoche*, ATLL-690-05, 2007 WL 7632318 (N.J. Super. Ct. Jan. 3, 2007); *Sloan v. Wyeth*, No. MRS-L-1183-04, 2004 WL 5767103 (N.J. Super. Ct. Oct. 13, 2004); *Negron v. Teva Pharms. USA, Inc.*, No. 09-16519, 2010 WL 8357563, at *1 (Tex. Dist. Ct. May 7, 2010); *Beutella v. A.H. Robins Co.,* No. 98-05-CV-02372, 2001 WL 35669202, at *2 (Utah Dist. Ct. Dec. 10, 2001).

*sions in 23 states* specifically have held that one or both of Brand Defendants, as

the manufacturers of brand-name Reglan®, may not be held liable for injuries al-

legedly caused by the ingestion of their competitors' generic metoclopramide.[8]

These decisions rest on a number of considerations that are relevant to this

Court's analysis:

---

[8]    *See Demahy*, 2012 WL 5261492, at *3-*4; *Smith*, 657 F.3d at 424; *Mensing,* 588 F.3d at 612-14; *Hogue*, 2012 WL 4466609, at *2-*5; *Del Valle*, 2012 WL 4747259, at *1; *Phares*, 2012 WL 3779227, at *9-*11; *Eckhardt*, 2012 WL 3600194, at *2-*6; *Strayhorn*, 2012 WL 3217672, at *7-*8; *Lashley*, 2012 WL 2459148, at *4-*5; *Phelps*, 857 F. Supp. 2d at 1119-21; *Guarino*, 2012 WL 1138631, at *2; *Metz*, 830 F. Supp. 2d at 1293-95; *Overton*, 2011 WL 1343392, at *6-*7; *Bell*, 2011 WL 904161, at *3-*4; *Simpson*, 2010 WL 5485812, at *3; *Gross*, 2010 WL 4485774, at *2-*3; *Cooper*, 2010 WL 4318816, at *2-*3; *Fullington*, 2010 WL 3632747, at *2; *Johnson*, 2010 WL 3271934, at *2-*3; *Fisher*, 2010 WL 2998474, at *6, *8; *Neal*, 2010 WL 2640170, at *2; *Craig*, 2010 WL 2649545, at *3-*4; *Mosley*, 719 F. Supp. 2d at 1347-51; *Finnicum*, 708 F. Supp. 2d at 621; *Howe*, 2010 WL 1708857, at *1; *Hardy*, 2010 WL 1049588, at *5; *Couick*, 691 F. Supp. 2d at 645-46; *Levine*, 684 F. Supp. 2d at 1341, 1344-48; *Washington*, 2010 WL 450351, at *1-*2; *Morris,* 2009 WL 4064103, at *2-*5; *Meade,* 2009 WL 3806716, at *2-*3*; Burke,* 2009 WL 3698480, at *2-*3; *Stoddard*, 630 F. Supp. 2d at 633-34; *Fields,* 613 F. Supp. 2d at 1060-61; *Moretti*, 2009 WL 749532, at *3-*4; *Schrock*, 601 F. Supp. 2d at 1266-67; *Cousins*, 2009 WL 648703, at *2; *Mensing*, 2008 WL 4724286, at *3; *Smith,* 2008 WL 2677051, at *3-*4; *Morris*, 2008 WL 2677048, at *3-*4; *Wilson*, 2008 WL 2677049, at *4; *Pustejovsky*, 2008 WL 1314902, at *2; *Swicegood*, 543 F. Supp. 2d at 1358; *Tarver*, 2006 WL 1517546, at *2-*3; *Tarver*, 2005 WL 4052382, at *2; *Block*, 2003 WL 203067, at *2; *Buchanan,* 2008 WL 7136137, at *1; *Green*, 2007 WL 6428717, at *1; *Sheeks*, 2004 WL 4056060, at *2; *Dietrich,* 2009 WL 4924722, at *2-*5; *Sharp*, 952 So. 2d 555; *Sharp*, 2006 WL 515532, at *4; *Huck*, 2009 WL 3760458, at *1; *Kelly*, 2005 WL 4056740, at *2-*5; *Coundouris*, 2012 WL 2401776, at *2-*3; *Sloan*, 2004 WL 5767103, at *1; *Negron*, 2010 WL 8357563, at *1; *Beutella*, 2001 WL 35669202, at *2-*3.

23

- **Brand manufacturers are liable only for injuries caused by their products, and not for the injuries caused by their competitors' generic products.** *See, e.g.*, *Mensing*, 588 F.3d at 612-14; *Stoddard*, 630 F. Supp. 2d at 633-34; *Moretti*, 2009 WL 749532, at *4; *Smith*, 2008 WL 2677051, at *4; *Morris*, 2008 WL 2677048, at *4; *Wilson*, 2008 WL 2677049, at *4; *Pustejovsky*, 2008 WL 1314902, at *2; *Swicegood*, 543 F. Supp. 2d at 1358; *Block*, 2003 WL 203067, at *1-*2; *Sharp*, 2006 WL 515532, at *2; *Kelly*, 2005 WL 4056740, at *2-*4; *Sheeks*, 2004 WL 4056060, at *2.

- **Foreseeability does not support liability of a brand manufacturer that had no relationship with the plaintiff.** *See, e.g.*, *Fields*, 613 F. Supp. 2d at 1060; *Burke*, 2009 WL 3698480, at *3; *Moretti*, 2009 WL 749532, at *4; *Sharp*, 2006 WL 515532, at *7. In the absence of any relationship between the brand manufacturer and the plaintiff, the imposition of liability on brand manufacturers would extend the concept of duty "beyond reason and good sense." *Schrock*, 601 F. Supp. 2d at 1267 (internal quotation marks omitted).

- **FDA statutes and regulations establish that a brand manufacturer is responsible for only its drug, and is not responsible for generic drugs.** *See, e.g.*, *Mensing*, 588 F.3d at 612-13; *Mosley*, 719 F. Supp.2d at 1347-48; *Schrock*, 601 F. Supp. 2d at 1266; *Smith*, 2008 WL 2677051, at *4; *Morris*, 2008 WL 2677048, at *4; *Wilson*, 2008 WL 2677049, at *4; *Swicegood*, 543 F. Supp. 2d at 1358.

- **A brand manufacturer's warnings and labeling are representations about *its* products, not its competitors' products, and do not create a basis for liability for injuries allegedly caused by its competitors' products.** *See, e.g.*, *Smith*, 2008 WL 2677051, at *4; *Morris*, 2008 WL 2677048, at *4; *Wilson*, 2008 WL 2677049, at *4; *Sharp*, 2006 WL 515532, at *7.

- **Subjecting drug manufacturers to ongoing liability for the use of generic versions of their products violates public policy by reducing incentives for research and development and innovation.** *See, e.g.*, *Foster*, 29 F.3d at 170; *Bell*, 2011 WL 904161, at *3; *Gross*, 2010 WL 4485774, at *2-*3; *Schrock*, 601 F. Supp. 2d at 1266-67; *Fields*, 613 F. Supp. 2d at 1061; *Sharp*, 2006 WL 515532, at *7; *Kelly*, 2005 WL 4056740, at *4-*5.

24

This broad and deep national consensus includes all four of the federal Courts of Appeals to address the issue. *First*, in *Foster*, the Fourth Circuit concluded that Wyeth, the manufacturer of brand-name Phenergan®, could not be held liable under Maryland law on a claim of negligent misrepresentation for alleged injuries resulting from the ingestion of its generic equivalent, promethazine. 29 F.3d at 172. The plaintiffs in *Foster* had argued, as does Plaintiff here, that "because generic drugs are required by federal law to be equivalent to their brand name counterparts, any representations Wyeth makes when advertising Phenergan also apply to generic promethazine," and "name brand manufacturers … know that generic manufacturers rely on their studies and duplicate their labeling." *Id.* at 169. The *Foster* plaintiffs also argued that, because Wyeth was "aware that when Phenergan is prescribed, the patient may actually receive generic promethazine," Wyeth owed all users of the generic drug a duty of care in formulating the warnings associated with its brand-name product. *Id.*

Applying traditional tort principles, the Fourth Circuit rejected these contentions for two independent reasons. First, the court held that a plaintiff seeking damages for an injury arising from use of a product must demonstrate that the defendant manufactured or sold the product at issue. Id. at 168. Second, the court held that, a brand manufacturer owes "no duty of care" to an individual who ingests a generic drug that was manufactured and sold by a another company:

25

> We think to impose a duty in the circumstances of this case would
> be to *stretch the concept of foreseeability too far.*  The duty required
> … arises when there is such a relation that one party has the right to
> rely for information upon the other, and the other giving the infor-
> mation owes a duty to give it with care.  There is no such relation-
> ship between the parties to this case, as Brandy Foster was injured
> by a product that Wyeth did not manufacture.

*Id.* at 171 (emphasis added; citations and internal quotation marks omitted).

*Second*, in November 2009, the Eighth Circuit endorsed the national con-

sensus, refusing to allow a plaintiff who had used only other companies' generic

metoclopramide to hold brand-name manufacturers of Reglan® liable for her inju-

ries under Minnesota law.  *Mensing*, 588 F.3d at 612-14.  "Like the Fourth Cir-

cuit, [this Court] conclude[d] that holding name brand manufacturers liable for

harm caused by generic manufacturers 'stretch[es] the concept of forseeability

too far.'"  *Id.* at 613 (quoting *Foster*, 29 F.3d at 171).  The Court held that the

plaintiff had not "shown that the name brand manufacturers owed her a duty of

care necessary to trigger liability."  *Id.* at 614.

*Third*, the Sixth Circuit also has endorsed the virtually uniform law on this

issue, affirming summary judgment for name brand manufacturers in another

Reglan®/metoclopramide case in which the plaintiff had ingested only generic

metoclopramide.  *Smith*, 657 F.3d at 424.  The court held: "As have the majority

of courts to address this question, we reject the argument that a name-brand drug

26

manufacturer owes a duty of care to individuals who have never taken the drug actually manufactured by that company." *Id*.

*Fourth*, just last week, the Fifth Circuit likewise held in a Reglan®/metoclopramide case that Louisiana law precludes claims "against a manufacturer if the manufacturer did not produce the offending product." *Demahy*, 2012 WL 5261492, at *3. The court further concluded that, even if the plaintiff could have avoided product-liability doctrine by pleading her claims in fraud or misrepresentation, those claims still would fail because Brand Defendants did not manufacture the product that injured the plaintiff and, thus, "owed [her] no duty of care." *Id.* at *3 n.4.

Against the mountain of authority cited above, only two published decisions stand to the contrary: *Conte v. Wyeth, Inc.*, 85 Cal. Rptr. 3d 299 (Ct. App. 2008), and *Kellogg v. Wyeth*, 762 F. Supp. 2d 694 (D. Vt. 2010).[9] *See* Pl.'s Br.

---

[9]    Although the court in *Weeks v. Wyeth, Inc.*, No. 1:10-cv-602, 2011 WL 1216501 (M.D. Ala. Mar. 31, 2011), initially denied in part Brand Defendants' motion to dismiss the plaintiffs' claims arising out of generic-metoclopramide use, it later certified the issue to the Alabama Supreme Court for definitive resolution (*Weeks v. Wyeth, Inc.*, No. 1:10-cv-602, 2011 WL 6988047 (M.D. Ala. Aug. 25, 2011)), as six courts applying Alabama law had previously followed the national consensus (*see Overton*, 2011 WL 1343392, at *6-*7; *Simpson*, 2010 WL 5485812, at *3; *Mosley*, 719 F. Supp. 2d at 1347 n.6; *Barnhill*, 2007 WL 5787186, at *1-*2; *Buchanan*, 2008 WL 7136137, at *1; *Green*, 2007 WL 6428717, at *1). The Alabama Supreme Court agreed to answer the certified question, and the case currently is pending before that court. *See* Order Accepting Certified Question, *Wyeth, Inc. v. Weeks*, No. 1101397, 2011 WL 6989897 (Ala. Oct. 17, 2011).

27

25-26. But *Conte* and *Kellogg* are outliers that have had no meaningful impact

on the law.[10] Since *Conte* was decided in 2008, 45 decisions—including five de-

cisions under Florida law—have either expressly rejected its reasoning or have

simply followed the majority rule instead.[11] *See, e.g., Mensing*, 588 F.3d at 613-

---

[10]    The continuing vitality of *Conte* stands in doubt after the California Su-
preme Court's recent decision in *O'Neil v. Crane Co.*, 266 P.3d 987 (Cal. 2012).
The plaintiffs in *O'Neil* sought to impose liability on one manufacturer for failure
to warn about injuries caused by another manufacturer's product because the two
products were used together. The California Supreme Court rejected that theory,
holding that "California law does not impose a duty to warn about dangers aris-
ing entirely from another manufacturer's product, even if it is foreseeable that the
products will be used together" because "foreseeability alone is not sufficient to
create an independent tort duty." *Id.* at 1004-05 (internal quotation marks omit-
ted). *But see In re Darvocet*, No. 2:11-md-2226, 2012 WL 3842271, at *5-*7
(E.D. Ky. Sept. 5, 2012) (holding that *Conte* remains binding on federal courts
under *Erie* despite *O'Neil* and denying motion to dismiss with respect to misre-
presentation claims under California law); *Darvocet IV*, 2012 WL 3984871, at *2
(same; but dismissing claims under the laws of numerous other states).

[11]    *See Demahy*, 2012 WL 5261492, at *3-*4; *Smith*, 657 F.3d at 424; *Mens-
ing*, 588 F.3d at 613; *Hogue*, 2012 WL 4466609, at *5; *Del Valle*, 2012 WL
4747259, at *6; *Baymiller*, 2012 WL 3929768, at *8-*9; *Phares*, 2012 WL
3779227, at *8; *Darvocet III*, 2012 WL 3610237, at *4 & n.9; *Eckhardt*, 2012
WL 3600194, at *6; *Strayhorn*, 2012 WL 3217672, at *6 & n.24; *Lashley*, 2012
WL 2459148, at *5; *Phelps*, 857 F. Supp. 2d at 1119-21; *Guarino*, 2012 WL
1138631, at *2; *Darvocet II*, 2012 WL 767595, at *7; *Darvocet I*, 856 F. Supp.
2d at 911-12; *Metz*, 830 F. Supp. 2d at 1293; *Overton*, 2011 WL 1343392, at *6-
*7; *Bell*, 2011 WL 904161, at *3-*4; *Simpson*, 2010 WL 5485812, at *3; *Gross*,
2010 WL 4485774, at *2-*3; *Cooper*, 2010 WL 4318816, at *2-*3; *Fullington*,
2010 WL 3632747, at *2; *Johnson*, 2010 WL 3271934, at *2-*3; *Fisher*, 2010
WL 2998474, at *7; *Neal*, 2010 WL 2640170, at *2; *Craig*, 2010 WL 2649545,
at *4 n.3; *Mosley*, 719 F. Supp. 2d at 1347 n.6; *Finnicum*, 708 F. Supp. 2d at 621;
*Howe*, 2010 WL 1708857, at *3-*4; *Hardy*, 2010 WL 1049588, at *4; *Couick*,
691 F. Supp. 2d at 645-46; *Levine*, 684 F. Supp. 2d at 1344-45; *Washington*,
2010 WL 450351, at *1-*2; *Morris*, 2009 WL 4064103, at *4-*5; *Meade*, 2009

14 ("Whatever the merits of *Conte* under California law … [w]e conclude that under Minnesota law [plaintiff] has not shown that the name brand manufacturers owed her a duty of care necessary to trigger liability."); *Moretti*, 2009 WL 749532, at *4 ("Simply put, *Conte* stands alone and is contrary to Nevada law and public policy.").  And, since *Kellogg* was decided approximately two years ago, another 26 decisions—including three decisions under Florida law—have rejected the *Conte/Kellogg* position.[12]

More to the point here, the *Conte/Kellogg* position repeatedly has been rejected by courts applying Florida law.  *See Metz*, 830 F. Supp. 2d at 1294-95;

---

WL 3806716, at *3; *Burke,* 2009 WL 3698480, at *3-*4; *Stoddard*, 630 F. Supp. 2d at 633-34; *Fields*, 613 F. Supp. 2d at 1060-61; *Moretti*, 2009 WL 749532, at *3-*4; *Schrock*, 601 F. Supp. 2d at 1266-67; *Cousins*, 2009 WL 648703, at *2; *Dietrich,* 2009 WL 4924722, at *3; *Huck*, 2009 WL 3760458, at *1; *Coundouris*, 2012 WL 2401776, at *2-*3; *Negron*, 2010 WL 835763, at *1.

[12]    *See Demahy*, 2012 WL 5261492, at *3-*4; *Smith*, 657 F.3d at 424; *Hogue*, 2012 WL 4466609, at *5; *Del Valle*, 2012 WL 4747259, at *6; *Baymiller*, 2012 WL 3929768, at *8-*9; *Phares*, 2012 WL 3779227, at *8; *Darvocet III*, 2012 WL 3610237, at *4 & n.4; *Eckhardt*, 2012 WL 3600194, at *6; *Strayhorn*, 2012 WL 3217672, at *6 & n.24; *Lashley*, 2012 WL 2459148, at *5; *Phelps*, 857 F. Supp. 2d at 1121-22; *Guarino*, 2012 WL 1138631, at *2; *Darvocet II*, 2012 WL 767595, at *7; *Darvocet I*, 856 F. Supp. 2d at 911-12; *Fullington v. Pliva, Inc.,* No. 4:10-CV-00236, 2011 WL 6153608, at *4-*5 (E.D. Ark. Dec. 12, 2011); *Schrock v. Pliva USA, Inc.,* No. 08-CV-453, 2011 WL 6130924, at *2 (W.D. Okla. Dec. 8, 2011); *Metz*, 830 F. Supp. 2d at 1293; *Morris v. Wyeth, Inc.,* No. 3:09-CV-854, 2011 WL 4975317, at *1 (W.D. La. Oct. 19, 2011); *Overton*, 2011 WL 1343392, at *6-*7; *Bell*, 2011 WL 904161, at *3-*4; *Simpson*, 2010 WL 5485812, at *3; *Gross*, 2010 WL 4485774, at *2-*3; *Cooper*, 2010 WL 4318816, at *2-*3; *Dietrich v. Wyeth, Inc.*, No. 50-2009-CA-021586, slip op. at 3-4 (Fla. Cir. Ct. Sept. 4, 2012); *Huck*, 2009 WL 3760458, at *1; *Coundouris*, 2012 WL 2401776, at *2-*3.

*Howe,* 2010 WL 1708857, at *3-*4; *Levine*, 684 F. Supp. 2d at 1344-45; *Dietrich*, 2009 WL 4924722, at *5-*6.   As the *Dietrich* court explained, "*Conte* bears no resemblance to Florida law, particularly on the issues of duty and foreseeability."   2009 WL 4924722, at *6; *see also Levine*, 684 F. Supp. 2d at 1344 ("The holding in *Conte* is not binding on this Court, and runs counter to the overwhelming majority of case law, including that of Florida.").

––––––––––––––––

Based on settled Florida law, which reflects a broad national consensus, this Court should affirm.

## III.   This Case Is Not Appropriate For Certification.

Florida allows this Court to "certify one or more questions of law to the Supreme Court of Florida if the answer is determinative of the cause and there is no controlling precedent of the Supreme Court of Florida."   Fla. R. App. P. 9.150(a).   Here, the question whether a brand-name manufacturer may be held liable for injuries allegedly caused by a generic product plainly "is determinative of the cause of action."   But, equally plainly, there *is* "controlling precedent of the Supreme Court of Florida" on that issue.   Accordingly, certification is neither necessary nor appropriate.

30

### A.    The controlling Florida law is settled.

As discussed above (at Part I.B), at least two decisions of the Florida Su-
preme Court have considered and rejected attempts to impose on a manufacturer
liability for injuries caused by a product that the manufacturer did not make or
sell. *See Engle*, 945 So. 2d at 1276; *Conley*, 570 So. 2d at 286.  Indeed, *Conley*
rejected such an effort with respect to prescription drugs.  As *Conley* clearly spe-
cified when adopting market-share liability in certain narrow circumstances, a
"defendant may exculpate itself" from *all* forms of liability under Florida law
(including market-share liability) if it can show that it did not manufacture or sell
the product that the plaintiff used.   570 So. 2d at 286.  That is "controlling
precedent" in this context, because it is undisputed that Brand Defendants did not
manufacture or sell the generic metoclopramide used by Plaintiff.

Moreover, Florida trial and appellate courts repeatedly have applied that
binding principle to dismiss claims identical to Plaintiff's in the specific context
of metoclopramide/Reglan® litigation.  *See Dietrich*, 2009 WL 4924722, at *2-
*6; *Sharp*, 2006 WL 515532, at *2-*8, *aff'd per curiam*, 952 So. 2d 555.  Plain-
tiff tries to minimize the on-point outcome in *Sharp* because the Florida District
Court of Appeal affirmed the trial court's grant of summary judgment per curiam
without an opinion.  Pl.'s Br. 34.  But, in Florida, "[i]t is fundamental black letter
law that a per curiam disposition affirming a trial court order without a written

31

opinion, occurs when the points of law raised are so well settled that a further writing would serve no useful purpose." *Elliott v. Elliott*, 648 So. 2d 137, 138 (Fla. Dist. Ct. App. 1994). And the fact that such opinions are not reviewable by the Florida Supreme Court (Pl.'s Br. 34), reflects that, in Florida's court system, the District Courts of Appeal "are courts primarily of final appellate jurisdiction" except in "limited and strictly prescribed" circumstances. *Jenkins v. State*, 385 So. 2d 1356, 1357-58 (Fla. 1980).

In sum, the controlling principle of Florida law here is well settled by Florida Supreme Court precedent. Indeed a court of final appellate jurisdiction in Florida determined that this principle is "so well settled that a further writing would serve no useful purpose." *Elliott*, 648 So. 2d at 138. Certification is not warranted and would waste the resources of the Florida Supreme Court, this Court, and the parties.

## B.    *Mensing* **did not change Florida law.**

In an effort to justify certification, Plaintiff invokes an argument that she made below but abandoned in the merits section of her appeal: That the Supreme Court's federal preemption holding in *Mensing* altered the elements of a cause of action under Florida's tort law. *See* Pl.'s Br. 33-34 & n.8. As every court to have considered such a contention—including the Fifth, Sixth, and Eighth Circuits— has held, however, *Mensing* does not change the state-law principles that require

32

dismissal of claims brought against Brand Defendants by plaintiffs who ingested only generic products manufactured by Brand Defendants' competitors.

Here, as described above (at 2), the district court granted Brand Defendants' motion for summary judgment because Brand Defendants did not manufacture the product that allegedly injured Plaintiff, which "is dispositive of [Plaintiff's] claims" under "long standing principles of Florida law." Doc. 59, at 3-4 (internal quotation marks omitted). There were no federal-law issues implicated in that holding.

*Mensing*, on the other hand, addressed a purely federal-law question—specifically, whether (under the Supremacy Clause of the United States Constitution) federal regulations applicable to generic drug manufacturers preempt certain state-law failure-to-warn claims against those manufacturers. *See* 131 S. Ct. at 2572. The Supreme Court held that they do. *Id. Mensing* does not—indeed, under basic principles of federalism, could not—alter the common-law requirements for stating a claim in Florida that are fatal to Plaintiff's claims against Brand Defendants and that formed the basis of the district court's summary judgment ruling. As the Supreme Court stated in *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), "Congress has no power to declare substantive rules of common law applicable in a state … be they commercial law or a part of the law of torts. And

33

no clause in the Constitution purports to confer such a power upon the federal courts." *Id.* at 78.

Unsurprisingly, every court to have considered this issue has rejected the contention that *Mensing* affects state-law principles related to brand-name manufacturer liability.  First, in *Mensing* itself, following remand from the Supreme Court, the clerk of the Eighth Circuit mistakenly vacated the court's earlier judgment in its entirety.  *See* Order Reversing and Reopening Judgment, *Mensing v. Wyeth, Inc.*, No. 08-3850 (8th Cir. Aug. 18, 2011), ECF No. 3819768.  After considering Brand Defendants' motion to reinstate, however, the court agreed that the Supreme Court's opinion in *Mensing* did not affect the part of the Eighth Circuit's opinion that rejected brand-name manufacturer liability under Minnesota law.  Accordingly, the Eighth Circuit reinstated the section of its opinion (Section III) affirming judgment in favor of the brand-name manufacturers.  *See Mensing v. Wyeth, Inc.*, 658 F.3d 867 (8th Cir. 2011).

Second, in *Smith*, the Sixth Circuit affirmed summary judgment for Brand Defendants under Kentucky law based on the fact that they did not manufacture the generic metoclopramide the plaintiffs ingested.  It reached that result after considering supplemental briefing on the effect of *Mensing*.  *See Smith*, 657 F.3d at 423-24; Appellants' Supp. Letter Br. Regarding *Pliva, Inc. v. Mensing*, *Smith v. Wyeth, Inc.*, 657 F.3d 420 (6th Cir. 2011), 2011 WL 3662688, at *9-*10 (Aug.

34

15, 2011).

Third, the Fifth Circuit recently upheld judgment for Brand Defendants in a generic-ingestion case, rejecting the plaintiff's appeal to *Mensing* "because the Supreme Court's decision in *Mensing* had no effect on Louisiana state law." *Demahy*, 2012 WL 5261492, at *4. The court further observed that, even though "[t]he *Foster* court's opinion in dicta on the viability of suits against generic manufacturers was proved wrong [by *Mensing*], … this fact does not impose on name-brand manufacturers a duty of care to customers using generic products." *Id.*

Fourth, at least 12 lower courts have rejected the argument that *Mensing* alters state law so as to authorize claims like those Plaintiff has pleaded here. *See Hogue*, 2012 WL 4466609, at *5; *Phares*, 2012 WL 3779227, at *10; *Phelps*, 857 F. Supp. 2d 1113, 1119-21; *Guarino*, 2012 WL 1138631, at *2; *Darvocet II*, 2012 WL 767595, at *9; *Darvocet I*, 856 F. Supp. 2d 912-13; *Fullington*, 2011 WL 6153608; *Schrock*, 2011 WL 6130924, at *2; *Metz*, 830 F. Supp. 2d at 1295; *Morris*, 2011 WL 4975317; *Gross*, 2011 WL 4005266, at *2; *Coundouris*, 2012 WL 2401776, at *2-*3; *Dietrich*, No. 50-2009-CA-021586, slip op. at 3 Of particular note, the Florida state court in *Dietrich* recently rejected a motion to reconsider its earlier judgment in favor of Brand Defendants, on just this basis, holding that, "under Florida law, a product manufacturer cannot be held liable

35

under any theory of liability—be it based in traditional product liability under strict liability or negligence, or fraudulent or negligent misrepresentation, or otherwise—if the plaintiff never used that manufacturer's product," and "*Mensing* did not alter this fundamental rule of Florida state law. Nor could it." *Dietrich*, No. 50-2009-CA-021586, slip op. at 3.

The logic of those decisions applies with equal force here. Because *Mensing* did not alter any aspect of Florida law, the district court's order granting summary judgment to Brand Defendants remains a sound application of settled Florida law to undisputed facts and should not be disturbed.[13]

———————————

[13]     Contrary to Plaintiff's contention, there is no reason to believe that Florida law would create an unprecedented cause of action against Brand Defendants because Florida's constitution "'guarantees that a remedy shall be provided for every injury.'" Pl.'s Br. 36 (quoting *Slatcoff v. Dezen*, 76 So. 2d 792, 794 (Fla. 1955) (en banc)). The relevant constitutional provision is not a mechanism for generating new causes of action, but simply a guarantee of access to the courts for traditional causes of action. The Florida Supreme Court has specified that "the word 'injury' as used in this section implies the doing of some act which constitutes an invasion of legal rights under statute or common law." *Slatcoff*, 76 So. 2d at 794. And "[t]he constitutional right of access to courts guaranteed by Article I, section 21, of the Florida Constitution, protects only rights which existed at common law or by statute prior to the enactment of the Declaration of Rights of the Florida Constitution." *Yachting Promotions, Inc. v. Broward Yachts, Inc.*, 792 So. 2d 660, 663 (Fla. Dist. Ct. App. 2001). Here, Brand Defendants did not invade Plaintiff's legal rights under existing Florida law, and the constitutional guarantee of access to the courts is thus irrelevant.

In sum, Florida law is clear, and stands in good company nationally, in rejecting Plaintiff's effort to impose liability on Brand Defendants for injuries allegedly caused by a product that was manufactured and sold by Brand Defendants' competitors.  Plaintiff has identified nothing unique or aberrant in Florida jurisprudence that would justify either departing from long-established principles of Florida law and the overwhelming national consensus on this issue or certifying this settled question to the Florida Supreme Court.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

s/Kevin C. Newsom
Kevin C. Newsom
Lindsey C Boney IV
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place 1819 Fifth Avenue North
Birmingham, AL 35203

Kannon K. Shanmugam
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

*Attorneys for Appellee Wyeth LLC*

s/Henninger S. Bullock
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1675 Broadway
New York, NY 10019
(212) 506-2500
HBullock@mayerbrown.com

Carl J. Summers
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000

*Attorneys for Appellee Schwarz Phar-
ma, Inc. n/k/a UCB, Inc.*

October 30, 2012

38

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in

Fed. R. App. P. 32(a)(7)(B).  This brief contains 10,223 words.


<u>s/Henninger S. Bullock</u>
Henninger S. Bullock
MAYER BROWN LLP
1675 Broadway
New York, NY 10019

**PROOF OF SERVICE**

I hereby certify that on October 30, 2012, I electronically filed the fore-going Brief for Appellees Wyeth LLC and Schwarz Pharma, Inc. n/k/a UCB, Inc., with the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which will accomplish service on the following active participants in the CM/ECF system:

David C. Banker                        William F. Sheehan
dbanker@bushross.com                   wsheehan@goodwinprocter.com

David Joseph Sales
david@salesappeals.com

I further certify that I served a copy of the foregoing by overnight courier, on the following non-registered participants:

Brent R. Bigger                        Joshua A. Mize
Abrahamson & Uiterwyk                  Akerman Senterfitt & Eidson, PA
900 W PLATT ST STE 100                 420 S ORANGE AVE STE 1200
TAMPA, FL 33606-2173                   ORLANDO, FL 32801

Daniel J. McGlynn
McGlynn Glisson Mouton
340 FLORIDA ST
BATON ROUGE, LA 70801

s/Henninger S. Bullock
Henninger S. Bullock
MAYER BROWN LLP
1675 Broadway
New York, NY 10019

40

# ADDENDUM

IN THE FIFTEENTH JUDICIAL
CIRCUIT, IN AND FOR PALM BEACH
COUNTY, FLORIDA

CASE NO. 50-2009-CA-021586 XXX MB

GAYLE DIETRICH and WILLIAM H.
DIETRICH,

        Plaintiffs,

vs.

WYETH, INC. d/b/a WYETH, Individually and
as Successor-In-Interest to A.H. ROBBINS
COMPANY, INC. and AMERICAN HOME
PRODUCTS        CORPORATION;        ESI
LEDERLE, INC.; SCHWARZ PHARMA,
INC.; WYETH PHARMACEUTICALS, INC.;
MCKESSON CORPORATION; PUREPAC
PHARMACEUTICAL CO.; ALPHARMA
USPD, f/k/a BARRE-NATIONAL, INC.;
ALPHARMA, INC.; ACTAVIS, INC.;
ACTAVIS MID ATLANTIC, LLC; ACTAVIS
ELIZABETH, LLC; BARRE PARENT
CORPORATION; PLIVA, INC., f/k/a/
SIDMAK LABORATORIES, INC.; BARR
PHARMACEUTICALS, INC.; CRAIG G.
SULTAN, D.O., and CRAIG G. SULTAN,
D.O., P.A.,

        Defendants.

---

### ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF FROM FINAL JUDGMENT ENTERED IN FAVOR OF DEFENDANTS WYETH, WYETH PHARMACEUTICALS INC., AND SCHWARZ PHARMA, INC.

THIS CAUSE came before the Court on Gayle and William Dietrich's (collectively, "Plaintiffs'") motion for relief from the final judgment entered by this Court in favor of Defendants Wyeth, Wyeth Pharmaceuticals Inc. (collectively, "Wyeth"), and Schwarz Pharma, Inc. ("Schwarz") (collectively, "Brand Defendants"). The parties submitted written memoranda in support of and in opposition to the motion, and a hearing was held on August 17, 2012. The

Court having reviewed the record, including the submissions of the parties, having heard argument of counsel and being otherwise fully advised in the premises, finds as follows:

This case involves the prescription drug metoclopramide, which is available in both name brand (Reglan®) and generic formulations. Plaintiffs allege that Mrs. Dietrich suffered injuries resulting from her use of generic metoclopramide. In their original Complaint, Plaintiffs asserted causes of action under Florida law for Negligence (Count I), Strict Liability (Count II), Breach of Warranties (Count III), Misrepresentation and Fraud (Count IV), and Negligence per se (Count V) against Brand Defendants.

On December 21, 2009, the Court granted summary judgment to Brand Defendants, holding that "[a]ll of Plaintiffs' causes of action are barred under Florida law because Plaintiffs admit, and the record establishes, that Mrs. Dietrich ingested only generic metoclopramide and never ingested metoclopramide, whether name brand Reglan® or generic, manufactured by [Brand Defendants]." *Dietrich v. Wyeth, Inc.*, No. 50-2009-CA-21586, 2009 WL 4924722, at 2 (Fla. Cir. Ct. Dec. 21, 2009). That same day, the Court entered final judgment in favor of Brand Defendants. *Id.* at 6. Plaintiffs did not take an appeal from that Final Judgment. On February 3, 2012, over two years after final judgment was entered, Plaintiffs filed the present motion pursuant to Rule 1.540(b)(5) of the Florida Rules of Civil Procedure ("Rule 1.540(b)(5)"), seeking relief from that final judgment. Plaintiffs argue that the United States Supreme Court's decision in *PLIVA, Inc. v. Mensing*, __ U.S. __, 131 S. Ct. 2567 (2011), *reh'g denied*, 132 S. Ct. 55 (2011) changes the Florida law on which this Court relied in granting summary judgment to Brand Defendants.

The Court finds that Plaintiffs' motion fails because the circumstances presented here do not provide a basis for the type of relief afforded by Rule 1.540(b)(5). A court may relieve a

party from a final judgment where "the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have prospective application." Fla. R. Civ. P. 1.540(b)(5). Florida courts hold, however, that "[a] change in the applicable rule of law resulting from a later appellate decision in an unrelated case is not a ground to vacate a final order" under Rule 1.540(b)(5). *Petrysian v. Metro. General Ins. Co.*, 672 So. 2d 562, 563 (Fla. App. 5 Dist. 1996). Florida courts have denied motions brought under Rule 1.540(b)(5) even where the applicable rule of law has been subsequently reversed by the Florida Supreme Court. *See, e.g., Theisen v. Old Republic Ins. Co.*, 468 So. 2d 434, 435 (Fla. App. 5 Dist. 1985). Here, the U.S. Supreme Court's decision in *Mensing* did not alter any principle of Florida state law on which this Court relied in granting summary judgment to Brand Defendants. But even assuming that the applicable Florida rules had changed, Florida case law demonstrates that such a change would still be an insufficient basis on which to grant relief under Rule 1.540(b)(5) to Plaintiffs.

Even if Plaintiffs could properly bring their Motion pursuant to Rule 1.540(b)(5) as a procedural matter, Plaintiffs' Motion would still fail. As this Court found in its December 2009 decision, under Florida law, "a product manufacturer cannot be held liable under any theory of liability—be it based in traditional product liability under strict liability or negligence, or fraudulent or negligent misrepresentation, or otherwise—if the plaintiff never used that manufacturer's product." *Dietrich*, 2009 WL 4924722, at 2 (citing *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1276 (Fla. 2006) and *Conley v. Boyle Drug Co.*, 570 So. 2d 275, 286 (Fla. 1990)). *Mensing* did not alter this fundamental rule of Florida state law. Nor could it. *See Dietrich*, 2009 WL 4924722, at 5 ("[W]hether or not . . . other defendants possess valid defenses

has no bearing on the fundamental point that Plaintiffs' claim against Wyeth and Schwarz lack any basis or support under Florida law."). In fact, in orders rendered after the U.S. Supreme Court's *Mensing* decision, every court to address this question, including federal district courts applying Florida substantive law, has rejected the argument that *Mensing* changes state law principles relating to name brand manufacturer liability. *See Guarino v. Wyeth LLC*, No. 8:10-cv-2885-JSM-TGW, 2012 WL 1138631, at *1-*2 (M.D. Fla. Apr. 3, 2012); *Metz v. Wyeth LLC*, 830 F. Supp. 2d 1291, 1293 (M.D. Fla. 2011); *see also Smith v. Wyeth, Inc.*, 657 F.3d 420, 423-24 (6th Cir. 2011) (affirming summary judgment for Wyeth and Schwarz under Kentucky law based on the fact that they did not manufacture the generic metoclopramide ingested by the plaintiffs even after considering supplemental briefing on the effect of *Mensing*); *Mensing v. Wyeth, Inc.*, No. 08-3850 (8th Cir. Sept. 29, 2011) (agreeing that the Supreme Court's opinion in *Mensing* did not affect the part of the Eighth Circuit's opinion that rejected name brand manufacturer liability under Minnesota law and reinstating that section of its opinion), ECF No. 3834382.

Based upon the foregoing, it is

**ORDERED AND ADJUDGED** that Plaintiffs' motion for relief from final judgment is hereby **DENIED** in its entirety.

DONE AND ORDERED at West Palm Beach, Florida, this _____ day of August, 2012.

SIGNED & DATED

SEP 04 2012

_____
ROBIN ROSENBERG, CIRCUIT JUDGE

JUDGE ROBIN ROSENBERG

Copies furnished:
COUNSEL OF RECORD